1

**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
2
James A. Lowe (SBN 214383)
18400 Von Karman, Suite 300
3
Irvine, California 92612
Telephone: (949) 553-1010
4
Facsimile: (949) 553-2050
info@gauntlettlaw.com
5
jal@gauntlettlaw.com

6
Attorneys for Defendants and Counterclaimants,
BRIAN MACDONALD and LOVESURF, INC.
7

8
## UNITED STATES DISTRICT COURT

9
## SOUTHERN DISTRICT OF CALIFORNIA

10

11
GINA CHAMPION-CAIN, an individual; )
LUV SURF, LP, a California limited )
12
partnership; ANI COMMERCIAL CA I, )
LLC, a California limited liability )
13
company; ANI COMMERCIAL CA II, )
LP, a California limited partnership, )
14
)
Plaintiffs, )
15
)
vs. )
16
)
BRIAN MACDONALD, an individual; )
17
LOVESURF, INC., a Delaware )
corporation, and DOES 1-10, inclusive, )
18
)
Defendants. )
19
───────────────────────────── )
)
20
BRIAN MACDONALD, an individual; )
LOVESURF, INC., a Delaware )
21
corporation, )
)
22
Counterclaimants, )
)
23
vs. )
)
24
GINA CHAMPION-CAIN, an individual; )
LUV SURF, LP, a California limited )
25
partnership; ANI COMMERCIAL CA I, )
LLC, a California limited liability )
26
company; ANI COMMERCIAL CA II, )
LP, a California limited partnership; and )
27
ROES 1-50, inclusive, )
)
28
Counter-Defendants, )
───────────────────────────── )

Case No.: **3:14-CV-02540-GPC-BLM**

Hon. Gonzalo P. Curiel

**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

*[Filed concurrently with Declaration of Brian MacDonald]*

Date: March 27, 2015
Time: 1:30 p.m.
Ctrm: 2D

# TABLE OF CONTENTS

**Page(s)**

I.   CHAMPION-CAIN HAS NO RIGHT TO PRELIMINARY INJUNCTIONS ................................................................. 1

II.  NO RIGHT TO INJUNCTION IS SHOWN ON TRADEMARK CLAIMS .......................................................................................... 2

    A.   Factual Background ..................................................................... 2

        1.   Lovesurf Is The Senior User of the Marks At Issue .................. 2

        2.   Champion-Cain Is A Junior User of Its Claimed Marks .......... 3

        3.   Chris Kramer's Conduct ........................................................... 5

    B.   Champion-Cain Fails to Show Irreparable Harm ..................... 6

    C.   Champion-Cain Has No Likelihood of Success on the Merits ........... 10

        1.   Champion-Cain Fails to Show Ownership of a Valid, Protectable Mark .................................................................... 10

            a.   No Presumption of a Protectable Interest Shown .......... 10

            b.   No Inherent Distinctiveness or Secondary Meaning. ................................................................... 11

            c.   Champion-Cain's Use Is Junior to Lovesurf's Use ....... 12

        2.   Champion-Cain Cannot Show a Likelihood of Confusion ..... 15

    D.   The Balance of Equities and Public Interest Favor Lovesurf ........... 15

III. NO INJUNCTION CAN BAR DISPARAGING STATEMENTS ............... 16

    A.   The First Amendment Prohibits The Prior Restraint Of Speech ..... 16

    B.   Whether Statements Are Commercial Speech Is Not Controlling ............................................................................ 18

    C.   The Alleged Statements Relate To A Matter Of Public Interest ..... 21

    D.   Because the Requested Relief Constitutes a Prior Restraint, The Court Need Not Assess The Typical Factors For Preliminary Injunctive Relief .................................................. 23

        1.   Irreparable Harm .................................................................... 23

        2.   Likelihood of Success ............................................................. 24

3.   The Balance of Equities and Public Interest Favor Lovesurf ........................................................................ 24

IV.   CONCLUSION ................................................................ 25

ii

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page(s)**

**FEDERAL CASES**

4

*Am. Trucking Ass'n. Inc. v. City of L.A..*
    559 F.3d 1046 (9th Cir. 2009) ............................................................ 1

5

6

*Applied Information Sciences Corp. v. eBay, Inc.*
    511 F.3d 966 (9th Cir. 2007) ........................................................ 10, 11

7

8

*BellSouth Adver. & Publ'g Corp. v. The Real Color Pages, Inc..*
    792 F. Supp. 775 (M.D. Fla. 1991) .................................................. 16

9

*Bihari v. Gross.*
    119 F. Supp. 2d 309 (S.D.N.Y. 2000) .............................................. 22

10

11

*Carribean Marine Servs. Co. v. Baldrige.*
    844 F.2d 668 (9th Cir. 1988) ........................................................ 6, 8

12

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n.*
    447 U.S. 557 (1980) .......................................................................... 19

13

14

*Chance v. Pac-Tel Teletrac Inc..*
    242 F.3d 1151 (9th Cir. 2001) .......................................................... 12

15

16

*Connick v. Myers.*
    461 U.S. 138 (1983) .......................................................................... 21

17

*Davidoff & Cie. S.A. v. PLD Int'l Corp..*
    263 F.3d 1297 (11th Cir. 2001) ........................................................ 16

18

19

*Dish Network Corp. v. FCC.*
    653 F.3d 771 (9th Cir. 2011) ........................................................ 1, 24

20

*Dun & Bradstreet. Inc v. Greenmoss Builders. Inc..*
    472 U.S. 749 (1985) .......................................................................... 21

21

22

*Edge Games. Inc. v. Elec. Arts. Inc..*
    745 F. Supp. 2d 1101 (N.D. Cal. 2010) .............................................. 7

23

24

*Flexible Lifeline Sys. v. Precision Lift. Inc..*
    654 F.3d 989 (9th Cir. 2011) .............................................................. 8

25

*Garcia v. Google. Inc..*
    743 F.3d 1258 (9th Cir. 2014) ............................................................ 6

26

27

*Herb Reed Enters.. LLC v. Florida Entm't Mgmt.. Inc..*
    736 F.3d 1239 (9th Cir. 2013) ............................................... 8, 9, 10, 24

28

*Inc. v. Lavasoft*,
   356 F. Supp. 2d 1071 (C.D. Cal. 2003) ............................................17, 19, 21, 22, 23

*Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*,
   12 F. Supp. 2d 1035 (C.D. Cal. 1998) ...................................................................22

*J.K. Harris & Co. LLC v. Kassel*,
   253 F. Supp. 2d 1120 (N.D. Cal. 2003) ..................................................................20

*Kramer v. Thompson*,
   947 F.2d 666 (3d Cir. 1991) ...................................................................................19

*Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*,
   998 F. Supp. 2d 890 (C.D. Cal. 2014) ...................................................................11

*Latino Officers Ass'n, New York, Inc. v. City of New York*,
   196 F.3d 458 (2d Cir. 1999) ...................................................................................19

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ..................................................................................................1

*Miller v. Cal. Pac. Med. Ctr.*,
   991 F.2d 536 (9th Cir.1993) .....................................................................................6

*Moroccanoil, Inc. v. Moroccan Gold, LLC*,
   590 F. Supp. 2d 1271 (C.D. Cal. 2008) ............................................................16, 22

*Oakland Tribune, Inc. v. Chronicle Publ'g*,
   762 F.2d 1374 (9th Cir. 1985) ..................................................................................9

*Ohralik v. Ohio State Bar Ass'n*,
   436 U.S. 447 (1978) ................................................................................................19

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
   413 U.S. 376 (1973) ................................................................................................19

*Rearden LLC v. Rearden Commerce, Inc.*,
   683 F.3d 1190 (9th Cir. 2012) ................................................................................12

*San Francisco Arts & Athletics v. U.S.O.C.*,
   483 U.S. 522 (1987) ................................................................................................17

*Sengoku Works v. RMC Int'l*,
   96 F.3d 1217 (9th Cir. 1996) ..................................................................................11

*Smith v. Daily Mail Publishing Co.*,
   443 U.S. 97 (1979) ..................................................................................................17

*Textile Unlimited, Inc. v. A..BMH & CO.*,
   240 F.3d 781 (9th Cir. 2001) ..................................................................................19

*Winter v. Natural Res. Def. Council. Inc.,*
　555 U.S. 7 (2008) .................................................................... 1, 8, 23


**STATE CASES**

*Gilbert v. Nat'l Enquirer,*
　43 Cal.App.4th (1996) .................................................................... 17


**DOCKETED CASES**

*Active Sports Lifestyle USA, LLC v. Old Navy, LLC,*
　2014 U.S. Dist. LEXIS 45575 (C.D. Cal. Mar. 21, 2014) ........................................ 8

*AK Metals, LLC v. Norman Indus. Materials,*
　2013 U.S. Dist. LEXIS 13793 (S.D. Cal. Jan. 31, 2013) ......................................... 7

*Allen v. Ghoulish Gallery,*
　2007 U.S. Dist. LEXIS 37514 (S.D. Cal. May 23, 2007) ................................. 17, 18

*Mvtee Prods. v. Shop Vac Corp.,*
　2013 U.S. Dist. LEXIS 158539 (S.D. Cal. Nov. 4, 2013) ............................. 8, 9, 16

*Spiraledge, Inc. v. Seaworld Entm't, Inc.,*
　2013 U.S. Dist. LEXIS 96616 (S.D. Cal. July 9, 2013) ........................................... 9

*Wahoo Int'l, Inc. v. Phix Doctor, Inc.,*
　2014 U.S. Dist. LEXIS 74927 (S.D. Cal., No. 13cv1395-GPC(BLM), May
　20, 2014) .................................................................... 7, 10, 24


**FEDERAL RULES AND STATUTES**

15 U.S.C. § 1057(b) ............................................................................... 10

15 U.S.C. § 1125(a) ............................................................................... 10

15 USCS § 1127 ...................................................................................... 12


**OTHER AUTHORITIES**

F.R.Civ.P. 65(b)(1)(A) .............................................................................. 6

v

1  
2

## I.  CHAMPION-CAIN HAS NO RIGHT TO PRELIMINARY INJUNCTIONS

3  Plaintiffs Gina Champion-Cain, Luv Surf, LP, ANI Commercial CA I, LLC,

4  and ANI Commercial CA II, LP ("Champion-Cain") have no right to a preliminary

5  injunction preventing Defendants Brian Macdonald and Lovesurf, Inc. ("Lovesurf")

6  from using its trademarks LOVESURF and its HEART WAVE logo because they do

7  not meet the legal requirements including establishing the likelihood of irreparable

8  harm and establishing a likelihood of success on the merits since Lovesurf is the

9  senior user of the marks. Also Champion-Cain has no right to a preliminary injunction

10  against alleged defamation and disparagement for many reasons including that the

11  First Amendment's prohibition of prior restraint of speech bars any such injunction.

12  Champion-Cain has not made "a clear showing" that they are entitled to the

13  "extraordinary remedy" of a preliminary injunction. Under *Winter v. Natural Res. Def.*

14  *Council, Inc.*, 555 U.S. 7, 22 (2008) Champion-Cain must show: (1) a likelihood of

15  success on the merits; (2) a likelihood of irreparable harm to them in the absence of

16  preliminary relief; (3) that the balance of equities tips in Champion-Cain's favor; and

17  (4) that an injunction is in the public interest. *Id.* at 20. Champion-Cain bears the

18  burden of meeting all four *Winter* prongs. *See Dish Network Corp. v. FCC*, 653 F.3d

19  771, 776-77 (9th Cir. 2011). Champion-Cain has failed to meet its burden.

20  A preliminary injunction is "an extraordinary remedy that may only be awarded

21  upon a clear showing that the plaintiff is entitled to such relief," *Winter*, 555 U.S. at

22  22; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("And what is at issue here is not

23  even a defendant's motion for summary judgment, but a plaintiff's motion for

24  preliminary injunctive relief, as to which the requirement for substantial proof is much

25  higher."). The mere possibility that a plaintiff will suffer irreparable injury is

26  insufficient. *Am. Trucking Ass'n, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir.

27  2009) (cases suggesting a lower standard "are no longer controlling, or even viable").

28  / / /

## II.   NO RIGHT TO INJUNCTION IS SHOWN ON TRADEMARK CLAIMS

### A.   Factual Background

#### 1.   Lovesurf Is The Senior User of the Marks At Issue

Lovesurf has been using the wordmark LOVESURF in connection with their surfing lifestyle clothing line since 2010 when hats and t-shirts were made bearing the LOVESURF wordmark. The hats and t-shirts were labeled with a tag displaying and advertising the LOVESURF brand name. **[MacDonald Decl. ¶2].**

To promote the LOVESURF brand, Lovesurf sponsored several beach clean-ups in 2010, advertised those events with flyers, and passed out Lovesurf hats and t-shirts at those events. **[MacDonald Decl. ¶3, Ex. "20"]** Lovesurf also sponsored the 2010 Cyprus Cove community volleyball tournament in San Clemente, California and held a beach clean-up in connection with the tournament. Lovesurf advertised the LOVESURF beach clean-up with flyers posted around the city of San Clemente. Approximately 30 people attended the beach clean-up in August 2010. Lovesurf distributed LOVESURF hats and t-shirts to attendees to build a following for the new brand. **[MacDonald Decl. ¶3]**

Lovesurf added other clothing lines to the LOVESURF brand as early as July 12, 2011 and sold clothing branded as LOVESURF at least as early as August 15, 2011. **[MacDonald Decl. ¶4, Ex. "1" to "9"]** At the time, Mr. MacDonald owned a website called BundlePower.com on which he listed Lovesurf clothing for sale, and he also listed Lovesurf clothing for sale on Hydrashop and Café-press. **[MacDonald Decl. ¶4, Ex. "5" to "9"]**

The first sale of clothing displaying the LOVESURF wordmark was on August 23, 2011 and was a Dream Session Tee by Lovesurf sold for $19.95 on the BundlePower.com website. **[MacDonald Decl. ¶5, Ex. "14"]** This sale came from BundlePower listings for the Dream Session Tee by Lovesurf. **[MacDonald Decl. ¶5]**

/ / /

/ / /

In December 2011, Lovesurf created the HEART WAVE logo [see right] mark with assistance from a hired designer. **[MacDonald Decl. ¶6, Ex. "10" and "11"]**



By December 28, 2011, Lovesurf used the HEART WAVE logo appearing above the word LOVESURF on clothing tags [see right]. **[MacDonald Decl. ¶7, Ex. "12" and "13"]** Lovesurf used that logo in Internet advertisements around the same time **[MacDonald Decl. ¶7]** The first sale of clothing displaying the HEART WAVE above the LOVESURF wordmark was within a few weeks of the Internet postings. **[MacDonald Decl. ¶8]**



Lovesurf filed a federal trademark registration for the combined HEART WAVE LOVESURF logo [see right] on May 27, 2014. **[MacDonald Decl. ¶9, Dkt. 19-1:42-58]** The application claimed a first use at least as early as March 4, 2012 and a first use in commerce at least as early as July 5, 2013. **[MacDonald Decl. ¶9, Dkt. 19-1:46]** Those first use dates refer to the first use of the logo configuration applied for which was the combined HEART WAVE logo with a stylized version of the LOVESURF wordmark. **[MacDonald Decl. ¶9, Dkt. 19-1:42].** The components of that logo, the stylized LOVESURF wordmark and the HEART WAVE logo, were used in commerce at least as early as 2010 and December 28, 2011 respectively as the evidence shows. The May 27, 2014 registration application was specifically for the combination of the logo with stylized words. **[MacDonald Decl. ¶9].** Lovesurf currently uses another version of the same logo with a pink HEART WAVE and LOVESURF in all capitals [see right]. **[MacDonald Decl. ¶9].**



### 2.     Champion-Cain Is A Junior User of Its Claimed Marks

After Lovesurf created and used its trademarks, Champion-Cain began as a real estate rental company using the name "Luv San Diego Surf." **[Dkt. 18-1:7]**

Champion-Cain began using the LUV SAN DIEGO SURF logo[1] at the earliest on August 25, 2011 on business cards, letterhead, and an exterior sign for their real estate office **[Dkt. 19-1:22]** and even then only in connection with their vacation rental business called "Luv San Diego Surf." **[Dkt. 19-1:27, 29-30, 32, 34-35, 38, & 40]** This use is after Lovesurf's use of the LOVESURF wordmark. **[MacDonald Decl. ¶2-5].**

Champion-Cain's claimed first use of their LUV SAN DIEGO SURF logo on any "good" was on a tote bag which they reportedly provided to rental customers beginning about December 19, 2011. **[Dkt. 18-2:2, ¶4; Dkt. 19-1:38]** This was after Lovesurf's prior use of the LOVESURF wordmark. **[MacDonald Decl. ¶2-5].**

Only after Chris Kramer's worked for Lovesurf in 2011 and after he was employed by Champion-Cain in 2012, as discussed below, Champion-Cain alleges that they began to apply their claimed marks to clothing.

Champion-Cain claims that they first ordered "monogrammed" apparel in January 2012 **[Dkt. 18-2:2, ¶6]** and provide an invoice showing the purchase of clothing that they claim bore the LUV SURF SAN DIEGO logo on February 9, 2012 **[Dkt. 18-2:2, ¶4; Dkt. 19-1:40].** Champion-Cain alleges registration of the Internet domain names "luv-surf.com" and "luvsurfclothing.com" on February 17, 2012, but did not actually make the clothing available for sale to the public until its online store opened on April 12, 2012 and its retail store opened on July 4, 2012. **[Dkt. 18-2:2, ¶8]**

Champion-Cain alleges the creation of their HEART SURF logo [see right] in March 2012 **[Dkt. 1:6, ¶26]**, and the first use and first use in commerce of the HEART SURF logo on July 4, 2012



---

[1] Champion-Cain's reference to this logo as its "LUV SURF LOGO" is an inaccurate representation of the mark which could mislead the Court. Lovesurf will instead refer to it as the "LUV SAN DIEGO SURF logo" which is how Plaintiffs originally referred to it in their complaint and how Plaintiffs generally referred to their business.

which was the opening date of its retail shop. **[Dkt. 19-1:3]** Each of these dates is after Lovesurf used its marks including Lovesurf's HEART WAVE logo. **[MacDonald Decl. ¶2-8]**

Champion-Cain provides no dates when any item was actually sold. Nevertheless, all of the above dates claimed by Champion-Cain are after Lovesurf's prior use of the LOVESURF mark and the HEART WAVE logo on Lovesurf's surf lifestyle clothing line. **[MacDonald Decl. ¶10]**

### 3.   Chris Kramer's Conduct

Lovesurf hired Chris Kramer to work on a project called LuvYourBeach in December 2011 and Mr. Kramer agreed to keep confidential Lovesurf's sensitive business information including marketing plans. **[MacDonald Decl. ¶12].** During his employment, Mr. Kramer learned of Lovesurf's plans for the LOVESURF brand as well as plans for the use of the term "Luv" in connection with a line of products for different interests such as "LuvYourBeach," "LuvSurf," and "LuvSwim." **[MacDonald Decl. ¶13, Ex. "15"–"18"].**

Mr. Kramer worked for Lovesurf on the design of logos for use with its projects and was involved with the design of the HEART WAVE logo in December 2011. **[MacDonald Decl. ¶14, Ex. "10" & "11"]**. After working for Lovesurf for about one month, Mr. Kramer quit on January 3, 2012 **[MacDonald Decl. ¶15, Ex. "19"]** Lovesurf was informed within a week of January 3, 2012 that Mr. Kramer was going to work for a real estate business in San Diego, CA. **[MacDonald Decl. ¶15]**. Champion-Cain claims that Mr. Kramer began working for them in February 2012. **[Dkt. 18-2:2, ¶5; Dkt. 18-3:2, ¶2].**

Shortly after Mr. Kramer left Lovesurf, Champion-Cain ordered its clothing branded with the LUV SAN DIEGO SURF logo and began offering clothing using Lovesurf's marks both online and through a retail store. **[Dkt. 18-2:2, ¶4-8]**

Despite Lovesurf's prior senior use, Champion-Cain accuses Lovesurf of infringing their marks and sues Lovesurf for telling people the truth about Champion-

Cain's infringing actions and misappropriation of trade secrets. Having superior financial resources, Champion-Cain improperly attacked Lovesurf with this lawsuit, perhaps thinking that a large law firm would naturally overwhelm a competitor.

Now Champion-Cain seeks a preliminary injunction to prevent Lovesurf from using the LOVESURF mark and any similar marks, a strategy to put Lovesurf out of business. However, Champion-Cain does not show that they are likely to suffer immediate and irreparable harm in the absence of preliminary relief. Champion-Cain delayed for months before seeking an injunction. Additionally, the evidence shows that Lovesurf used the LOVESURF wordmark and HEART WAVE logo prior to any use by Champion-Cain of their marks. So Champion-Cain is not likely to succeed on the merits. The balance of equities and public interest factors also tip in favor of Lovesurf due to the fact that it is the senior user of the marks.

### B.     Champion-Cain Fails to Show Irreparable Harm

Champion-Cain argues that if Lovesurf is allowed to continue to infringe on their trademark, they will suffer irreparable harm to their reputation and goodwill. **[Dkt. 18-1:20-21]** Champion-Cain, however, shows no immediate threat of irreparable harm. Champion-Cain shows no evidence of actual threatened harm and delayed significantly before moving for an injunction.

Champion-Cain must both demonstrate immediate threatened injury and show the harm is irreparable. *Carribean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); F.R.Civ.P. 65(b)(1)(A) (plaintiff must show it faces both "immediate and irreparable injury"). A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Garcia v. Google, Inc*., 743 F.3d 1258, (9th Cir. 2014) (quoting *Oakland Tribune, Inc. v. Chronicle Publ'g*, 762 F.2d 1374, 1377 (9th Cir. 1985)). *Miller v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir.1993), noted that delay in seeking injunctive relief "implies a lack of urgency and irreparable harm." While a plaintiff's delay is not alone decisive in determining whether he will be irreparably harmed, it still "weighs against the immediacy of the

harm." *AK Metals, LLC v. Norman Indus. Materials*, 2013 U.S. Dist. LEXIS 13793, 29 (S.D. Cal. Jan. 31, 2013) (two-month delay); see also *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, 2014 U.S. Dist. LEXIS 74927 at 7-9 (S.D. Cal., No. 13cv1395-GPC(BLM), May 20, 2014).

Champion-Cain claims to have been aware of Lovesurf's alleged infringing conduct at least as early as July 2013. Champion-Cain contends that they knew of sales of Lovesurf branded product and witnessed Lovesurf marketing LoveSurf products eighteen months before this motion was filed. **[Dkt. 18-3:2-3, ¶4-5].** Then seven months ago on July 1, 2014, Champion-Cain's counsel sent a cease and desist letter to Lovesurf. **[Dkt. 18-12:29-30]**. Six months later this motion was filed.

Despite purportedly knowing of the alleged trademark infringement as early as July 2013, Champion-Cain did not file this motion for a preliminary injunction until January 23, 2015, eighteen months after they allege they were first aware of Lovesurf's use of "LoveSurf" and seven months after the cease and desist letter was sent. A year and a half after learning of Lovesurf's trademark use and three months after filing this suit, Champion-Cain now claims the Court must take immediate action to protect it. This protracted delay demonstrates the lack of immediacy and urgency to warrant irreparable harm. See *Wahoo Int'l*, 2014 U.S. Dist. LEXIS 74927 at 9.

Champion-Cain's delay alone in seeking injunctive relief demonstrates a lack of irreparable harm. *Edge Games, Inc. v. Elec. Arts, Inc*., 745 F. Supp. 2d 1101, 1117-18 (N.D. Cal. 2010) ("The undisputed fact that plaintiff did not timely act to prevent the "Mirror's Edge" franchise from inundating the market is *alone* sufficient to deny the instant motion.") (emphasis in original).

But even if Champion-Cain's delay was excusable, they have presented no evidence that a decline in customers or goodwill occurred as a result of actual customer confusion. **[Dkt. 18-1:20-21]** If there really was the harm claimed in this motion, surely Champion-Cain would have been able to show evidence of it after all this time. Not only is the lack of evidence fatal to this motion but it actually suggests

1  exactly the contrary is true, that there is no irreparable harm to Champion-Cain.

2      A plaintiff seeking a preliminary injunction in the trademark infringement

3  context must show sufficient facts to establish a likelihood of irreparable

4  harm. *Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 997-98 (9th Cir.

5  2011); *Winter*, 555 U.S. at 20. Moreover, "[i]n the wake of *Winter* and *Flexible*

6  *Lifeline* there is no presumption of irreparable harm; a plaintiff seeking a preliminary

7  injunction in the trademark infringement context must demonstrate sufficient facts to

8  establish a likelihood of irreparable harm." *Mytee Prods. v. Shop Vac Corp*., 2013

9  U.S. Dist. LEXIS 158539, 5 (S.D. Cal. Nov. 4, 2013) citing *Winter*, 555 U.S. at 22,

10  and *Flexible Lifeline*, 654 F.3d at 997-98. Champion-Cain has simply not done so.

11      A party seeking injunctive relief for trademark infringement must provide

12  "evidence sufficient to establish likelihood of irreparable harm." *Herb Reed Enters.,*

13  *LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013); *Active*

14  *Sports Lifestyle USA, LLC v. Old Navy, LLC*, 2014 U.S. Dist. LEXIS 45575, 5 (C.D.

15  Cal. Mar. 21, 2014) (trademark infringement, itself, does not constitute irreparable

16  harm and **the existence of intangible harms such as loss of goodwill must be shown**

17  **by evidence** [emphasis added]). Champion-Cain makes no effort to demonstrate this.

18      The alleged harm must be more than speculative. *Caribbean Marine,* 844 F.2d

19  at 674 (citing *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir.

20  1984)). "A plaintiff must do more than merely allege imminent harm sufficient to

21  establish standing; a plaintiff must *demonstrate* immediate threatened injury as a

22  prerequisite to preliminary injunctive relief." *Id.* (citing *Los Angeles Memorial*

23  *Coliseum Com. v. National Football League*, 634 F.2d at 1201 (9th Cir. 1980)).

24      Champion-Cain's motion is not based on evidence but only on unsupported and

25  vague assertions that they spent money on marketing, that Lovesurf knowingly copied

26  their mark, that the products directly compete, that Champion-Cain has no ability to

27  control quality, that the products are sold through the same channels, and that

28  individuals, including Mr. MacDonald's daughter, have indicated that they associate

1    Lovesurf's products with Champion-Cain's trademark. **[Dkt. 18-1:20-21]** The

2    allegation about Mr. MacDonald's daughter's alleged confusion is bizarre and untrue.

3    His daughter is 4, not 12-14 as claimed by Catherine Long **[Dkt. 18-7:2**] And she was

4    not in attendance at the referenced event. **[MacDonald Decl. ¶16]**

5        Besides a conclusory statement that Champion-Cain will suffer irreparable

6    harm to their reputation and goodwill, they have provided no evidence in support.

7    This is woefully inadequate. *Herb Reed*, 736 F.3d at 1251. Champion-Cain merely

8    alleges that they spent money on advertising and then sets out some of the elements of

9    a likelihood of confusion. None of this evidence demonstrates a threat to Champion-

10   Cain's goodwill and reputation.

11       Allegations that Champion-Cain has invested resources in developing their

12   brand and that the alleged infringing conduct is denying them the benefit of their

13   investment is insufficient to justify an injunction. *See Mytee Prods.,* 2013 U.S. Dist.

14   LEXIS 158539 at 17 ("Plaintiff has failed to establish that Defendant is causing

15   irreparable harm that cannot be cured by money damages."). Accordingly, the Court

16   should find Champion-Cain has failed to produce "probative, nonspeculative

17   evidence" that they have "lost, or will likely lose, prospective customers or goodwill

18   due to" Lovesurf's allegedly infringing conduct. *Spiraledge, Inc. v. Seaworld Entm't,*

19   *Inc.,* 2013 U.S. Dist. LEXIS 96616, 12 (S.D. Cal. July 9, 2013).

20       Since Champion-Cain fails to meet the burden of demonstrating that irreparable

21   injury is likely in the absence of an injunction, the Court "need not decide whether

22   [they are] likely to succeed on the merits." *Oakland Tribune,* 762 F.2d at 1378 (9th

23   Cir. 1985) ("Under any formulation of the test, plaintiff must demonstrate that there

24   exists a significant threat of irreparable injury. Because the [plaintiff] has not made

25   that minimum showing, we need not decide whether it is likely to succeed on the

26   merits.") *Spiraledge*, 2013 U.S. Dist. LEXIS 96616 at 16-17.

27       Finally, even if a presumption of irreparable harm was still available where

28   there was a strong likelihood of success on the merits, irreparable harm may not be

presumed here because Champion-Cain cannot demonstrate a likelihood of success on the merits as discussed below. *Wahoo Int'l*, 2014 U.S. Dist. LEXIS 74927 at 12-13.

### C.   Champion-Cain Has No Likelihood of Success on the Merits

Champion-Cain asserts a trademark infringement claim under 15 U.S.C. §1125(a) because their LUV SURF wordmark is unregistered. **[Dkt. 1:9, ¶46.]** To state a claim for trademark infringement under that statute a plaintiff must demonstrate that it is: "(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Herb Reed*, 736 F.3d at 1247 (citing *Grocery Outlet, Inc. v. Albertson's, Inc.*, 497 F.3d 949, 951 (9th Cir. 2007)).

### 1.   Champion-Cain Fails to Show Ownership of a Valid, Protectable Mark

Champion-Cain cannot show a likelihood of proving ownership of a valid, protectable mark because they cannot establish they were the senior users of their claimed LUV SURF mark. Lovesurf's evidence demonstrates that it was using the LOVESURF and HEART LOGO marks prior to any use of any mark claimed by Champion-Cain.

Three ways exist for a party to establish a protectable interest "(1) it has a federally registered mark in goods or services; (2) its mark is descriptive but has acquired a secondary meaning in the market; or (3) it has a suggestive mark, which is inherently distinctive and protectable." *Applied Information Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). Champion-Cain shows none of these ways.

### a.   No Presumption of a Protectable Interest Shown

Registration of a mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and the registrant's exclusive use of the mark on the goods and serves specified in the registration. *Id.; see also* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark. . . ."); see also *Wahoo Int'l*, 2014 U.S. Dist. LEXIS 74927 at 13-14. However, even that presumption

can be rebutted "by showing that the registrant had not established valid ownership rights in the mark at the time of registration—in other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated." *Sengoku Works v. RMC Int'l*, 96 F.3d 1217, 1219-20 (9th Cir. 1996); see also *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 898 (C.D. Cal. 2014).

> *Applied Info.*, 511 F.3d at 970 explained:

>> Without registration, a plaintiff "would have to establish his right to exclusive use in a common law infringement action," *Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 775 (9th Cir. 1981), such as by proving that the mark is not generic, see *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999), and that no one else had first used it in commerce, *see Brookfield Communications*, 174 F.3d at 1047.

Champion-Cain may have registered the LUV SAN DIEGO SURF logo and the HEART SURF logo, but they have not registered the LUV SURF wordmark or any derivation thereof such as Lovesurf or Luvsurf. So there is no presumption that they have a valid trademark in the LUV SURF wordmark. Champion-Cain must show that it is a protectable mark and that they were the first to actually use it. Even if there was a presumption of validity, Lovesurf's evidence of prior use rebuts any presumption.

### b.    No Inherent Distinctiveness or Secondary Meaning.

Champion-Cain fails to show that the claimed unregistered mark LUV SURF is descriptive but has acquired a secondary meaning, or that it is suggestive and inherently distinctive. This is a required element of Champion-Cain's burden of proving entitlement to trademark protection. *Applied Info.*, 511 F.3d at 969. For that reason alone, the preliminary injunction cannot issue.

11

Even if Champion-Cain's two registered logos, LUV SAN DIEGO SURF and HEART SURF have a presumption of validity, Lovesurf began using both its LOVESURF wordmark and its HEART WAVE logo prior to Champion-Cain's use of their marks, so Champion-Cain does not have a valid claim to any marks that are confusingly similar to Lovesurf's marks.

### c.     Champion-Cain's Use Is Junior to Lovesurf's Use

Even if Champion-Cain was able to show a likelihood that its unregistered mark is inherently distinctive or has secondary meaning, it then still must show it was the first to use the mark in commerce. 15 USCS § 1127 provides that "For purposes of this Act, a mark shall be deemed to be in use in commerce--

**(1)** on goods when--

> **(A)** it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

> **(B)** the goods are sold or transported in commerce.

"For both goods and services, the 'use in commerce' requirement includes (1) an element of actual use, and (2) an element of display." (citing 15 U.S.C. § 1127)). *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001). *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1205 (9th Cir. 2012) explained that.

> In determining whether the two prongs of the "use in commerce" test have been satisfied, we have … generally followed a "totality of the circumstances" approach. This approach turns on "evidence showing, first, adoption, and, second, Use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind." …. We have … indicated that evidence of actual sales, or lack thereof, is not dispositive in determining

1   whether a party has established "use in commerce" within

2   the meaning of the Lanham Act. Instead, we have

3   acknowledged the potential relevance of non-sales activity

4   in demonstrating not only whether a mark has been

5   adequately displayed in public, but also whether a service

6   identified by the mark has been "rendered in commerce,"15

7   U.S.C. § 1127.

8   Lovesurf's evidence is that it used the LOVESURF wordmark and the HEART

9   WAVE logo prior to any use by Champion-Cain of any of their claimed marks.

10  Champion-Cain argues for a protectable interest in their alleged trademarks

11  because they were the first to use the LUV SURF wordmark, the LUV SAN DIEGO

12  SURF logo, and the HEART SURF logo. **[Dkt. 18-1:16]** However, the facts alleged

13  by Champion-Cain and the evidence provided by Lovesurf do not support its claim.

14  Champion-Cain alleges that they first used the LUV SAN DIEGO SURF logo

15  in connection with a vacation rental business in August 25, 2011, on tote bags on or

16  about December 25, 2011, and on apparel sometime between February 9, 2012 and

17  July 4, 2012. **[Dkt. 18-2:2, ¶4-8]**

18  Champion-Cain's allegations are unclear and inconsistent. They allege sale of

19  products in their retail store and online stores bearing the marks LUV SURF, the LUV

20  SAN DIEGO SURF logo, and the HEART SURF logo. **[Dkt. 18-1:16]** But their

21  online store opened on April 12 and the retail store opened on July 4, 2012. **[Dkt. 18-**

22  **2:3, ¶8].** It is unclear when they started using the LUV SURF wordmark rather than

23  their other logo marks. The alleged April 12, 2012 online store sales of clothing is the

24  first possible alleged use of the LUV SURF wordmark. Champion-Cain's exhibits

25  show only use of the name "Luv San Diego Surf" but not "Luv Surf" in connection

26  with their real estate business through at least March 2012. **[Dkt. 19-1:27, 29-30, 32,**

27  **34-35, 38, & 40].**

28  In contrast, Lovesurf's evidence shows first use of the LOVESURF wordmark

in 2010 when LOVESURF sponsored a volleyball tournament and beach clean-up, distributed a flyer advertising those events, and distributed actual clothing using the brand name LOVESURF. **[MacDonald Decl. ¶3, Ex. "2"-"3"]** Lovesurf also shows prior use of the term LOVESURF on clothing on July 12, 2011 and for sale on websites by August 15, 2011 **[MacDonald Decl. ¶4, Ex. "1"-"9"]** and sales of clothing displaying the LOVESURF wordmark within a few weeks of the Internet listing. **[MacDonald Decl. ¶5]**

All of Lovesurf's uses predated by one to three years Champion-Cain's alleged use of the word LUV SURF on clothing beginning around April 12, 2012. Champion-Cain does not specify the exact date of use of the LUV SAN DIEGO SURF logo in August 2011, but their **Exhibit "I"** shows that they were not invoiced for the design of that logo until August 25, 2011. **[Dkt. 19-1:22]** It is likely that Champion-Cain did not use the logo prior to the date of the invoice for their design. Even if they did, it was only in connection with vacation rentals, not clothing sales. And they did not use the actual term LUV SURF. It was, therefore, not a prior use in commerce of that mark. Champion-Cain does not allege the use of either of the logos on clothing until at least February 9, 2012, well after Lovesurf's use began in 2010. **[Dkt. 18-1:16]**

Champion-Cain incorrectly contends that Lovesurf's first use was March 4, 2012 and first use in commerce was July 7, 2013. This is based on Lovesurf's application to trademark the HEART WAVE LOVESURF logo. **[Dkt. 18-1:16-17]** But that application referred to the first use of a particular logo Lovesurf was applying to trademark that was different from and in addition to other marks it had been using. That new logo used a combination of the HEART WAVE logo placed horizontally and to the left of stylized script spelling out LOVESURF. This was an application for a graphic mark and not a wordmark. **[MacDonald Decl. ¶9, Dkt. 19-1:42-58]** Components of that new logo, the wordmark LOVESURF and the HEART WAVE logo, were in use by Lovesurf in 2010 and December 2011 respectively. **[MacDonald Decl. ¶9]** Champion-Cain's Exhibit "Q" is a copy of Lovesurf's application for that

trademark which includes images of the mark applied for. **[MacDonald Decl. ¶9, Dkt. 19-1:42-58].** It can be plainly seen that the HEART WAVE logo is the same as that created and used by Lovesurf in December 2011 and that it appears next to the stylized version of the wordmark LOVESURF used by Defendants in 2010, on July 12, 2011, August 15, 2011, December 28, 2011 and thereafter. **[MacDonald Decl. ¶2-8]** These uses predate Champion-Cain's alleged first use of the wordmark LUV SURF on clothing on or about April 12, 2012 and are even prior to Champion-Cain's first alleged use of the LUV SAN DIEGO SURF logo in their vacation rental business on August 25, 2011.

The totality of the circumstances evidences that Lovesurf and not Champion-Cain is the senior user of the LOVESURF trademark and HEART WAVE logo and that Champion-Cain has no valid ownership interest in their alleged marks. Consequently Champion-Cain is not likely to succeed on the merits of their claims.

### 2.    Champion-Cain Cannot Show a Likelihood of Confusion

Because the facts outlined above show that Lovesurf is the senior user and owner of the LOVESURF trademark, all of Champion-Cain's arguments about a likelihood of confusion actually weigh in favor of Lovesurf's counterclaim for trademark infringement and cannot support the motion for preliminary injunction. For this additional reason, Champion-Cain cannot show that they are likely to succeed on the merits of their trademark infringement claim.

### D.    The Balance of Equities and Public Interest Favor Lovesurf

The remaining two *Winter* factors—balance of equities and public interest—also weigh against Champion-Cain's request for injunctive relief again because Lovesurf is the senior user of the marks.

Champion-Cain's argument on the balance of equities are based on evidence showing it to be the junior user and the infringer of Lovesurf's marks. **[Dkt. 18-1:21]** The grant of a preliminary injunction would be inequitable. Champion-Cain has not established a likelihood of success on the merits or irreparable harm. Balanced against

Champion-Cain's interests are the considerable costs, both monetary and reputational, that Lovesurf would suffer if forced to cease using the LOVESURF trademark. See *Mytee Prods.*, 2013 U.S. Dist. LEXIS 158539 at 17-18.

In the trademark context, courts often define the public interest as the right of the public not to be deceived or confused. *See, e.g., Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008); *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) (noting the public interest is served by avoiding confusion in the marketplace); *BellSouth Adver. & Publ'g Corp. v. The Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991) ("When a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his products' reputation.").

Champion-Cain does not address the public interest factor except to conclude that for the reasons above, it weighs in their favor. **[Dkt. 18-1:22]** The evidence, however, actually shows that Lovesurf is the senior user and owners of the LOVESURF and HEART WAVE marks so Champion-Cain is responsible for any consumer confusion. In light of the failure to show a likelihood of irreparable harm or success on the merits, and the fact that any consumer confusion is caused by Champion-Cain, the balance of equities and the public interest weigh against granting injunctive relief. Neither equities nor public interest favors an infringing plaintiff.

## III.   NO INJUNCTION CAN BAR DISPARAGING STATEMENTS

### A.   The First Amendment Prohibits The Prior Restraint Of Speech

Champion-Cain improperly seeks an injunction barring Lovesurf from "making defamatory and disparaging statements about Plaintiffs and/or the LUV SURF brand." **[Dkt. 18:2]** The basis for this request are allegedly defamatory and disparaging statements allegedly made by Lovesurf on websites, communications to Champion-Cain's employees, and in contacts with third parties. **[Dkt. 18-1:9-12].**

Champion-Cain argues that Lovesurf's alleged statements constitute trade libel

and that they can show a likelihood of success on the merits under the test for proving trade libel. Champion-Cain, however, ignores the fact that it is seeking a prior restraint on Defendants' future speech. Doing so is impermissible. Courts presume that prior restraints are unconstitutional. *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 103 (1979). citing *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70 (1963).

Prior restraint considerations that impact commercial speech rights may also affect a preliminary injunction analysis. *See New.net, Inc. v. Lavasoft,* 356 F. Supp. 2d 1071, 1081-90 (C.D. Cal. 2003); and *Allen v. Ghoulish Gallery,* 2007 U.S. Dist. LEXIS 37514, 6-7 (S.D. Cal. May 23, 2007). An injunction against speech and expression is an example of a prior restraint on speech. *Ghoulish Gallery,* 2007 U.S. Dist. LEXIS 37514 at 7-8. Prior restraints are only allowed in very narrow circumstances constituting "exceptional cases," such as to protect military secrets in wartime or to enjoin trademark violations. *Smith v. Daily Mail,* 443 U.S. at 103, citing *Near v. Minnesota,* 283 U.S. 697, 716 (1931); *San Francisco Arts & Athletics v. U.S.O.C.,* 483 U.S. 522, 540-541 (1987).

Defamatory statements cannot be restrained; the remedy for defamation is a damages action after publication. *Id.,* citing *New.net,* 356 F. Supp. at 1087-88; and *Gilbert v. Nat'l Enquirer,* 43 Cal.App.4th, 1135, 1144-45 (1996). The **repetition** of defamatory statements **may** be enjoined only where a court has determined, after trial, that one party has defamed another. *Id.,* citing *Balboa Island Village Inn, Inc. v. Lemen,* 40 Cal. 4th 1141 (April 26, 2007).

In *Ghoulish Gallery,* also a trademark infringement case, the defendants sought to enjoin plaintiff from making disparaging comments, either orally or in writing, about defendants and the litigation, and from contacting, either directly or indirectly, any of defendants' customers. The court ruled that this type of conduct cannot be enjoined:

> First, the proposed injunction would put a prior restraint on
> plaintiff's speech, and defendants have set forth no facts or law

supporting the proposition that the conduct here rises to the level of an "exceptional case" that warrants imposing a prior restraint on plaintiff's speech. Second, the conduct sought to be enjoined appears to fall under defendants' counterclaims for trade libel, defamation and intentional interference with prospective economic advantage, for which there are other remedies at law.

*Ghoulish Gallery*, 2007 U.S. Dist. LEXIS 37514 at 8.

Similarly here Champion-Cain seeks to enjoin Lovesurf from making future disparaging comments about them and their brand because of prior statements that allegedly constitutes trade libel. Such speech cannot be enjoined because: (1) the proposed injunction would put a prior restraint on Lovesurf's free speech rights, and Champion-Cain has presented no facts or law establishing that this is an "exceptional case" warranting a prior restraint; and (2) the conduct falls under Champion-Cain's claims for defamation, slander, and intentional interference with prospective economic advantage for which there are remedies at law.

Champion-Cain does not overcome the presumption that the proposed injunction is unconstitutional. Enjoining the alleged conduct would act as a prior restraint on Lovesurf's speech, violating First Amendment rights.

**B.     Whether Statements Are Commercial Speech Is Not Controlling**

Champion-Cain is not seeking to enjoin purely commercial speech such as false advertising. Champion-Cain seeks to enjoin statements about them or the LUV SURF brand on the theory that any such statements would be defamatory and disparaging. In fact, Champion-Cain makes no argument whatsoever that Lovesurf's future speech may be enjoined because it is commercial speech. But even if it were purely commercial speech, a preliminary injunction is unavailable because the truth or falsity of that speech has not been determined and the Court cannot make that determination or prediction here.

While the First Amendment offers no protection for false or deceptive

commercial speech, *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 563 (1980), truthful commercial speech does enjoy meaningful First Amendment protection. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978); *Fox*, 492 U.S. at 478.

However, the question of the *actual* truth or falsity of Lovesurf's speech is not appropriate on this motion for *preliminary* injunctive relief. *New.net*, 356 F. Supp. 2d at 1084. "A preliminary injunction is not a preliminary adjudication on the merits, but a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Textile Unlimited, Inc. v. A..BMH & CO.*, 240 F.3d 781, 786 (9th Cir. 2001). The Supreme Court has focused on this as a particular basis for proscribing prior restraints, observing: "[t]he special vice of a prior restraint is that communication will be suppressed . . . before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973). In other words, "[t]he danger of a prior restraint, as opposed to [an] *ex post* . . . action, is precisely that making predictions *ex ante* as to what restrictions on speech will ultimately be found permissible is hazardous and may chill protected speech." *Latino Officers Ass'n, New York, Inc. v. City of New York*, 196 F.3d 458, 465 (2d Cir. 1999). By contrast, "once a jury has determined that a certain statement is libelous, it is not a prior restraint for the court to enjoin the defendant from repeating that statement." *Kramer v. Thompson*, 947 F.2d 666, 676 (3d Cir. 1991).

See also *New.net*, 356 F. Supp. 2d at 1084, 1089 which applied the above legal authority and held that even if it was permitted to enjoin purely commercial speech upon a showing that it was false, no such showing had been made in that case. The court then denied a preliminary injunction seeking to bar disparaging statements, among other things.

Even if it was appropriate to determine the falsity of Lovesurf's alleged statements at the preliminary injunction stage (which it is not), Champion-Cain has

1  made no showing that Lovesurf's alleged statements were false. Their only evidence

2  for falsity is the allegation that the LUV SAN DIEGO SURF logo was designed and

3  in use before March 4, 2012. **[Dkt. 18-1:14]** However, Defendants' evidence outlined

4  above shows that Lovesurf was using the LOVESURF marks well in advance of the

5  date alleged by Champion-Cain. Most importantly, Lovesurf denies that any of the

6  alleged statements are false. **[MacDonald Decl. ¶17]**. The statements simply assert

7  that Lovesurf was the first user and owner of the LOVESURF mark.

8        Similarly, in *J.K. Harris & Co. LLC v. Kassel*, 253 F. Supp. 2d 1120, 1128

9  (N.D. Cal. 2003), the plaintiff sought a broad injunction against "defamatory, untrue,

10  or misleading" statements. The court held that "although false commercial speech may

11  be enjoined, any such injunction must be limited to those statements likely to be in

12  violation of the Lanham Act." The court held that the proposed "injunction is

13  overbroad because it would reach more than the specific statements claimed to be in

14  violation of the Lanham Act. [citations] Consequently, the Court will not extend the

15  temporary restraining order prohibiting the publication of 'any statement concerning

16  Plaintiff J.K Harris that is false or defamatory and that is known, or by the exercise of

17  reasonable care should be known, to be false or defamatory.'" *Id.* The court also

18  denied an injunction against prior statements by the defendant that may have been in

19  violation of the Lanham act because the falsity of the statements was disputed in the

20  defendant's declaration. *Id.* at 1129. The court allowed an injunction only against

21  dissemination of prior statements that the defendant did not deny to be false. *Id.*

22        Champion-Cain seeks an injunction prohibiting any future defamatory or

23  disparaging statement, not the dissemination of prior statements that violate the

24  Lanham Act. Furthermore, Champion-Cain does not even allege that any of the

25  alleged statements were in violation of the Lanham Act. Even if prior statements were

26  possibly in violation of the Lanham act, Lovesurf denies that any alleged statements

27  are false and the evidence proves them to be actually true. **[MacDonald Decl. ¶17].**

28

### C.    The Alleged Statements Relate To A Matter Of Public Interest

The *New.net* court at 356 F. Supp. 2d at 1085-1089 discussed the possibility of different levels of protection between public versus private interest speech, but held that the statements at issue were a public matter and were entitled to full protection against prior restraints and even private speech enjoys First Amendment protection.

Lovesurf's alleged statements address a matter of public concern entitling them to full protection against prior restraints. "Whether . . . speech addresses a matter of public concern must be determined by [the expression's] content, form, and context… as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-148 (1983); *Dun & Bradstreet, Inc v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985).

In applying this test, the *Dun & Bradstreet* Court found the issuance of a false credit report not to be a topic of public concern, explaining that "[i]t was speech solely in the individual interest of the speaker and its specific business audience;" that the speech has been found to be "wholly false and clearly damaging to the victim's business reputation;" and that "the credit report was made available to only five subscribers, who, under the terms of the subscription agreement, could not disseminate it further . . . ." *Id.* at 762. This combination convinced the court that "[t]here is simply no credible argument that this type of credit reporting requires special protection to ensure that debate on public issues [will] be uninhibited, robust, and wide-open.'" *Id.* (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

The present case is different for several reasons. **First**, Lovesurf's alleged statements touch on issues of public concern regarding consumers' confusion over the source of products they are purchasing i.e. whether the clothing they are purchasing originates with Lovesurf or Champion-Cain. Champion-Cain alleges that Lovesurf made statements on publically available websites and social media sites, and to third parties regarding who was first to use the trademarks at issue.

**Second**, "due to the procedural posture of this matter, unlike that in *Dun & Bradstreet* for example, there is no final finding of falsity to justify preliminary

relief." *New.net*, 356 F. Supp. 2d at 1086.

*New.net* points out that case law adds strong support to the conclusion that Champion-Cain's requested injunction is constitutionally infirm. *Id.* It cited *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035 (C.D. Cal. 1998), where the court denied an injunction barring the release of an allegedly false report relating to automobile safety as an impermissible prior restraint stating that "[s]uch an injunction would necessarily precede an adequate determination that a particular statement by defendant was false, defamatory or disparaging." The *Isuzu* court dismissed the claim to the extent that it sought relief "beyond enjoining defendant from making specific statements determined to be unprotected by the First Amendment," and he noted that it would be necessary for a jury to determine which of the defendant's statements would be so unprotected. *Id.*

*New.net* also cited *Bihari v. Gross*, 119 F. Supp. 2d 309 (S.D.N.Y. 2000), where the court denied an injunction as an improper prior restraint holding that the defendant's posting of accusations of fraud and deceit stemming from what he perceived was a bad interior decorating job. The *Bihari* court held that "such speech is arguably within the sphere of legitimate public concern, which imbues the speech with a heavy presumption of constitutional protection." *Id.*

Lovesurf's alleged statements concern trademark infringement and theft of trade secrets by Champion-Cain who sells disputed products to the public under a disputed trademark. In this context, courts often define the public interest as the right of the public not to be deceived or confused. *See Moroccanoil*, 590 F. Supp. 2d at 1282. Because the disputed statements address a subject of public importance and debate, they are entitled to the full protection of the First Amendment.

Even if this Court found the alleged statements to be private speech, no controlling authority supports the proposition that prior restraints may be imposed on speech involving "private" disputes. *New.net*, 356 F. Supp. 2d at 1088-1089.

/ / /

**D.**    **Because the Requested Relief Constitutes a Prior Restraint, The Court Need Not Assess The Typical Factors For Preliminary Injunctive Relief**

As Champion-Cain's requested injunction would constitute an impermissible prior restraint, the Court does not need to address the usual factors for determining the right to a preliminary injunction such as a likelihood of success, irreparable harm, the balance of equities, and public interest. *Id.* at 1089. But even under the typical standards the facts weigh against a preliminary injunction.

**1.**    **Irreparable Harm**

Champion-Cain incorrectly argues that because it demonstrates a likelihood of success on the merits of the Defamation and Slander causes of action, irreparable injury may be presumed. **[Dkt. 18-1:15, citing *Cottrell*, 632 F.3d at 1131].** *Cottrell* makes no such statement. *Cottrell*, 632 F.3d at 1131, actually held that although the 9th Circuit had previously said that the "possibility" of irreparable harm was sufficient, in some circumstances, to justify a preliminary injunction, *Winter* explicitly rejected that approach. *Id.* "Under *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Id.*, citing *Winter*, 555 U.S. at 22.

The portion of the *Cottrell* decision cited by Champion-Cain actually discusses the survival of the "serious questions" test where a preliminary injunction may issue when there are serious questions raised as to the likelihood of success on the merits but the balance of hardship tips sharply in favor of the plaintiff, and the other two factors are also established in favor of the plaintiff. *Id.* at 1140. It does not allow for a presumption of irreparable injury and, in fact, holds the opposite.

Champion-Cain alleges that Mr. MacDonald began making statements about them in the Spring of 2014. **[Dkt. 18-3, ¶6].** On July 1, 2014, Champion-Cain's counsel sent a cease and desist letter to Mr. MacDonald demanding that he cease the use of LOVESURF and that he cease any further contact with Champion-Cain's employees, vendors, customers, and associates. **[Dkt. 18-12:29-30].**

Despite this alleged knowledge of disparaging statements, Champion-Cain did not file this motion for a preliminary injunction until January 23, 2015, almost a year after they alleged they were first aware of Defendants' alleged defamation and almost six months after the first cease and desist letter was sent. This protracted delay demonstrates the lack of immediacy and urgency to warrant irreparable harm. See *Wahoo Int'l*, 2014 U.S. Dist. LEXIS 74927 at 9-10.

Champion-Cain makes only a conclusory statement that they will suffer irreparable harm to their business and adversely affected sales, Champion-Cain has provided no evidence to support such a claim. *See Herb Reed*, 736 F.3d at 1251. So this factor weighs against injunctive relief.

Champion-Cain's failure to establish this factor alone requires that the injunction not be issued. *See Dish*, 653 F.3d at 776-77.

### 2.    Likelihood of Success

Champion-Cain has made no showing that Lovesurf's alleged statements were false. Their only evidence for falsity is the allegation that the LUV SAN DIEGO SURF logo was designed and in use before Defendants' claimed first use date of March 4, 2012. **[Dkt. 18-1:14]** However, the evidence shows that Lovesurf was using the LOVESURF marks well in advance of Champion-Cain's alleged first use in the clothing industry about April 12, 2012. **[MacDonald Decl. ¶2-8].** The evidence also shows that Chris Kramer, employed by Plaintiffs, worked for Lovesurf just prior to Champion-Cain's claimed use of the marks on clothing. **[MacDonald Decl. ¶12-15].** That fact makes likely the truth of statements that Kramer took Lovesurf's ideas, including its trademarks and trade secrets, to Champion-Cain for their improper use. Therefore, the complained of statements are true. Lovesurf denies that any of the alleged statements are false. **[MacDonald Decl. ¶17].** Champion-Cain's failure to establish this factor in itself requires the denial of an injunction.

### 3.    The Balance of Equities and Public Interest Favor Lovesurf

Champion-Cain does not bother to address the balance of equities or public

interest factors in their request for an injunction prohibiting disparaging statements. The balance of equities, however, favors Lovesurf because an injunction would impermissibly impinge on their First Amendment free speech rights, and Champion-Cain has alternate remedies for any future defamation or disparaging statements.

Furthermore, an injunction is not in the public interest because it would set a bad precedent as to First Amendment free speech rights and have a chilling effect on the public's right to free speech. The public has an interest in being informed of trademark disputes so that it may avoid confusion. In addition, the public's potential confusion as to the source of the parties' products is minor compared to the chilling effect on free speech rights.

## IV.   CONCLUSION

Lovesurf respectfully requests this Court deny Champion-Cain's motion.

Dated:  February 20, 2015

**GAUNTLETT & ASSOCIATES**

By:   /s/ James A. Lowe
       David A. Gauntlett
       James A. Lowe

Attorneys for Defendants and
Counterclaimants, BRIAN
MACDONALD AND LOVESURF,
INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2015, I electronically filed the foregoing **DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.


*/s/James A. Lowe*

James A. Lowe