STEVEN J. COLOGNE, ESQ. (Bar No. 118534)
scologne@higgslaw.com
CHARLES F. REIDELBACH, JR., ESQ. (Bar No. 167482)
reidelbach@higgslaw.com
CHRISTINA G. BOBB, ESQ. (Bar No. 259430)
cbobb@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, CA  92101-7913
TEL:  619.236.1551
FAX:  619.696.1410

Attorneys for Plaintiffs
GINA CHAMPION-CAIN, an individual; LUV SURF, LP, a
California limited partnership; ANI COMMERCIAL CA I,
LLC, a California limited liability company; ANI
COMMERCIAL CA II, LP, a California limited partnership

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CHAMPION-CAIN, an individual; LUV SURF, LP, a California limited partnership; ANI COMMERCIAL CA I, LLC, a California limited liability company; ANI COMMERCIAL CA II, LP, a California limited partnership, | CASE NO. 14-CV-02540-GPC-BLM<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>DATE:          June 5, 2015<br>TIME:          1:30 p.m.<br>CTRM:        2D<br>JUDGE:       Hon. Gonzalo P. Curiel<br><br>CASE FILED: October 23, 2014<br>TRIAL DATE:    Not Set |
| Plaintiff, | |
| v. | |
| BRIAN MACDONALD, an individual; LOVESURF, INC., a Delaware corporation, and DOES 1-10, inclusive, | |
| Defendants. | |
| AND RELATED COUNTER-CLAIM. | |

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

3376593.2

Case No. 14-CV-02540-GPC-BLM

Plaintiffs GINA CHAMPION-CAIN, LUV SURF LP, ANI COMMERCIAL CA I LLC and ANI COMMERCIAL CA II LP ("Plaintiffs") respectfully submit this Reply Brief in response to Defendant BRIAN MACDONALD's and LOVESURF, INC.'s ("Defendants") Opposition to Plaintiffs' Motion for Preliminary Injunction.

## I.

## INTRODUCTION

***Defendants' Opposition should be disregarded in its entirety because the exhibits purportedly supporting Defendant's claim of superior use are shown to be manufactured*** [*see, e.g.,* Declaration of Peter Garza, ¶ 5 and Objections to Evidence Nos. 1 – 10, 13 – 15, 21]. Plaintiffs' evidence filed with its Motion for Preliminary Injunction show that Plaintiffs' were the first to use the terms "Luv Surf" as a trademark. That, along with Plaintiffs' valid trademark registrations, prove that Plaintiff is entitled to use the "Luv Surf" trademark and Defendants should be enjoined from using "Lovesurf"[1].

## II.

## SUMMARY OF ARGUMENT

Defendants do not attack Plaintiffs' presumption of validity and exclusive rights to use the Luv Surf Logo except on the basis of seniority of use, which it fails to establish. Note that Defendant in its counterclaim admits to likelihood of confusion as between the marks [Dkt #9 ¶ 28 of counterclaim]. Defendants would have the Court believe that it began using "Lovesurf" as a trademark on apparel in July 2010, and the evidence Defendants attached to the Declaration of Brian MacDonald superficially appears to support that story. However, a computer

---

[1] Notably, the trademark at issue for Plaintiffs in its motion for preliminary injunction is Defendants use of the term LOVESURF or any colorable variation thereof. Plaintiffs do not contest Defendants' right to use its HEART WAVE logo apart from the terms LOVESURF, SURF, or any colorable variation these terms. For example, Defendants' may use its HEART WAVE logo with the terms LUV YOUR BEACH, as reflected in the email exhibits referring to their business marketing plan.

forensic examination of Defendants' evidence conclusively shows that the "evidence" was manufactured to show earlier dates of first use than Plaintiffs' date of first use. That, along with contextual evidence in this case, as demonstrated in the Rebuttal to Defendants' Asserted Facts, attached as Exhibit "A", and the Timeline of Defendants' Trademark Use, attached as Exhibit "B", proves that in fact Plaintiffs first used the brand name "Luv Surf" at least one full year earlier than Defendants.

Plaintiffs have a valid and existing registration for its LUV SURF LOGO®. (see Dkt #1, Exhibit C). A registration on the Principal Register is prima facie evidence of the validity of the registered mark, of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark. [Lanham Act Section 7(b), 15 USCA Section 1057(b); Lanham Act Section 33(a), 15 USCA 1115(a)]. Registration on the Principal Register is also prima facie proof of continual use of the mark, dating back to the filing date of the application for registration. *J.C. Hall Co. v. Hallmark Cards, Inc.*, 340 F.2d 960, 144 USPQ 435 (CCPA 1965). The LUV SURF LOGO registered trademark was filed on May 31, 2012, well before any first trademark use by Defendant of "Lovesurf."

Finally, Defendants' ranting on the Lovesurf website are commercial speech and can be enjoined. For these reasons, Plaintiffs Motion for Preliminary Injunction should be GRANTED.

## III.

## DISCUSSION

### A.    Defendants Are Not The Senior User Of The Mark At Issue.

Unlike Plaintiffs, Defendants do not have any valid and existing trademark registrations, and thus do not enjoy any presumption of trademark ownership or validity to the term LOVESURF. Defendants assert its earlier "senior" common law rights to the term LOVESURF using ***manufactured*** evidence to support its

allegations of superior use. Even without the evidence that Defendants' exhibits are manufactured and/or irrelevant, Defendants fail to show common law trademark use of the LOVESURF term prior to Plaintiffs' federal trademark filing date of May 31, 2012, and prior to Plaintiffs' first use on December 19, 2011 (*see* Plaintiffs' Exhibit "O", attached to Motion for Preliminary Injunction). The evidence clearly shows that Defendants' use is well after either of these dates [*see* Table of Rebuttal Evidence to Defendants' Asserted Facts, attached as Exhibit "A".]

Defendants assert that Plaintiffs have only registered the LUV SURF LOGO, and not the words LUV SURF. On that theory, Defendants argue that Plaintiffs are not entitled to a presumption of trademark ownership to the terms LUV SURF. Aside from the fact that Plaintiffs do have a separate pending trademark application for the terms LUV SURF as a word mark, Plaintiffs disagree that it is not entitled to a presumption of ownership based upon a registered mark that prominently displays these terms. The LUV SURF LOGO is a composite mark and prominently displays terms "LUV SURF" in its own font and style. The composite mark includes the terms "SAN DIEGO," but those terms are disclaimed in the application as the terms "LUV SURF" predominate and create the primary commercial impression associated with the registered mark. The prominence and significance of the terms LUV SURF as Plaintiff's brand is unquestionable, as Plaintiffs have from the beginning frequently used the terms LUV SURF alone and apart from other components in the LUV SURF LOGO. For example, 1) "Luv Surf, San Diego" was the name shown on its first invoice for goods dated November, 2011(*see* Dkt #18, Exhibit "O"); 2) registration and use of the domain names luv-surf.com, luvsurfclothing.com, and luvsurfretail.com beginning in February, 2012 (*see* Dkt #18, Declaration of Gina Champion-Cain, ¶ 8); 3); creation of a twitter account under the "Luv Surf" handle in or about early 2012; 3) specimens filed in connection with its first trademark application filed May 31, 2012 showing samples of dog clothing branded with "Luv Surf" (DKT #18, Exhibit X), 4) the signage on

the outside of its retail store that opened July 4, 2012 (DKT # 1, Exhibit C shown in the specimens submitted with its LUV SURF trademark application filed on October 21, 2014, and displayed frequently in its advertising); 5) specimens which have been submitted and accepted by the trademark office in its pending trademark application for the word mark "LUV SURF" (DKT #1, Exhibit C).  There is no question that LUV SURF is Plaintiff's brand and predominates in the commercial impression created by its registered LUV SURF LOGO.

**B.    Defendants' Evidence Is Insufficient To Show Superior Use.**

1.    Computer Forensic Exam

Following receipt of Defendant MACDONALD's Declaration and exhibits, a forensic computer examination of Defendants' computers from where Defendants' exhibits allegedly came conclusively shows that Defendants' evidence of Defendants' first use does not reflect true and accurate dates and evidence, but rather it shows that Defendant MACDONALD manufactured dates to support his claims in his Declaration [*see* Declaration of Peter Garza, ¶ 5; Objections to Evidence][2].  The expert opinions can be summarized as follows:

- A document purported by Mr. MacDonald to be a flyer dated in July 2010 was actually prepared on February 20, 2015, and not in 2010 as asserted.
- The files purported to have been copied to Mr. MacDonald's Western Digital brand external hard disk drive were actually copied to the drive on or about February 20, 2015.
- A document purported to be a 2011 acknowledgement of a purchase of a Lovesurf t-shirt had file dates of March 20, 2015 and not 2011.
- The filenames and nonexistent metadata indicate the photographs of the Lovesurf t-shirts, referenced in Mr. MacDonald's declaration, have been edited or otherwise manipulated from their original content and stored

---

[2] The date of Defendant MACDONALD's signature on his Declaration is incorrect: it is dated 2014 rather than 2015.

under a new name.

- The file dates of the photographs of Lovesurf t-shirts, referenced in Mr. MacDonald's declaration, namely February 14, 2012, is inaccurate as the system used to copy the files onto Mr. MacDonald's Western Digital External Hard Drive had its system time set back to reflect this date when the files were actually transferred on February 20, 2015.

- There are anomalies in screen captures Mr. MacDonald describes as "Internet listings" from BundlePower.com which indicates they are mock ups and not accurate representations of the live Bundlepower.com web pages;

- The Lovesurf.com domain was not used to sell surf themed apparel before December 2012;

2.    Defendants' Exhibits

The contextual evidence in this case supports the Computer Forensic Examination findings, and does not support Defendants' position this it is a senior user of the trademark. Any defendant who is faced with a demand to stop using its primary brand would submit its best and strongest evidence of first use to defend its rights.

Defendant has provided only one acknowledgement of a single sale of one t-shirt, the "Dream Session Tee." (Exhibit 14). Although the document purports to be an acknowledgement of a purchase of a Lovesurf t-shirt in 2011, the date of the file as examined by the expert is actually dated March 20, 2015 and not 2011. Defendant has not provided any evidence that this sale occurred on the data alleged, or was followed by any other sales to place the product on the market on a commercial scale. Chance v. Pac-Tel Teletrac, 242 F.3d 1151, 1157 (9th Cir. 2001). Even if the sale did occur on the date alleged (and it did not), such an isolated use may be deemed never to have created any rights at all. J. Thomas McCarthy, McCarthy On Trademarks And Unfair Competition § 16-20.3 (4th ed. 2013); *S*

*Industries, Inc. v. Stone Age Equipment, Inc.* 12 F. Supp. 2d 796, 49 (N.D. Ill. 1998) (a single use of a mark in a catalog, not followed by any other use at all did not result in the creation of any trademark rights); *Custom Vehicles, Inc. v. Forest River, Inc.* 476 F.3d 481, 486 (7th Cir. 2007) (a single sale of one product, "followed by frenetic but futile efforts to make a second sale" did not justify recognizing trademark rights in the designation, thereby "denying its use to sellers who can actually sell.").

The only products in the exhibits that Defendant asserts it was using the brand LOVESURF prior to Plaintiffs' are three single t-shirts; 1) the Dream Session Tee, 2) the I Love Surf Tee (actually "I [Heart] Surf"), and 3) a blank t-shirt. (Dkt # 23 - Defendants' Exhibits 1-9, 12, 13). Each of these three t-shirts allegedly bear a different hangtag with a completely different look and feel.

The expert examination of the files associated with the photographs (Dkt # 23 - Exhibits 1-4, 12, 13) show that the content was manipulated after the photographs were taken, and thus does not establish that the photographs existed on the date alleged or prior to Plaintiffs first use or filing date. In fact, the expert found that Defendant backdated the system time of the system used to copy these files unto Defendants' external hard drive. The files of the photographs were not transferred to Defendants' external hard drive on February 14, 2012 as it would appear by looking at the file creation dates, but rather were transferred on February 20, 2015. Further, a simple visual inspection of these exhibits also suggests they were manufactured. For example, the "Lovesurf" brand name supposedly affixed to the inside collar of the t-shirt in Exhibit "2" does not have the appearance of being affixed to a shirt that is on a hanger. Specifically, the spacing between the letters in the word LOVESURF are exactly equidistant and lack any contouring as you would expect to see of a label on a hanging shirt. It was, in fact, these idiosyncrasies in the appearance of the exhibits that led Plaintiffs to believe a forensic computer exam was necessary in the first place.

Despite representations by Defendant otherwise, the screen captures produced by Defendants' (Exhibits 5-9) conclusively show that they are mock ups and not accurate representations of live BundlePower.com web pages. And the beach flyer (Exhibit 20), dated in July 2010, was actually first prepared on February 20, 2015 and not in 2010. Thus, this evidence cannot be relied upon by Defendant to show an earlier first use of the trademark. Even if the beach flyer was used on the date alleged, it does not show that apparel bearing the "Lovesurf" brand logo was being sold or otherwise distributed.

The only dated evidence produced by Defendants' include emails that relate to a completely different brand. Defendants attached Exhibits 10, 11, 15-19 don't even relate to the brand name "Love/Luv Surf" or the subject of the motion [*see* Objections to Evidence Nos. 11, 12, 16 - 20]. Specifically, these exhibits relate to the terms "Love Your Beach", not Defendants' brand "Lovesurf". Additionally, Defendant MACDONALD states in his Declaration that he developed the Heart Wave logo to be used with his "LoveSurf" brand in December 2011, but the Exhibit shows the Heart Wave logo used with the words "Love Your Beach" not "Lovesurf.

In Defendants' Opposition (pg. 5, line 9), Defendants imply that Chris Kramer "learned [in December 2011] of Lovesurf's plans for the LOVESURF brand as well as plans for the use of the term "Luv" in connection with a line of products." This statement confirms that Defendants' LOVESURF brand was nothing more than a plan at best (although Plaintiffs dispute that Defendants had a plan for the LOVESURF brand at this time), and is inconsistent with the "public exposure" necessary to establish senior rights in the trademark. J. Thomas McCarthy, McCarthy On Trademarks And Unfair Competition § 16-20.1 (4th ed. 2013).

In addition to the above, the remaining contextual evidence in this case, as demonstrated in the Rebuttal to Defendants' Asserted Facts, attached as Exhibit "A", and the Timeline of Defendants' Trademark Use, attached as Exhibit "B",

unambiguously show that Defendants public launch of the LOVESURF brand was at least one full year Plaintiff's first use.

The timeline of events reflected in Defendants' Exhibit 21 is faulty because the dates are fraudulent. Notably, Defendants do not dispute dates asserted by Plaintiffs in its moving papers.

## C. Defendants' Speech Can Be Enjoined.

Commercial speech can be enjoined if it is false or misleading. *J.K. Harris & Co., LLC v. Kassel*, 253 F.Supp.2d 1120, 1128 (2003). The injured party may show damages either from a direct diversion of sales from itself, or a lessening of the goodwill associated with its products. *Id.*

### 1. Defendants' Speech is Commercial Speech

Commercial speech is defined as speech that proposes a commercial transaction. *New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1090, 1111 (2004).

Here, Defendant MACDONALD's rantings that Luv Surf is a "rip off" brand is commercial speech and may be enjoined. Defendant MACDONALD includes disparaging speech about LuvSurf on his apparel website which exists to advertise his clothing [see, e.g., Exhibit B attached to Plaintiffs' Motion for Preliminary Injunction]. He includes the sentence,

> Recently we learned that one of our former employees, Chris Kramer, is trying to launch a rip-off brand called Luv Surf Apparel in Mission Beach CA that impersonates the true and original LoveSurf Apparel . . . **please avoid these imitation LoveSurf products at all costs and support the true and original LoveSurf brand.**

Exhibit B attached to Plaintiffs' Motion for Preliminary Injunction (emphasis added).

This sentence proposes a commercial transaction with Lovesurf, encouraging consumers to buy from "Lovesurf" rather than "Luv Surf". "A party who has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to another or by a lessening of the goodwill associated with its

products, may seek an injunction." *Id.*

2.    <u>Defendants' Speech Is False</u>

As Courts have recognized, "false or misleading commercial speech may be prohibited entirely." *J.K. Harris & Co., LLC v. Kassel*, 253 F.Supp. 2d 1120, 1128 (2003). Defendants' speech is shown here to be false; Plaintiffs' were using the "Luv Surf" brand before Defendants used "Lovesurf", therefore Plaintiffs did not "rip off" the brand from Defendants.

Defendants' argument that its speech is true has been shown to be completely false (*see* discussion above.) Accordingly, an order from the court prohibiting Defendants from making false statements that Plaintiffs' brand "Luv Surf" is a "rip off" of Defendants' brand is appropriate. *See New.net v. Lavasoft*, 356 F.Supp.2d 1071, 1083 (2003).

# IV.

# <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that its Motion for Preliminary Injunction be GRANTED.

DATED: April 20, 2015              HIGGS FLETCHER & MACK LLP


By: *s/ Steven J. Cologne*
STEVEN J. COLOGNE
CHARLES F. REIDELBACH, JR.
CHRISTINA G. BOBB
Attorneys for Plaintiffs
GINA CHAMPION-CAIN, an
individual; LUV SURF, LP, a
California limited partnership; ANI
COMMERCIAL CA I, LLC, a
California limited liability company;
ANI COMMERCIAL CA II, LP, a
California limited partnership

EXHIBIT A

| Date | Defendant's Asserted Facts | Rebuttal Evidence |
|---|---|---|
| 2010 | Hats and t-shirts made using LOVESURF wordmark on tags. | No evidence was provided to substantiate this statement. None of the exhibits show use of the LOVESURF word mark on tags for hats or t-shirts, or any clothing.<br><br>Inconsistent with the trademark applications filed, and with allegation of first use dates in the trademark application. *See* Timeline of Defendant's Trademark Use ("Timeline") on 11/12/2012, 12/12/2013 and 5/27/2014.<br><br>Inconsistent with acquisition of and/or transfer dates of domain name registrations. *See* Declaration of Peter Garza ("Garza Decl.") at ¶¶ 52-53; *see* Timeline on 5/25/2012, 10/6/2012, 10/13/2012, 10/19/2012, 10/26/2012, 11/29/2012 and 12/14/2012.<br><br>Inconsistent with email exchanges between Defendant and graphic designer showing focus of company was in developing LuvYourBeach brand. *See* Declaration of Charles Reidelbach ("Reidelbach Decl.") at ¶ 2.<br><br>Inconsistent with email exchanges between Defendant and Chris Kramer regarding LYB Marketing Plan showing focus of company was in developing LuvYourBeach brand. *See* Docket. 23-16 to Docket. 23-20. |
| 2010 | Lovesurf sponsored 2010 volleyball tournaments and beach cleanups. Advertised with flyers. Distributed hats and t-shirts bearing the LOVESURF wordmark at tournaments and beach clean-ups. | Fraudulent document (beach flyer). *See* Garza Decl. at ¶ 24.<br><br>The evidence presented does not substantiate this statement. The flyer presented does not show hats or t-shirts which bear the LOVESURF word mark. Instead, the picture on the flyer shows a hat displaying "I [different heart design] SURF" and not LOVESURF word mark.<br><br>The wording in the flyer "Sponsored by LoveSurf" next to a non-branded hat is not indicative that LoveSurf is the brand name of the hat. There is no indication on the flyer as to what LoveSurf is or does. |

| Date | Defendant's Asserted Facts | Rebuttal Evidence |
|------|---------------------------|-------------------|
| 7/12/11 | Using LOVESURF wordmark on clothing. | Fraudulent pictures. *See* Garza Decl. at ¶ 30.<br><br>Inconsistent with the trademark applications filed, and with allegation of first use dates in the trademark application. *See* Timeline on 11/12/2012, 12/12/2013 and 5/27/2014.<br><br>Inconsistent with acquisition of and/or transfer dates of domain name registrations. *See* Garza Decl. at ¶¶ 52-53; *see* Timeline on 5/25/2012, 10/6/2012, 10/13/2012, 10/19/2012, 10/26/2012, 11/29/2012 and 12/14/2012.<br><br>Inconsistent with email exchanges between Defendant and graphic designer showing focus of company was in developing LuvYourBeach brand. *See* Reidelbach Decl. at ¶ 2.<br><br>Inconsistent with email exchanges between Defendant and Chris Kramer regarding LYB Marketing Plan showing focus of company was in developing LuvYourBeach brand. *See* Docket No. 23-16 to Docket No. 23-20.<br><br>Inconsistent with Defendant's use of Heart Wave Logo and LuvYourBeach. *See* Timeline on 5/25/2012 and 10/6/2012.<br><br>Inconsistent with Defendant's Facebook page of first display of its own branded clothing. *See* Timeline on 7/10/2013. |

| Date | Defendant's Asserted Facts | Rebuttal Evidence |
|------|---------------------------|-------------------|
| 8/15/2011 | Using LOVESURF wordmark on Internet advertising for clothing. | Fraudulent mock up screenshots. *See* Garza Decl. at ¶¶ 33-42.<br><br>Inconsistent with the trademark applications filed, and with allegation of first use dates in the trademark application. *See* Timeline on 11/12/2012, 12/12/2013 and 5/27/2014.<br><br>Inconsistent with acquisition of and/or transfer dates of domain name registrations. *See* Garza Decl. at ¶¶ 52-53; *see* Timeline on 5/25/2012, 10/6/2012, 10/13/2012, 10/19/2012, 10/26/2012, 11/29/2012 and 12/14/2012.<br><br>Inconsistent with email exchanges between Defendant and graphic designer showing focus of company was in developing LuvYourBeach brand. *See* Reidelbach Decl. at ¶ 2.<br><br>Inconsistent with email exchanges between Defendant and Chris Kramer regarding LYB Marketing Plan showing focus of company was in developing LuvYourBeach brand. *See* Docket No. 23-16 to Docket No. 23-20.<br><br>Inconsistent with Defendant's use of Heart Wave Logo and LuvYourBeach. *See* Timeline on 5/25/2012 and 10/6/2012.<br><br>Inconsistent with Defendant's Facebook page of first display of its own branded clothing. *See* Timeline on 7/10/2013. |
| 8/23/2011 | First sale of Dream Session Tee by Lovesurf t-shirt. | Invoice of sale of Dream Session Tee, and all other related evidence are fraudulent. *See* Garza Decl. at ¶ 46.<br><br>The words "by Lovesurf" is not sufficient evidence that Lovesurf is the brand of the t-shirt itself. No authentic hang tags or labels have been provided for the t-shirt which was sold. It could just as easily have been a third party branded t-shirt sold by a vendor named Lovesurf. |

| Date | Defendant's Asserted Facts | Rebuttal Evidence |
|---|---|---|
| 12/2011 | Chris Kramer begins working for Lovesurf. | |
| 12/22/2011 | HEART WAVE logo designed. | |
| 12/28/2011 | HEART WAVE logo used on clothing in combination with LOVESURF wordmark. | Fraudulent pictures. *See* Garza Decl. at ¶ 30.<br><br>Inconsistent with email exchanges between Defendant and graphic designer showing focus of company was in developing LuvYourBeach brand. *See* Reidelbach Decl. at ¶ 2.<br><br>Inconsistent with email exchanges between Defendant and Chris Kramer regarding LYB Marketing Plan showing focus of company was in developing LuvYourBeach brand. See Docket No. 23-16 to Docket No. 23-20. |
| 1/3/2012 | Kramer's last workday at Lovesurf. | |

| Date | Defendant's Asserted Facts | Rebuttal Evidence |
|---|---|---|
| 3/4/2012 | First use of HEART WAVE LOVESURF logo at least as early as this date. Components of this logo used earlier.  LoveSurf | No evidence provided to substantiate this date.<br><br>Inconsistent with the trademark applications filed, and with allegation of first use dates in the trademark application. *See* Timeline on 11/12/2012, 12/12/2013 and 5/27/2014.<br><br>Inconsistent with acquisition of and/or transfer dates of domain name registrations. *See* Garza Decl. at ¶¶ 52-53; *see* Timeline on 5/25/2012, 10/6/2012, 10/13/2012, 10/19/2012, 10/26/2012, 11/29/2012 and 12/14/2012.<br><br>Inconsistent with email exchanges between Defendant and graphic designer showing focus of company was in developing LuvYourBeach brand. *See* Reidelbach Decl. at ¶ 2.<br><br>Inconsistent with email exchanges between Defendant and Chris Kramer regarding LYB Marketing Plan showing focus of company was in developing LuvYourBeach brand. *See* Docket No. 23-16 to Docket No. 23-20.<br><br>Inconsistent with Defendant's use of Heart Wave Logo and LuvYourBeach. *See* Timeline on 5/25/2012 and 10/6/2012. |
| 7/5/2013 | First use in commerce of HEART WAVE LOVESURF logo at least as early as this date. | No evidence provided to substantiate this date.<br><br>Inconsistent with use of mark in Defendant's Facebook page. *See* Timeline on 7/10/2013. |
| 5/27/2014 | Filed application for trademark of HEART WAVE LOVESURF logo. | |
| 12/5/2014 | Answer & Counterclaim filed | |

EXHIBIT B

**Timeline of Defendant's Alleged Trademark Use**

| Date | Event |
|------|-------|
| 7/27/2011 | Defendant acquired domain for "luvyourbeach.com." |
| 12/2011 | Chris Kramer worked with Defendant. During this time, Defendant was "developing the company" and exploring different names including LuvYourBeach, LuvSurf and LuvSwim. Settled on LuvSurf, and then later changed to LoveSurf. *See* Docket No. 18, Exhibit Y. |
| 12/20/2011 | Email from Chris Kramer to Defendant regarding LYB Marketing Plan showing focus is on LuvYourBeach brand. *See* Docket No. 23-16 to Docket No. 23-20. |
| 12/28/2011 | Defendant received final logo files from designer for Heart Wave logo and the words Luv Your Beach. *See* Declaration of Charles Reidelbach ("Reidelbach Decl.) at ¶ 2. |
| 5/25/2012 | Internet Archive first capture for "luvyourbeach.com" after it was acquired by Defendant. Redirects to "l-y-b.com" which is related to sale/advertisement of third party products. *See* Reidelbach Decl. at ¶ 3. |
| 10/6/2012 | Internet Archive capture for "luvyourbeach.com" shows use of the Heart Wave logo and Luv Your Beach in horizontal format. Capture shows "LuvYourBeach is in private beta" and is purports to sell third party brands. *See* Reidelbach Decl. at ¶ 4. |
| 10/13/2012 | Defendant acquired domain for "luvsurf.com." *See* Declaration of Peter Garza ("Garza Decl.") at ¶ 53. |
| 10/17/2012 | Internet Archive first capture for "luvsurf.com" after it was acquired by Defendant shows Defendant using LuvList and displays "private beta." *See* Reidelbach Decl. at ¶ 5. |
| 10/19/2012 | Defendant acquired domain for "lovesurf.com" under BundlePower. *See* Garza Decl. at ¶ 52. |
| 10/26/2012 | Defendant changed registrant name for "lovesurf.com" from BundlePower to LuvSurf. *See* Garza Decl. at ¶ 52. |
| 11/12/2012 | Defendant filed intent-to-use trademark applications for LUVSURF and Heart Wave logo under the entity name LuvSurf, Inc. *See* Docket No. 18, Exhibit S; *see* Reidelbach Decl. at ¶ 6. |

| Date | Event |
|---|---|
| 11/29/2012 | Defendant changed registrant name for "lovesurf.com" from LuvSurf to LoveSurf. *See* Garza Decl. at ¶ 52. |
| 12/8/2012 | Internet archive capture for "lovesurf.com" after it was acquired by Defendant shows "'LoveSurf' is a personal shopping platform for beach lovers." *See* Reidelbach Decl. at ¶ 7. |
| 12/14/2012 | Defendant created Facebook page for LoveSurf (first post updating cover photo). *See* Reidelbach Decl. at ¶ 8. |
| 3/9/2013 | Internet archive capture for "lovesurf.com" shows first use of LOVESURF with the Heart Wave logo; clothing shown are third party brands; no clothing with LOVESURF brand. *See* Reidelbach Decl. at ¶ 9. |
| 4/5/2013 | Defendant incorporated under LoveSurf, Inc. |
| 7/10/2013 | First display of clothing (leggings) bearing Heart Wave logo on Defendant's Facebook page. *See* Reidelbach Decl. at ¶ 10. |
| 10/3/2013 | Defendant abandoned LUVSURF trademark application. *See* Reidelbach Decl. at ¶ 11. |
| 12/3/2013 | Defendant owned Luv Surf Apparel – Official Facebook page which stated "Welcome to the original LUV SURF. We've changed our name." *See* Reidelbach Decl. at ¶ 12. |
| 12/12/2013 | Defendant filed the statement of use in the Heart Wave logo application claiming first use anywhere of 12/15/2012 and first use in interstate commerce of 6/15/2013. *See* Reidelbach Decl. at ¶ 13. |
| 5/27/2014 | Defendant filed LOVESURF and Heart Wave logo trademark application with first use anywhere of 3/4/2012 and first use in interstate commerce of 7/5/2013. *See* Docket No. 18, Exhibit Q. |
| 7/24/2014 | Defendant responds to Plaintiff's cease and desist letter stating: <ul><li>"Chris Kramer worked for me on a part-time basis during the time I was developing the company."</li><li>"At the time he worked for me I had explored a multi-brand and multi-domain name approach using [of] 'LuvSurf', 'LuvSwim', and 'LuvYourBeach' and then settled on the name 'LuvSurf'. Later, I decided to change to the correct spelling 'LoveSurf'.</li></ul> *See* Docket No. 18, Exhibit Y. |

| Date | Event |
|---|---|
| 1/19/2015 | Defendant filed trademark application for LOVESURF (word) under his personal name alleging first use dates of 8/15/2011. *See* Reidelbach Decl. at ¶ 14. |
| 1/23/2015 | Defendant amended its first use dates in the Heart Wave logo application to 12/28/2011. *See* Reidelbach Decl. at ¶ 15. |

3373703.1

3