STEVEN J. COLOGNE, ESQ.
(Bar No. 118534)
scologne@higgslaw.com
CHARLES F. REIDELBACH, JR., ESQ.
(Bar No. 167482)
reidelbach@higgslaw.com
CHRISTINA G. BOBB, ESQ.
(Bar No. 259430)
cbobb@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, CA 92101-7913
TEL: 619.236.1551
FAX: 619.696.1410

Attorneys for Plaintiffs
GINA CHAMPION-CAIN, an individual;
LUV SURF, LP, a California limited
partnership; ANI COMMERCIAL CA I,
LLC, a California limited liability company;
and ANI COMMERCIAL CA II, LP, a
California limited partnership

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CHAMPION-CAIN, an individual; LUV SURF, LP, a California limited partnership; ANI COMMERCIAL CA I, LLC, a California limited liability company; and ANI COMMERCIAL CA II, LP, a California limited partnership,<br><br>                    Plaintiffs,<br><br>v.<br><br>BRIAN MACDONALD, an individual; LOVESURF, INC., a Delaware corporation, and DOES 1-10, inclusive,<br><br>                    Defendants. | CASE NO. 14-CV-02540-GPC-BLM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**<br><br>CASE FILED:    October 23, 2014<br><br>JUDGE:         Hon. Barbara Majors<br><br>TRIAL DATE:   Not Set |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................... 1

II.  SUMMARY OF FACTS ........................................................................ 1

    A.   Defendants Agreed To The Computer Inspection And Knew What It Was For ........................................................................ 2

    B.   The Aftermath of Peter Garza's Determination ........................... 3

    C.   There Was No Agreement To Provide An Advance Copy Of The Declaration .............................................................................. 4

III. THERE IS NO BASIS FOR SANCTIONS ........................................ 4

    A.   The Computer Inspection Was Governed By A Specific Computer Inspection Agreement, Not the Protective Order ........ 5

    B.   Neither Peter Garza's Declaration, Nor The Reply Brief, Disclose Confidential Information ............................................... 6

    C.   There Is No Bad Faith Conduct Justifying Sanctions Under The Court's Inherent Power ........................................................ 11

    D.   Plaintiffs' Meet And Confer Efforts .......................................... 12

IV.  CONCLUSION .................................................................................. 13

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

i                                Case No. 14-CV-02540-GPC-BLM

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Agency Solutions.Com, LLC v. TriZetto Group, Inc.,*
  819 F. Supp. 2d 1001 ................................................................................ 10

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 ............................................................................................... 11

*Harmston v. City & County of San Francisco,*
  2007 U.S. Dist. LEXIS 87144 ...................................................................... 4

*Primus Auto. Fin. Servs. v. Batarse,*
  115 F.3d 644, (9th Cir. Cal. 1997) ........................................................... 11

**Statutes**

Cal. Civ. Code § 3426.1(d) ........................................................................ 10

Fed. R. Evid. 703 ........................................................................................... 9

Plaintiffs GINA CHAMPION-CAIN, LUV SURF, LP, ANI COMMERCIAL CA I, LLC, and ANI COMMERCIAL CA II, LP, ("Plaintiffs") file the following Opposition to Defendants' Motion for Sanctions [Dkt. 46]:

## I.

## INTRODUCTION

Defendants try to deflect the Court's focus from their conduct by claiming that Plaintiffs should be sanctioned, rather than respond to the computer forensic expert's determination that Defendants manufactured the evidence it used to support its opposition to Plaintiffs' Motion for Preliminary Injunction.

While sanctions are meant to punish bad faith conduct, all the conduct that Courts encourage attorneys to engage in has occurred in this case. Plaintiffs' counsel have done their best to cooperate with defense counsel and to work together to resolve disputes as they arise in this case. Plaintiffs have only acted in good faith. Defendants, on the other hand, hope to steer the court away from Defendants' conduct with this misplaced motion for sanctions.

Plaintiffs defeat Defendants' motion on multiple grounds: (1) the Protective Order did not govern the computer inspection and therefore no court order was violated; (2) no "Confidential – for Counsel Only" information was disclosed in the expert's Declaration filed with the Court [Dkt. 32-2]; and (3) Plaintiffs did not act in bad faith and therefore the court should not issue sanctions pursuant to its inherent power.

For these reasons, Defendants' motion must be denied.

## II.

## SUMMARY OF FACTS

Plaintiffs brought this action against Defendants alleging, *inter alia*, trademark infringement, unfair competition, slander and defamation. As an initial matter, Plaintiffs filed a Motion for Preliminary Injunction [Dkt.18], to which Defendants filed an Opposition. [Dkt. 23].

## A.   Defendants Agreed To The Computer Inspection And Know What It Was For.

Immediately upon receipt of Defendants' Opposition, Plaintiffs questioned the authenticity of Defendants' exhibits, particularly the alleged first use dates supposedly confirmed by the exhibits.  Therefore, Plaintiffs requested that Defendants agree to a forensic computer examination to test whether the dates were in fact authentic [**Exhibit A**; Declaration of Steven J. Cologne, ¶ 3].  Plaintiffs told Defendants that it needed the computer forensic inspection in order to prepare its Reply Brief [*see* **Dkt. 26;** Declaration of  Steven J. Cologne, ¶ 4].  After much correspondence regarding the computer inspection, its scope and parameters, Defendants finally agreed to it. [Declaration of Catherine Morrison, ¶ 4].  Defendants expressed concern about the privacy of the information on its computers, which was not ignored by Plaintiffs.  Accordingly, the parties agreed, along with Plaintiffs' computer forensic expert, Document Technologies LLC ("DTI"), to an inspection agreement to handle the information - the Computer Inspection Agreement ("Agreement")  [**Dkt. 36**].

Before agreeing to the Agreement, both parties had ample time to review, comment on and add to it.  [Declaration of Catherine Morrison, ¶ 4].  Neither the Agreement nor any correspondence from Defendants refer to, mention or incorporate the Protective Order into the Agreement. [**Dkt. 25-1**; Declaration of Steven J. Cologne and Catherine Morrison, ¶ 3].  Defendants did not designate any of the information on Defendants' computer(s) as "Confidential – For Counsel Only" under the Protective Order.  Further, the Agreement does not memorialize any agreement that Plaintiffs would provide Defendants with an advance copy of the expert's report  [*See Id.*] The Agreement remains unsigned by the parties and DTI, though all parties consented to it in writing. [Declaration of Catherine Morrison, ¶ 2].

Knowing that Plaintiffs questioned the dates of first use that Defendants asserted through its Exhibits, Defendants provided Plaintiffs with computer equipment from where Defendants claimed the Exhibits attached to its Opposition came.  Defendants knew that Plaintiffs' computer expert was doing a forensic inspection and Plaintiffs' Reply needed to be postponed in order to allow time for it. [**Dkt. 26**].  Again, the computer equipment was not produced subject to the Protective Order, *the terms of which are different from those contained in the Agreement.*

After considerable correspondence between the parties (during which Defendants did not once mention the Protective Order or an agreement to provide an expert report before the Reply Brief was due to be filed), Plaintiffs' forensic computer examiner, Peter Garza from DTI, was able to conduct the forensic computer examination.  He came to the conclusion that Defendants' Exhibits allegedly demonstrating trademark first use were not created on the dates that Defendants asserted in their Opposition, or on the dates shown on the face of some of the exhibits.  In their Reply Brief filed with the Court, Plaintiffs provided this conclusion, along with other arguments that Defendants were not the first user of the trademark.[**Dkt. 32**].

**B.    The Aftermath of Peter Garza's Determination.**

Initially, on April 21, 2015. Defendants' response was to claim that Plaintiffs should have provided them with an advance copy of Peter Garza's Declaration, despite the fact that Defendants never accepted Plaintiffs' offer to provide DTI's report to them first.  [**Dkt. 46-6**].  Defendants refused the offer and it is not a term in the Agreement. [*see* **Dkt. 36**].

Next, 10 days after the expert's declaration was filed with Plaintiffs' Reply, Defendants claimed *for the first time* that the Protective Order governed the computer examination, and that Plaintiffs violated that Court Order.  [**Dkt. 46-8**]

**C.     There Was No Agreement To Provide An Advance Copy Of The Declaration.**

Initially, Plaintiffs' counsel, Catherine Morrison, offered to Defense counsel that DTI could provide a copy of a report to them first when Plaintiffs were negotiating with Defendants to continue the Reply date.  Declaration of Catherine Morrison, ¶ 5.  Defendants refused the offer.  [Exhibit B to Catherine Morrison's Declaration].  When Defendant finally did agree to extend the Reply date, Catherine Morrison reminded Defendants of that offer.  [Declaration of Catherine Morrison, ¶ 6].  Defendants did not accept that offer, did not mention that offer in any correspondence, did not put that as a term in the Inspection Agreement (in fact Defendants confirmed that the Inspection Agreement was fine as written[*see* **Dkt. 46-3**]) nor did they discuss the parameters of any such agreement.  Catherine Morrison, on behalf of Plaintiffs, loosely threw out this offer that was never accepted and not incorporated into the Agreement.  [Declaration of Catherine Morrison ¶ 7].  The only two places that mention anything about providing an advance copy of the Declaration is in emails from Catherine Morrison dated March 17, 2015 (Exhibit B, where Defendants refused Plaintiffs' offer) and March 27, 2015(where Catherine Morrison tried to "sweeten the deal") [**Dkt. 22**].

## III.

## <u>THERE IS NO BASIS FOR SANCTIONS</u>

Sanctions can be imposed "only if [the District Court] finds that the party requesting the sanction has proven contempt by clear and convincing evidence." *Harmston v. City & County of San Francisco*, 2007 U.S. Dist. LEXIS 87144 at *8. Here, there is no such clear and convincing evidence of contempt.  Both parties contemplated that the Agreement would govern the computer inspection.  Plaintiffs responded to Defendants' privacy concerns by drafting the Agreement.  It would be manifestly unjust to sanction Plaintiffs when Defendant Brian MacDonald

manufactured the evidence he filed with the court. Plaintiffs complied with the Agreement and have dealt with Defendants' in good faith.

Defendants assert that the Computer Inspection Agreement was intended to give Lovesurf the "opportunity to review any findings made by DTI and to determine precisely how to handle any of the information Plaintiffs would use in its Reply on the preliminary injunction motion." [**Dkt. 46-1, 3:1 – 3**]. Defendants are re-writing history. Defendants do not and cannot cite to any provision in the Agreement, or any correspondence between the parties, where Defendants' purported "purpose" is memorialized. ***Nowhere in the Agreement does it say that Defendants would be entitled to review the findings of DTI and determine how to handle the information that Plaintiffs would use in its Reply.*** If that were Defendants' true assumption, it only makes sense that it would be in the Agreement, or that there would be correspondence discussing such a provision. There is none.

## A.   The Computer Inspection Was Governed By A Specific Computer Inspection Agreement, Not the Protective Order.

The production of Defendants' computer equipment was governed by a specific computer inspection agreement, not by the general Protective Order. [**Dkt. 46-5**]. Defendants' counsel admits that the Agreement was in effect. [**Dkt. 46-1, page 2:14**]. The Agreement is restricted to its written terms and supersedes all prior or contemporaneous agreements. [**Dkt. 46-5, ¶12**]. Before the production, there was no correspondence from either the Plaintiffs or the Defendants referring to, incorporating, or discussing the Protective Order in any way in connection with the forensic computer examination. Defendants didn't bother to designate its computer data as "Confidential – for Counsel only" under the Protective Order. This shows that Defendants never contemplated that the Protective Order, instead of the Agreement, would govern the computer inspection.

Further, the designation of a production as "CONFIDENTIAL – FOR COUNSEL ONLY" under the Protective Order implicates other terms of the Protective Order.  For example, such a designation can only be made if, *in the good faith belief of the designating party and its counsel,* the material is "considered to be most sensitive by the party, including but not limited to trade secret or other confidential research, development, financial or other commercial information." [Dkt. 25-1, ¶ 4 and 4(b)].  Not having ever made this designation, Defendants prevented Plaintiffs from objecting to the designation of material as "CONFIDENTIAL – FOR COUNSEL ONLY" under the Protective Order and obtaining a court finding pursuant to Paragraph 13 of the Protective Order.

Defendants will contend that they were not required to designate the materials produced as "CONFIDENTIAL – FOR COUNSEL ONLY" under the Protective Order because Paragraph 5 does not require that the material be **marked** in advance of the initial inspection. [Dkt. 25-1, page 3, ¶5; Dkt. 46-10].  Even if it didn't have to be **marked**, it still had to be **designated** under Paragraph 4 as either "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY" so that the terms of the Protective Order would attach. [Dkt. 25-1, ¶¶ 4 and 5].

However, even if Defendants had made such a designation, the Declaration of Peter Garza itself does not disclose "CONFIDENTIAL – FOR COUNSEL ONLY" information under either the Agreement or the Protective Order.

**B.     Neither Peter Garza's Declaration, Nor The Reply Brief, Disclose Confidential Information.**

Defendants identify 3 pieces of allegedly confidential information that were disclosed and discussed in the expert's declaration and in the Reply [Dkt. 46-1, 11:4-7], as follows:

- Lovesurf's "future" product designs [Exhibit E to Peter Garza's Declaration: Dkt. 32-2, 170 - 176];
- design and advertising methods ; and,

- copies of advertisements displayed in photo editing software.

1. "Confidential Information" as that term is defined under the Agreement was not disclosed.

Under the Agreement, assented to by Defendants, the term "Confidential Information" is defined as "raw data obtained from any computer system acquired through inspection by or otherwise provided to DTI by Defendants." [Dkt. 36].

The Agreement goes on to state:

> The restrictions on use and disclosure of Confidential Information will **not** apply to information that:
>
> a)    was publically known at the time of the Defendants' communication thereof to DTI or becomes publicly known thereafter through no fault of DTI;
>
> . . .

[Dkt. 36][emphasis added].

a.    *Lovesurf's product designs are not "confidential information".*

Exhibit E to the computer expert's declaration depict product designs that are identical or are substantially similar to product designs that were already public at the time that Peter Garza's Declaration was filed with Plaintiffs' Reply Brief. On May 11, 2015, Plaintiffs received an email from Defendants' PR firm in which Lovesurf's 2015 catalog in advertised. [Exhibit C]. A link to the catalog that is included with the email opens Lovesurf's catalog on its website and shows that the catalog was posted to the website 2 months prior, or about March 2015 [Dkt. 36]. Peter Garza's Declaration was not filed with the court until April 20, 2015, at least 1 month later. [Dkt. 32-2]. Therefore, these product designs (both the identical and the substantially similar ones) were publically known and therefore were not "Confidential Information".

Even without the public catalog, however, the product designs shown in Exhibit E of the expert's declaration are not "Confidential Information". They are

HIGGS FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

3541444.1

7

Case No. 14-CV-02540-GPC-BLM

so common that they cannot be deemed confidential. For example, the words "aloha" on a t-shirt is far from material that would be thought of as confidential.

Accordingly, Defendants' assertion that "valuable future product information consisting of six confidential clothing designs that had not been released to the public" should be outright rejected.

b.  *Lovesurf's design and advertising methods are not "confidential information".*

Defendants assert that the expert "discusses in unnecessary detail Lovesurf's methods for designing clothing and advertisements." [Dkt. 46-1, 6: 27-28]. In his Declaration, Peter Garza discusses Adobe Photoshop and how that program is popular for design because of the ability of the program to manipulate design elements by repositioning, substituting, or layering them. [*see e.g.,* Dkt. 32-2, pages 8 and 16]. He also makes the point that, because of the ability to manipulate images on Photoshop, Defendant Brian MacDonald was able to manipulate the images he used as exhibits to his Opposition.

As Peter Garza notes in his Declaration, Photoshop is a common graphic design tool – it is in the public domain. **[Dkt. 32-2, ¶ 15& 16]**. It is highly common to use Photoshop as a graphic design tool. *Id.* The fact that Defendant Brian MacDonald uses Adobe Photoshop (like every other designer does) is not "confidential" information. No "confidential" information was disclosed.

c.  *Copies of advertisements displayed in photo editing software are not "confidential information".*

Defendants do not specifically identify to what they are referring when they claim that confidential advertisements displayed in photo editing software were disclosed. **[Dkt. 46-1, page 11, lines 6-7]**. Plaintiffs assume Defendants are referring to the Bundlepower advertisements on pages 16 and 17 of Peter Garza's Declaration – Graphics 6 and 7 **[Dkt. 32-2, ¶¶ 36 – 38]**. With these graphics, Peter Garza makes the point that the exhibits that Defendant Brian MacDonald said were *public* (the Lovesurf advertisements) are not actually dated when Defendant Brian

MacDonald says they are dated. [**Dkt. 32-2, pages 16-18**]. Information Peter Garza uses to make the comparison between Defendant Brian MacDonald's purported public advertisements and the real verifiable advertising vehicles (i.e., Graphic 7) was obtained, not from Defendants' computers, but from the Internet Archive. Graphic 6 (that was obtained from Defendants' computer), is a mock up copy of a *public* web posting. Accordingly, Peter Garza discusses the data that Defendant Brian MacDonald said in his declaration was public and shows that it was not in fact public because it was manufactured. [*See* Declaration of Defendant Brian MacDonald, **Dkt. 23-1, page 2, lines 22-26** and Declaration of Peter Garza, **Dkt. 32-2, pages 16-18**]. The conclusion of the expert that dates represented to be public are not true does not disclose Defendants' "confidential information".[1]

Defendants confuse the fact that Peter Garza's conclusions were based on the computer forensic examination of Defendants' computer equipment with actually revealing the specific information. This is akin to an expert testifying as to his/her opinions based on hearsay evidence without actually revealing the hearsay evidence itself. Fed. R. Evid. 703. Peter Garza's Declaration only discusses his conclusions about the authenticity of the Exhibits attached to Defendants' Opposition, which Defendants knew was the purpose for the computer forensic examination in the first place. Peter Garza conducted a forensic examination of only the equipment Defendants provided. His conclusions, derived from his forensic examination, do not disclose any "Confidential – For Counsel Only" information under the Agreement.

2. "CONFIDENTIAL – FOR COUNSEL ONLY" information, as that term is defined under the Protective Order, was not disclosed.

The hurdle that Defendants have to overcome to argue that confidential information under the Protective Order was released is much greater than under the

---

[1] In addition, Bundlepower is no longer a viable searchable website.

Agreement. The Protective Order defines "Confidential –For Counsel Only" information as: " . . . information . . . among that considered to be most sensitive by the party, including but limited [*sic*] to **trade secret or other confidential research, development, financial or other commercial information**." [Dkt. 25-1, page 3]. A party can only designate material as "Confidential – For Counsel Only" if it believes *in good faith* that the material rises to the level of trade secret or similar confidential material. The Protective Order next gives the non-designating party an avenue to object to that designation.

The material Defendants claim to be "Confidential – For Counsel Only" does not rise to this level. A "trade secret" is defined as:

> " . . . 'information, including a formula, pattern, compilation, program, device, method, technique or process, that: (1) [d]erives independent economic value, actual or potential, from not being known generally to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s subject to efforts that are reasonable under the circumstances to maintain its secrecy.' Cal. Civ. Code § 3426.1(d)." Id.

*Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011)

Even if Defendants had made this designation, which they did not, there is no information that could be defined as "Trade Secret" or of that weight. As stated, the t-shirt designs were identical or substantially the same as designs shown in Defendants' 2015 catalog. Further, the word "Aloha" on a t-shirt is nowhere near trade secret information and it is not private information.

Finally, the graphics of the internet advertisements were declared by Defendant Brian MacDonald to be public in his Opposition, but shown by the expert to be manufactured. The Bundlepower graphic (no. 6) did not show any of Defendants' product. Therefore, none of Defendants' "confidential – for counsel only" information was disclosed.

## C.   There Is No Bad Faith Conduct Justifying Sanctions Under The Court's Inherent Power.

The court may issue sanctions under its inherent power only upon a showing of bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46.  In the Ninth Circuit,

> Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct "constituted or was tantamount to bad faith. [citations]

*Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 648 (9th Cir. Cal. 1997).

Here, there can be no such explicit finding.  As the attached Declarations of Catherine Morrison and Steven J. Cologne demonstrate, Plaintiffs immediately responded to Defendants' counsel's objection to Plaintiffs' Reply [**Dkt. 46-7**]. [Declaration of Catherine Morrison, ¶ 8; Declaration of Steven J. Cologne, ¶ 8]. Plaintiffs' counsel offered to sign a declaration that Plaintiffs themselves were not given a copy of the Reply or Peter Garza's Declaration.  [Declaration of Steven J. Cologne, ¶ 10].  Defense counsel have not responded to this offer.  Plaintiffs' counsel offered to make Plaintiff Gina Champion-Cain immediately available for deposition so she could testify under oath that she has not seen the Reply Brief or Peter Garza's Declaration.  The deposition of Gina Champion-Cain was completed without one question from Defendants about the Reply Brief or Peter Garza's Declaration.  [Declaration of Steven J. Cologne, ¶ 9, 13].

Ten days after Plaintiffs' Reply was filed, on April 30, 2015, Defendants' counsel wrote Plaintiffs' counsel a 10-page letter stating he would file a Motion for Sanctions. [**Dkt. 46-9**].  Again, Plaintiffs' immediately responded by offering to apply to have the expert's Declaration filed under seal. [**Dkt. 46-9**; Declaration of Steven J. Cologne, ¶ 9].  Defense counsel summarily rejected that proposal. [**Dkt. 46-10**].

In a telephonic meet and confer conference on May 4, 2015, Plaintiffs' counsel again made that offer, which was accepted by Defendants' counsel.

[Declaration of Steven J. Cologne, ¶ 9]. Later, defense counsel also wanted portions of the Reply Brief to be filed under seal, but refused to indicate which portions. [**Dkt.46-12**] Defense counsel also stated that they would not sign any joint motion in which Plaintiffs' counsel did not admit that the information in Peter Garza's declaration is "confidential – for counsel only" under the Protective Order. Since the status of the information as "Confidential – For Counsel Only" is disputed by Plaintiffs' counsel in good faith, as discussed above, they cannot admit anything of the kind. Defense counsel has therefore derailed any efforts by Plaintiffs to come to a resolution of this issue.

As the extensive correspondence shows, there is no bad faith displayed by Plaintiffs. Plaintiffs have simply been relegated to reading page after page of Defendants' angry letters. [*See e.g.,* **Dkt. 46-4, 46-8, 46-10, 46-14**]. Plaintiffs have not conducted themselves in any way showing bad faith.

**D.     Plaintiffs' Meet And Confer Efforts**

Plaintiffs have spent an inordinate time meeting and conferring with defense counsel. [Declaration of Steven J. Cologne]. Counsel for Defendants requested a meet and confer conference on May 4, 2015. [**Dkt. 46-8**] Knowing that the real issue for Defendants is the troubling revelation that they manufactured evidence, counsel for Plaintiffs offered, in writing, to immediately apply to the court to have Peter Garza's Declaration with its exhibits filed under seal. [**Dkt. 46-9**]. Because the Reply Brief encompasses more than Peter Garza's findings, Plaintiffs' counsel did not think defense counsel meant seeking to have the entire Reply Brief filed under seal. [Declaration of Steven J. Cologne, ¶11].

During that meet and confer conference, Mr. Cologne also offered to sign a Declaration that Plaintiffs' counsel had not shown the Reply Brief and Peter Garza's Declaration to Plaintiffs. [Declaration of Steven J. Cologne, ¶10]. Defendants did not contact Mr. Cologne about getting such a Declaration. In addition, Mr. Cologne arranged to have Plaintiff Gina Champion-Cain available for

deposition immediately, which he did. *Id.* Defendants did not ask Ms. Champion-Cain anything about Plaintiffs' Reply Brief or Peter Garza's Declaration.

## IV.

## CONCLUSION

Amazingly, Defendants request sanctions against Plaintiffs, despite the fact that they are the ones who manufactured evidence. Not surprisingly, Defendants request that this court erase their wrongdoing by issuing an order that their exhibits are valid and authentic. Regardless of Defendants' preposterous requests, there is no reason for this Court to issue a sanctions order against Plaintiffs. Plaintiffs did not violate the Protective Order entered in this case, nor did they violate the Inspection Agreement or any other agreement between counsel. Defendants' motion should be denied in its entirety.

Respectfully submitted,

DATED: June 15, 2015                    HIGGS FLETCHER & MACK LLP


By: *s/ Steven J. Cologne*
STEVEN J. COLOGNE, ESQ.
CHARLES F. REIDELBACH, JR., ESQ.
CHRISTINA G. BOBB, ESQ.
Attorneys for Plaintiffs
GINA CHAMPION-CAIN, an individual; LUV SURF, LP, a California limited partnership; ANI COMMERCIAL CA I, LLC, a California limited liability company; and ANI COMMERCIAL CA II, LP, a California limited partnership