STEVEN J. COLOGNE, ESQ. (Bar No. 118534)
scologne@higgslaw.com
CHARLES F. REIDELBACH, JR., ESQ. (Bar No. 167482)
reidelbach@higgslaw.com
CHRISTINA G. BOBB, ESQ. (Bar No. 259430)
cbobb@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West "A" Street, Suite 2600
San Diego, CA 92101-7913
TEL: 619.236.1551
FAX: 619.696.1410

Attorneys for Plaintiffs
GINA CHAMPION-CAIN, an individual; LUV SURF, LP, a
California limited partnership; ANI COMMERCIAL CA I,
LLC, a California limited liability company; ANI
COMMERCIAL CA II, LP, a California limited partnership

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CHAMPION-CAIN, an individual; LUV SURF, LP, a California limited partnership; ANI COMMERCIAL CA I, LLC, a California limited liability company; ANI COMMERCIAL CA II, LP, a California limited partnership, | CASE NO. 14-CV-02540-GPC-BLM |
| Plaintiff, | **DECLARATION OF STEVEN J. COLOGNE IN SUPPORT OF OPPOSITION TO MOTION FOR SANCTIONS** |
| v. | CASE FILED: October 23, 2014 |
| BRIAN MACDONALD, an individual; LOVESURF, INC., a Delaware corporation, and DOES 1-10, inclusive, | CTRM JUDGE:    Hon. Barbara Majors |
| Defendants. | TRIAL DATE:    Not Set |
| AND RELATED COUNTER-CLAIM. | |

///

///

///

///

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

3614122.1

Case No. 14-CV-02540-GPC-BLM

I, STEVEN J. COLOGNE, declare as follows:

1.     I am an attorney duly admitted to practice in the Southern District of California and am a Partner with the law firm of Higgs Fletcher & Mack, LLP, attorneys for the Plaintiffs GINA CHAMPION-CAIN, LUV SURF, LP, ANI COMMERCIAL CA I and ANI COMMERCIAL CA II ("Plaintiffs"). I have personal knowledge of the following and I could and would competently testify thereto if called upon to do so.

2.     Defendants never designated any material on its computers as "Confidential – For Counsel Only" under the Protective Order. Plaintiffs did not ignore Defendants' privacy concerns; they were addressed by Plaintiffs by drafting the computer inspection agreement ("Agreement") to which both Plaintiffs and Defendants agreed. That was the agreement that governed the computer inspection.

3.     After Plaintiffs received Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction, I emailed Defendants' counsel, Jim Lowe, on March 2, 2015, and asked him if he would agree to allow Plaintiffs to test the validity of Defendants' exhibits. [*See* **Exhibit A** attached to this Declaration]. This was because the time frames Defendant Brian MacDonald claimed that he began using the Lovesurf trademark did not align with Plaintiffs' investigation into the issue of whether Plaintiffs or Defendants used the trademark first.

4.     I also asked him if he would agree to continue the due date for the Reply and the hearing because the inspection needed to be accomplished before Plaintiffs prepared and filed its Reply Brief. Defense counsel confidently agreed but expressed concerns about the privacy of the information on the computers. [*See* **Exhibit E** attached to this Declaration]. Therefore, the parties developed a Computer Inspection Agreement ("Agreement") to govern the computer inspection. **[Dkt. 36]** *Jim Lowe did not once discuss the Protective Order, designating the material as "Confidential – For Counsel Only" under the Protective Order or the procedural requirement of ¶ 5 of the Protective Order for marking the materials*

*produced.*

5.     As shown by his email attached as Exhibit E, the parties were working together regarding the computer inspection. I was told that the computers were in defense counsel's office for inspection. I asked my associate, Catherine Morrison, to make sure arrangements for the inspection were moving forward in a timely manner.

6.     Jim Lowe retreated on the scope of the inspection. Rather than allow a full inspection, he would only allow Plaintiffs to inspect the specific files of the Exhibits that Defendants attached to their opposition to the Motion for Preliminary Injunction. [*See* **Exhibit F** attached to this Declaration]. Following considerable correspondence and a meet and confer conference by telephone, DTI provided multiple rationales for needing to inspect the entire computer system, not only specific files that Defendants chose. [*See* **Exhibit G** and **Exhibit H** attached to this Declaration]. Again, there was no discussion relating to designating any material as "Confidential – For Counsel Only" under the Protective Order.

7.     Jim Lowe did not once discuss with me or confirm an agreement to a proposal from my associate that Plaintiffs provide Defendants with an advance copy of DTI's report (or Declaration) before filing the Reply. I understood that a computer inspection agreement was agreed upon which is more fully discussed in Catherine Morrison's Declaration.

8.     Following the computer inspection, I received a letter from Jim Lowe asserting that he should have received an advance copy of Peter Garza at DTI's Declaration filed with the Reply. [**Dkt. 46-6**]. Catherine immediately responded that there was not such an agreement. [**Dkt. 46-7**]. Thereafter, 10 days after the Reply Brief was filed, Jim Lowe asserted for the first time that the Protective Order governed the computer inspection. [**Dkt. 46-8**].

9.     An offer by my office to apply to have Peter Garza's declaration with the attached exhibits filed under seal was refused. [**Dkt. 46-9, Dkt. 46-10**]. I met

and conferred with Jim Lowe by telephone on May 4, 2015. His concern was that my client not see Peter Garza's Declaration. In the meet and confer conference, Jim Lowe stated that filing Peter Garza's Declaration under seal "couldn't hurt". I told him neither I nor the attorneys in my office who are working on this case sent my clients the Reply or Peter Garza's Declaration, and I agreed to schedule Plaintiff Gina Champion-Cain's deposition immediately so that he could confirm that she had not seen the Declaration. Mr. Lowe is a colleague in the legal community. If I could resolve his concerns, I would try.

10.    I corrected Jim Lowe's email confirmation to me of our meet and confer conference because he did not memorialize my offers to address his main concern that my clients not see Peter Garza's Declaration. [*See* **Exhibit I** attached to this Declaration]. It was important to me that the Court could see my efforts after the meet and confer meeting. Since then I have not heard anything from Jim Lowe regarding a Declaration from me that my clients were not sent the Reply Brief and Peter Garza's Declaration. Also, at the deposition of Gina Champion-Cain, Jim Lowe did not question her at all about whether she saw the Reply Brief or Peter Garza's Declaration, which she still hasn't.

11.    I did not correct Jim Lowe on saying that I agreed to request that the Reply Brief be sealed. The scope of the Reply Brief is broader than what Peter Garza concludes following the computer inspection, so I did not think that he meant a wholesale request to have my entire Reply Brief filed under seal. I instructed my Associate, Catherine Morrison, to prepare a joint motion to request that Peter Garza's Declaration be sealed.

12.    The next thing I heard about the issue was an email from Clifford White screaming that my office is asking Jim Lowe which portions of the Reply Brief itself he wanted included in the joint motion to request that Peter Garza's Declaration be placed under seal. [**Dkt. 46-13**]. He also insisted that they would not sign any joint motion where I state that there is a dispute that information in

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

3614122.1

4

Case No. 14-CV-02540-GPC-BLM

Peter Garza's Declaration is confidential. I was surprised at the anger expressed and hostile tone of Clifford White's email, especially when Mr. Lowe is normally very cordial in his telephone contact with me. I was surprised also that my efforts to resolve the dispute with Mr. Lowe fell on deaf ears. In frustration, I attempted to tell Catherine to simply proceed and inadvertently hit the "Reply All" button instead of the "Forward" button. I heard nothing further from my mistake.

13. I heard about the telephone call with the Clerk about a motion for sanctions. On May 28, 2015 I sent Jim Lowe an email that I was surprised that he was moving forward on a sanctions motion when I had offered to sign a declaration and heard nothing, produced by client for deposition where no questions were posed about this, and had a joint motion to place Peter Garza's Declaration under seal prepared and ready to be filed. [*See* **Exhibit D** attached to this Declaration].

14. I have met and conferred with Jim Lowe and have responded to Jim Lowe's concerns about Peter Garza's Declaration getting to my client. Jim Lowe never contacted me about a Declaration, did not question my client about not receiving a copy of the Reply and Peter Garza's Declaration in her deposition, and did not indicate which portions of the Reply he was concerned about. I have diligently responded to his concerns and participated fully in meet and confer efforts.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was signed on

June 15, 2015 at San Diego, California.

STEVEN J. COLOGNE

EXHIBIT A

**From:** Cologne, Steven J.
**Sent:** Monday, March 02, 2015 3:55 PM
**To:** Lowe, James A. (JAL@gauntlettlaw.com)
**Cc:** Reidelbach, Charles F.; Bobb, Christina G.
**Subject:** ANI v. MacDonald [IWOV-WORKSITE.FID658888]

Mr. Lowe,

We have reviewed your opposition to my client's Motion for Preliminary Injunction. We wish to have our computer forensics consultant review the evidence in support of your opposition to test its validity. I am serving an Inspection Demand along the following lines but as a courtesy am sending you this email essentially describing what is in the Inspection Demand. Would your client be willing to submit a Joint Motion for a continuance of the Reply and Hearing on the Motion for Protective Order until the Inspections have been performed? Please advise.

Thank you for your attention to the above .

Tentative Proposed Inspection Requests:

1.  The device used to make the original images (e.g. digital camera or mobile phone) depicted in the graphical images you provided in the Image Viewer images purported to be dated 7/12/2011.

2.  Inspection of the following systems:
    a.  The computer system or media which stored any copy or version of the graphical images you provided in the Image Viewer images purported to be dated 7/12/2011;
    b.  Any system which has stored text, designs, art, graphical images, fonts or any other element or data depicting Lovesurf or Bundlepower material, correspondence, or invoicing;
    c.  Any system which has any data or content published on the web via the Internet or otherwise;
    d.  Any system which has any data or content that has been printed or imprinted on paper, textiles or other media;
    e.  Any system used to administer accounts or access to websites hosting content, facilitate or conduct the sales of branded products;
    f.  Any system used to administer, register or otherwise interact with web hosting or registration sites for any web domain used in conducting Lovesurf or Bundlepower sales, marketings or business.

EXHIBIT D

## Morrison, Catherine

| | |
|---|---|
| **From:** | Cologne, Steven J. |
| **Sent:** | Thursday, May 28, 2015 1:37 PM |
| **To:** | Lowe, James A. (JAL@gauntlettlaw.com) |
| **Cc:** | Morrison, Catherine; Reidelbach, Charles F. |
| **Subject:** | ANI v. MacDonald [IWOV-WORKSITE.FID370152] |

Jim,

I came in to work today and saw Clifford White wants a conference with the Clerk and was trying to schedule this with our office. I was surprised you were proceeding with the Motion for Sanctions. Since you and I met and conferred weeks ago I have heard nothing about this Motion. Your office was very upset when the Reply was filed back on April 24. But since then I offered to you on the meet and confer which we confirmed by email that I would prepare a declaration. I heard nothing further from you on that. I offered to allow you to ask questions of Gina at her deposition. Nothing was done there. Catherine prepared the Joint Motion I believe at our expense to put Garza's report under seal and no further effort was communicated to us on that but Clifford screamed at me in an email. All this time went by and no contact with me in weeks. So what I am saying is you first screamed then all other efforts to reach compromise went ignored. I thought you were now focusing back on the merits of our dispute.

Then after the Deposition of Gina, you wanted to discuss settlement with me. That seemed reasonable but now your office wants to go back and revisit a Motion for Sanctions. Keep in mind I will explain all of this at the appropriate opportunity to the Court. I would hope you see the logic of withdrawing your Motion for Sanctions. But if you want to proceed we will be ready.

Thank you.

Steve

1

EXHIBIT E

**Morrison, Catherine**

| | |
|---|---|
| **From:** | Lowe, James A. <JAL@gauntlettlaw.com> |
| **Sent:** | Tuesday, March 03, 2015 12:04 PM |
| **To:** | Cologne, Steven J. |
| **Cc:** | Reidelbach, Charles F.; Morrison, Catherine; Bobb, Christina G. |
| **Subject:** | RE: ANI v. MacDonald [IWOV-WORKSITE.FID658888] |

Thanks. I look forward to hearing from you further.

---

**From:** Cologne, Steven J. [mailto:scologne@higgslaw.com]
**Sent:** Tuesday, March 03, 2015 12:01 PM
**To:** Lowe, James A.
**Cc:** Reidelbach, Charles F.; Morrison, Catherine; Bobb, Christina G.
**Subject:** RE: ANI v. MacDonald [IWOV-WORKSITE.FID658888]

Jim,

Thank you for the Reply. I only have a few minutes so I don't want this to be my only response to your email.

1.  I will get a plan today on the Inspection and try to incorporate your concerns. I made a formal Inspection Demand which will go out today in case we cannot resolve the verification of your evidence informally.

2.  The reason for filing the Motion for Preliminary Injunction was because your client was misbehaving in trashing our clients products at conferences and shows. This was discussed with the Court in our early attorney-only ENE. And, as you know, the Motion for PI is very clear in its prayer in that regard.

3.  I wouldn't say it's a guarantee to settlement if we work through your evidence but I would say it could remove, one way or the other, an obstacle to settlement. I am preparing a settlement proposal as I told you in my email but need this verification to happen before presenting it to you.

Steve

Steven J. Cologne | Partner

Phone    (619) 236.1551
Fax      (619) 696.1410
Email    scologne@higgslaw.com

**From:** Lowe, James A. [mailto:JAL@gauntlettlaw.com]
**Sent:** Tuesday, March 03, 2015 11:33 AM
**To:** Cologne, Steven J.
**Cc:** Reidelbach, Charles F.; Bobb, Christina G.; Clifford L. White
**Subject:** RE: ANI v. MacDonald [IWOV-WORKSITE.FID658888]

Mr. Cologne,

Since our evidence in opposition to your motion for preliminary injunction is contrary either to what your client expected to see or to what it hoped to see, I can understand the desire to test the validity of our evidence.

I believe that we can agree to an inspection along the lines you request although we will need to discuss the details of the process first. Like many people, our client is sensitive to the examination and potential disclosure of highly confidential information, particularly in light of the evidence we have in hand about your clients' apparent efforts to obtain trade secret information from Lovesurf.

1

Because of this background I think we must insist that no one on behalf of your clients may see data taken from the computer system(s). We may need to restrict possession of data by you and your staff after obtaining appropriate assurances from your forensic consultant. For example, perhaps we may need the consultant to review, obtain and hold the data in confidence, and thereafter permit you to view it but not copy it, while preventing your clients from even reviewing raw data from the inspection. This can be difficult to work out but I have done it before.

I presume the point of inspection is simply to verify the existence and authenticity of the data we relied upon and not to search further or use any other information gained inadvertently or otherwise. Certainly no disclosure to any third parties will be permitted. Your clients will have to rely on you to verify the authenticity of the data.

So we will need to discuss the who, what, when, and how of an inspection. For example, we believe that all the information you seek is probably located on a single computer system. It is doubtful that the camera used to take pictures several years ago is still in our client's hands.

Your staff or proposed consultant has speculated about what information may be kept and how. But we can discuss this to clarify the process. For example, it was our office that imported data into an image viewer just so we could print it.

Since you chose to file the current motion before doing any discovery, on the theory that none was required, it seems unlikely that the Court would permit late discovery now. Frankly I anticipate that the Court will deny the preliminary injunction for the many reasons we have argued. The case may be over at that time. Such has been the nearly universal pattern in preliminary injunction motion practice.

Nevertheless, we are willing to consider your proposal to possibly delay the hearing on the motion in order to permit a verification of our evidence. But we are willing to do so on the basis that this process should lead to an early settlement. I have not heard from you about your views about settlement but I hope you and your clients are interested in a genuine effort to settle.

Should your clients not want to settle after confirming the authenticity of evidence that our client is the senior user of the marks you are claiming, then we should be entitled to pursue the same forensic inspection of your clients' computer systems for further evidence of its questionable conduct in trying to secure the ownership of these marks. Therefore, any agreement for forensic inspection will need to be mutual. That is, we will want the right (if necessary) to inspect your clients' systems to support our claims. This sort of mutual agreement would help maintain fairness, I think you would agree.

I presume your client has preserved all its ESI going back to the dates it claims for use of marks.

The bottom line is that we should talk about how to proceed with your request. You should understand that Lovesurf is confident in the authenticity of its evidence and does not fear a proper verification. Please call me at your convenience.


James A. Lowe, Esq.
Gauntlett & Associates


Gauntlett & Associates

(949) 222-5354

(949) 553-2050 FAX


This information is intended for use by the individuals or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us.

2

**From:** Cologne, Steven J. [mailto:scologne@higgslaw.com]
**Sent:** Monday, March 02, 2015 3:55 PM
**To:** Lowe, James A.
**Cc:** Reidelbach, Charles F.; Bobb, Christina G.
**Subject:** ANI v. MacDonald [IWOV-WORKSITE.FID658888]

Mr. Lowe,

We have reviewed your opposition to my client's Motion for Preliminary Injunction. We wish to have our computer forensics consultant review the evidence in support of your opposition to test its validity. I am serving an Inspection Demand along the following lines but as a courtesy am sending you this email essentially describing what is in the Inspection Demand. Would your client be willing to submit a Joint Motion for a continuance of the Reply and Hearing on the Motion for Protective Order until the Inspections have been performed? Please advise.

Thank you for your attention to the above .

Tentative Proposed Inspection Requests:

1.  The device used to make the original images (e.g. digital camera or mobile phone) depicted in the graphical images you provided in the Image Viewer images purported to be dated 7/12/2011.

2.  Inspection of the following systems:
    a.  The computer system or media which stored any copy or version of the graphical images you provided in the Image Viewer images purported to be dated 7/12/2011;
    b.  Any system which has stored text, designs, art, graphical images, fonts or any other element or data depicting Lovesurf or Bundlepower material, correspondence, or invoicing;
    c.  Any system which has any data or content published on the web via the Internet or otherwise;
    d.  Any system which has any data or content that has been printed or imprinted on paper, textiles or other media;
    e.  Any system used to administer accounts or access to websites hosting content, facilitate or conduct the sales of branded products;
    f.  Any system used to administer, register or otherwise interact with web hosting or registration sites for any web domain used in conducting Lovesurf or Bundlepower sales, marketings or business.





**Steven J. Cologne** | Partner

Phone   (619) 236.1551
Fax       (619) 696.1410
Email    scologne@higgslaw.com

401 West A Street, Suite 2600, San Diego, CA 92101

www.higgslaw.com

Please read the legal disclaimers that govern this e-mail and any attachments.

*TAX ADVICE: Any federal tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing, or recommending any transaction or matter discussed herein.*

4

# EXHIBIT F

## Morrison, Catherine

| | |
|---|---|
| **From:** | Lowe, James A. <JAL@gauntlettlaw.com> |
| **Sent:** | Friday, March 13, 2015 3:34 PM |
| **To:** | Morrison, Catherine |
| **Cc:** | Clifford L. White |
| **Subject:** | RE: Computer inspection [IWOV-WORKSITE.FID658889] |

Catherine,

I expect to get back to you Monday morning about the proposed agreement for reviewing documents on two external drives used by the defendants.  However, I need to clarify something.

We will not agree to allow DTI or anyone else to "image hard drives." If that was DTI's expectation, it should be revised. We expect to be able to agree that DTI can inspect two of our clients' external drives containing documents that were the source of exhibits in our opposition to Champion-Cain's motion for preliminary injunction.

It happens that the computer files we used as exhibits had been backed up on two external drives (in 2012 I believe) when the computer on which the files were created was taken out of service and replaced by a new computer.

We expect to be able to agree to a limited inspection of those specific files on the external drives to verify the dates of creation of those files. We will not permit the drives to be "imaged" as some forensic firms might prefer to do for their own benefit. Nor will we permit any inspection of other files on those drives that are not relevant to the present motion or to the lawsuit, so far as we know. Our client's private files will not be reviewed.

In addition, we expect to agree to provide DTI access to third-party email servers from which we obtained emails used as exhibits in opposition to your firm's motion.

We want to reach a reasonable agreement for necessary inspection and verification, the purpose being to allow plaintiffs' counsel to verify the authenticity of evidence we have used. But we are not willing to agree to any unfettered inspection of ESI sources for any purpose. The plaintiffs have no right to any such fishing expedition.

Courts, including those in the Southern District, routinely reject motions to allow the "imaging" you have mentioned. So if we cannot reach a reasonable agreement, we would oppose any effort to make an unreasonable computer inspection. However, I fully expect that we can come to a reasonable understanding, even if DTI cannot use its preferred technique.

It is said that sometimes if the only tool you have is a hammer, everything looks like a nail. But we must all be more discerning in this situation.

I look forward to talking with you Monday.


James A. Lowe, Esq.
Gauntlett & Associates


Gauntlett & Associates

(949) 222-5354

(949) 553-2050 FAX


This information is intended for use by the individuals or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination,

distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us.

---

**From:** Morrison, Catherine [mailto:Morrison@higgslaw.com]
**Sent:** Friday, March 13, 2015 1:16 PM
**To:** Lowe, James A.
**Subject:** Computer inspection [IWOV-WORKSITE.FID658889]

Hi Jim —

We discussed today that DTI will image the computer(s) at your office next week — would you let me know the best time to accomplish that? You indicated that your client is still reviewing the agreement, but, as we discussed, our Reply Brief is due April 6 so there is a time limitation. My understanding from our discussion yesterday is that you would like to hear from your client before we schedule the inspection. However, we need to get it calendared as soon as possible to avoid scheduling issues and our deadline to file the Reply. You hoped that that would happen this afternoon. Please let me know as soon as you can.

Thanks for your immediate attention to this.

Catherine







**Catherine Morrison** | Special Counsel

Phone   (619) 236.1551
Fax      (619) 696.1410
Email    Morrison@higgslaw.com

401 West A Street, Suite 2600, San Diego, CA 92101

www.higgslaw.com

Please read the legal disclaimers that govern this e-mail and any attachments.

*TAX ADVICE: Any federal tax advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing, or recommending any transaction or matter discussed herein.*

EXHIBIT G

## Morrison, Catherine

| | |
|---|---|
| **From:** | Morrison, Catherine |
| **Sent:** | Thursday, March 19, 2015 9:44 AM |
| **To:** | jal@gauntlettlaw.com |
| **Cc:** | Cologne, Steven J.; Reidelbach, Charles F. |
| **Subject:** | Computer inspection |

Jim –

In response to your request, I sent you information from our expert on why they need to image the entire hard drive/flash drive and not simply the files that you specify.  Earlier in the week, you indicated that you were prepared to move on the computer inspection this week, but I have not heard from you regarding the inspection since the day before yesterday, and now it is Thursday.  I called you and left a message for you yesterday but I have not heard back.

We cannot stall and lag on this any longer, Jim.  I need to ask you if you will agree to us seeking another continuance of the Reply, and if not, I need to go in ex parte to explain this to the Court.  During the conference call you had with Steve, Charles and DTI, you had agreed to an inspection of the computer and were willing to engage in this process.  Now, you have backpedaled significantly and stated that only certain files can be copied, that the computer "is out of service" and you are not returning my phone calls.

Please contact me by email, phone, letter, whatever, and let me know if you will stipulate to a continuance of the Reply.  In addition, please clarify your position on the inspection in light of DTI's explanation.  I need to hear from you by 2:00 p.m. today or I will have to file ex parte papers with the Court.

Thank you –

Catherine

1

EXHIBIT H

## Morrison, Catherine

| | |
|---|---|
| **From:** | Morrison, Catherine |
| **Sent:** | Thursday, March 26, 2015 10:24 AM |
| **To:** | jal@gauntlettlaw.com |
| **Cc:** | Cologne, Steven J.; Reidelbach, Charles F. |
| **Subject:** | Further explanation from Expert [IWOV-WORKSITE.FID658889] |
| **Attachments:** | DTI_s explanation.PDF |

Jim –

Pursuant to your telephone meet and confer conference with Steve Cologne yesterday, attached is a discussion from DTI as to the need for a full computer forensic examination of the computer hard drive and flash drive at issue.

Please let me know if you have any questions –

Thank you.

Catherine

1

## I.

### Issue raised by Lovesurf:

"Lovesurf has been using the wordmark LOVESURF in connection with their surfing lifestyle clothing line since 2010 when hats and t-shirts were made bearing the LOVESURF wordmark. The hats and t-shirts were labeled with a tag displaying and advertising the LOVESURF brand name." Opposition, pg. 2, ln. 4.

### Evidence proffered in support:

Exhibit 20

### Expert's response:

Lovesurf has provided a number of documents in support of their opposition. The files were provided in a manner that does not allow for validation of their content nor confirmation of the various dates recorded about the files by the file system or embedded in the files by the program used to create, access or modify the files. In addition to the metadata dates maintained by the file system and the program used with a particular file, there are normally dates associated with temporary files, Windows shortcut files, log file entries, copies of similar content and other file system data, deleted data, and similar artifacts used to help date activity related to relevant files on a computer.

Depending on the version of the operating systems (e.g. Windows 7) and the media used to store, copy or backup relevant files, different supporting artifacts may be recovered. Because relevant artifacts may reside in unanticipated areas of the file system or in deleted space of the storage media, a forensic image backup of the entire media is normally performed. Also, in order to properly preserve all data for analysis, a forensic preservation protocol will involve read-only access to the media and a forensic image backup of the media.

As an example, when a file is opened on a computer configured with the Windows operating system a Windows link file is created as a type of shortcut back to the file. There are a number of locations the link file may be stored. In addition, deleted Windows link files may be recovered, however, this requires running a software tool that scans the file system and deleted space for the existence of Windows link file data. If done in the forensics lab, the process is started and will run a number of hours, depending on the size and use of the relevant storage

3309903.1

media, and results require review for relevant data. Windows link files provide additional dates for access to the file and location of the file accessed. Often these additional data points provide useful information in building a more complete timeline of activity related to relevant files.

Text searches for other relevant files that provide additional copies of similar content will also provide additional dates and activity which may assist in proper interpretation of dates associated with relevant files. Users are often unaware of temporary files or other inadvertent copies of files made by the operating system when acting on particular files. Location of potentially relevant copies of content cannot normally identified by a user. Review of search results and review of files and folders stored on a system will assist in focusing analysis on relevant files.

The Windows Registry is essentially a database of settings for the Windows system, programs run or installed on a system in addition to creating records which may indicate access, modification or use of particular files.

Files on a Windows system are recorded in a Master File Table ("MFT"). The MFT provides information about the file system, i.e. the files and folders, on a Windows computer. Additional date data, not normally seen by a user, is recorded in the MFT. With the use of certain software tools additional date data can be recovered, often showing if dates have been manipulated on relevant files.

These few examples of forensic analysis steps routinely used when the dates of relevant files are questioned. Analysis of content is also routinely performed in an effort to validate relevant data. Accurate forensic analysis begins with proper preservation of all relevant data storage media by obtaining a forensic image backup. This provides a verifiable copy of the data which experts for either party can review, without any changes having been made to the original evidence. A forensic image backup normally takes a short amount of time, 3-4 hours is common, and allows the system to be put back into operation. The forensic image copy performs a sector-by-sector copy of the stored data, including deleted and other data.

In order to protect privacy while ensuring an accurate and complete analysis, the forensic analysis is performed on the forensic image backup of the storage media and only relevant data is extracted and provided to the producing party for review. The extracted data can they be provided to the requesting party with a privilege log. Only the forensic image backup is done onsite while accessing the original media. Once the forensic image backup is obtained, forensic analysis to determine

dates associated with creating, modifying or otherwise accessing, copying or transferring relevant data is performed in a forensic lab.

Analysis of the file system which contained file for this flyer would provide the opportunity to review the metadata in the document, metadata kept by Windows for the document, review any artifacts that may be associated with working with or manipulating the file, along with analysis of any other potential versions of the file. As explained above, analysis should be performed on a forensic image backup made of the original media containing the original or any copies or backups of the file.

## II.

### Issue raised by Lovesurf:

"Lovesurf added other clothing lines to the LOVESURF brand as early as July 12, 2011..." Opposition, pg. 2, ln.17.

### Evidence proffered in support:

Exhibits 1-4 purport to be photographs of two different t-shirts allegedly captured by Defendants computer on July 12, 2011. The photographs purport to show the name Lovesurf on the neck label of the t-shirts, and on two different designed hang tags. The only date associated with the photograph is the date and time in the Image Viewer of Defendants computer which allegedly went out of service in 2012. The date and time of the computer can easily be changed or modified to reflect any desired date. It is important that we verify the authenticity of these photographs by analyzing the meta data and other computer data associated with these photographs.

### Expert's response:

Mr. MacDonald's declaration does not explain how or when these photographs were taken. When photographs are taken with a digital camera metadata is embedded inside the digital file by the device used to take the photograph. Additional metadata is stored about the file on the storage media used to capture the photograph. When the photograph is transferred to a computer, the metadata embedded in the file, along with the metadata stored in the file system of the receiving storage media, may be altered.

3309903.1

Review of the embedded metadata in the digital photograph files, along with review of file system dates and other data in the Windows Registry, the file system or in deleted space is necessary to attempt to establish the date(s) of activity associated with saving, copying modifying or otherwise working with the digital photograph files. Preservation of the storage media containing the original files, copies or backups by performing a forensic image backup would allow for establishing the timeline of activity associated with the files.

## III.

### Issue raised by Lovesurf:

"...and sold clothing branded as LOVESURF at least as early as August 15, 2011." "Mr. MacDonald owned a website called BundlePower.com on which he listed Lovesurf clothing for sale, and he also listed Lovesurf clothing for sale on Hydrashop and Café-press." Opposition, pg. 2, ln.18.

### Evidence proffered in support:

-Exhibits 5-8 purport to be screenshots captured using Defendants computer on August 15, 2011 showing two different t-shirts (the "Dream Session Tee" and "I Love Surf Tee") for sale on a website called BundlePower.com. BundlePower.com is owned and controlled by Defendant himself.

-Exhibit 9 purports to be a screenshot of the same t-shirt (the "Dream Session Tee") as captured by BundlePower but on a different website CafePress. The only date associated with the screenshots is the date and time in the Image Viewer of Defendants computer which allegedly went out of service in 2012. As noted by the expert, the date and time of the computer can easily be changed or modified to reflect any desired date. It is important that we verify the authenticity of this screen shot by analyzing the meta data and other computer data associated with the screen shot.

### Expert's response:

Mr. MacDonald describes these as "Internet listings" however they are missing information to reflect they are live web pages viewed in a web browser program. They are also inconsistent with copies of the live BundlePower website as captured on the Internet Archive, an independent non-profit site dedicated to archiving web

3309903.1

sites. There are a number of anomalies in the content of the purported Lovesurf Internet listings which indicates they are not taken from live BundlePower product listings. In order to review the content and associated metadata of the files purported to be Lovesurft Internet listings a forensic image backup of any storage media containing the original capture of the Internet listings and any copy or backup would assist in establishing the timeline of activity in creating, modifying or otherwise accessing these files. Artifacts in the file system on a Windows computer, as explained above, may have recorded additional date information. This may include Windows Registry data, File system MFT data, Windows recent link files, and other data that would be preserved in a forensic image backup and extracted during forensic analysis. Any relevant data would be extracted and provided to the producing party for review and production.

## IV.

### Issue raised by Lovesurf:

"The first sale of clothing displaying the LOVESURF wordmark was on August 23, 2011 and was a Dream Session Tee by Lovesurf sold for $19.95 on the BundlePower.com website." Opposition, pg. 2, ln. 23.

### Evidence proffered in support:

-Exhibit 14 is the only purported sale of a product associated with the name Lovesurf. The line item reads "Dream Session Tee by Lovesurf." There is no picture of the shirt that was sold. The order confirmation states that the order was "placed on August 23, 2011" and is in a text file that could have been easily altered or modified by the party who controlled it -- Defendant. BundlePower.com is owned and controlled by Defendant, and Defendant would have generated the receipt. It is important that we verify the authenticity of this receipt by analyzing the meta data and other computer data associated with it.

### Information needed to respond:

The text file containing what appears to be an acknowledgement of an order for $19.95 on August 23, 2011 was provided by Mr. MacDonald. It is described as an invoice and appears to have been submitted electronically. It is common to either display this type of information in the user's web browser at the conclusion of an online sale or may be sent via email following the successful processing of an

online sale. Mr. MacDonald provides no explanation of how this "invoice" was created and how he has this type of data stored.

Review of email data maintained by Lovesurf can be performed and only relevant email messages and attachments identified by forensic analysis can be provided to Lovesurf for review prior to production to the Plaintiff.

If the invoice is simply a stored text or word processing file, preservation of storage media with the original, copies or backups of the file by performing a forensic image backup would allow for analysis of metadata and artifacts related to the file as described above.

## V.

### Issue raised by Lovesurf:

"By December 28, 2011, Lovesurf used the HEART WAVE logo appearing above the word LOVESURF on clothing tags" Opposition, pg. 3, ln. 4.

### Evidence proffered in support:

-Exhibits 12 and 13 purport to be photographs of a single t-shirt allegedly captured by Defendants computer on December 28, 2011. The photographs purport to show the name Lovesurf on the neck label of the t-shirts, and on a hang tag. The only date associated with the photograph is the date and time in the Image Viewer of Defendants computer which allegedly went out of service in 2012. The date and time of the computer can easily be changed or modified to reflect any desired date. It is important that Plaintiff verify the authenticity of these photographs by analyzing the meta data and other computer data associated with these photographs.

### Expert's response:

See above

# EXHIBIT I

## Morrison, Catherine

| | |
|---|---|
| **From:** | Cologne, Steven J. |
| **Sent:** | Monday, June 15, 2015 10:01 AM |
| **To:** | Morrison, Catherine |
| **Subject:** | FW: Lovesurf advs. Champion-Cain, 10751.002, Meet and Confer about proposed sanctions motion [IWOV-WORKSITE.FID65386] |
| | |
| **Sensitivity:** | Confidential |

---

**From:** Cologne, Steven J.
**Sent:** Monday, May 04, 2015 3:34 PM
**To:** 'Lowe, James A.'
**Subject:** RE: Lovesurf advs. Champion-Cain, 10751.002, Meet and Confer about proposed sanctions motion [IWOV-WORKSITE.FID370152]
**Sensitivity:** Confidential

Jim,
  Two corrections:
  1.  I said I nor any of my attorneys have  and said I doubt seriously anyone would check the Court file (my clients included).
  2.  I offered to sign a declaration myself to the above effect if you so desire.
Steve

P.S. Since our teleconference we have prepared the Joint Motion and sent you the draft. I also offered deposition date on May 19. After I checked with Gina and staff I have too many commitments to do on May 12-15.
Steve

---

**From:** Lowe, James A. [mailto:JAL@gauntlettlaw.com]
**Sent:** Monday, May 04, 2015 3:25 PM
**To:** Cologne, Steven J.
**Cc:** Clifford L. White
**Subject:** Lovesurf advs. Champion-Cain, 10751.002, Meet and Confer about proposed sanctions motion
**Sensitivity:** Confidential

Mr. Cologne,

During our telephone conference this afternoon to meet an confer about the motion for sanctions that we have proposed to file we discussed several things that I want to confirm here.

First, you say that you have not sent to your client a copy of the plaintiffs' Reply on your Motion for Preliminary Injunction. You assert that your client will not have seen the Reply that was publically filed with the court. As I told you we reasonably assume, nevertheless, that your client is likely to have seen the Reply and the Garza Declaration submitted in support of your Reply. We certainly cannot take comfort in your assurance.

Second, you offered to arrange the deposition as soon as possible of Ms. Gina Champion-Cain so that I could question her about whether she had seen the Reply or the Garza Declaration. Because time is of the essence, I told you that I would like to conduct this deposition (of perhaps half a day) next week, May 12-15, 2015. You told me that you would try to arrange that.

1

Third, you proposed to immediately draft whatever is necessary to have the Garza declaration and Reply filed under seal. I will agree to that as a minimal start to dealing with the problems created by your filing of the documents containing what are presumed (by the Protective Order) to be CONFIDENTIAL-FOR COUNSEL ONLY data. As I have said repeatedly, it may be too late to correct the problem but this step should be taken promptly anyway. You said that Catherine Morrison will contact me later today about this.

Fourth, you agreed that a delay in our proceeding with these steps that might or might not avoid or change our approach to a sanctions motion will not be held against us. In other words, you agree that we may proceed later with next steps in pursuing a sanctions motion because of the matters raised in our letters after a motion to seal the Reply and Garza Declaration are filed and after a deposition of your clients.

If this does not correctly summarize our meet and confer about this matter, please advise me promptly.

James A. Lowe, Esq.
Gauntlett & Associates

Gauntlett & Associates

(949) 222-5354

(949) 553-2050 FAX

This information is intended for use by the individuals or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us.

2