UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CHAMPION-CAIN, et al.,<br><br>Plaintiff,<br>v.<br><br>BRIAN MACDONALD, LOVESURF, INC.,<br>AND DOES 1-10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. 14CV2540 GPC (BLM)<br><br>**ORDER DENYING DEFENDANTS'<br>MOTION FOR SANCTIONS**<br><br>**[ECF No. 46]** |

Currently before the Court is Defendants' June 3, 2015 motion for sanctions [ECF No. 46-1 ("Mot.")], Plaintiffs' June 15, 2015 opposition to the motion [ECF No. 49 ("Oppo.")], and Defendants' June 22, 2015 reply [ECF No. 52 ("Reply")].  For the reasons set forth below, Defendants' motion for sanctions is **DENIED**.

## PROCEDURAL BACKGROUND

The instant case was initiated on October 23, 2014 when Plaintiffs filed a complaint for injunctive relief alleging trademark infringement, unfair competition, false designation of origin, slander, defamation, interference with a business advantage, and alter ego.  ECF No. 1. Defendants answered Plaintiffs' complaint on December 5, 2014 and counterclaimed for trademark infringement and misappropriation of trade secrets.  ECF No. 9. On February 2, 2015, the Court issued a pretrial scheduling order requiring, *inter alia*, the parties to file a joint motion for protective order on or before February 23, 2015.  ECF No. 22 at 1.  In accordance with that order, the parties timely filed a joint motion for protective order, which was granted with modification on February 24, 2015.  ECF Nos. 24 and 25.

On January 23, 2015, Plaintiffs filed a motion for preliminary injunction.  ECF No. 18.  On February 20, 2015, Defendants filed an opposition to the motion for preliminary injunction.  ECF

No. 23.  The opposition was supported by a declaration and exhibits containing computer data.  ECF Nos. 23-1 - 23-14.  On March 4, 2015, the parties filed a joint motion to continue the dates governing Plaintiffs' reply and the court hearing, which was granted.  ECF Nos. 26 & 27.  The proffered reason for the requested continuance was that Plaintiffs' forensic computer expert needed additional time to examine the digital evidence submitted by Defendants in support of their opposition.  ECF No. 26.  On March 20, 2015, Plaintiffs filed an *ex parte* motion seeking to further continue the reply deadline, alleging that Defendants were placing unreasonable restrictions on the expert's examination of Defendants' hard drive.  ECF No. 28.  On March 23, 2015, Defendants filed a notice of intent to oppose the *ex parte* request and then on March 27, 2015, the parties filed a joint motion to continue the date, which was granted.  ECF Nos. 29, 30 & 31.  On April 20, 2015, Plaintiffs filed their reply.  ECF Nos. 23 and 32.  Eighteen days later, on May 8, 2015, Defendants filed objections to the declarations that Plaintiffs submitted in support of their reply and requested that the Court exclude statements in the declarations that were inadmissible under the Federal Rules of Evidence and strike the portions of the Reply relying on the inadmissible statements and evidence.  ECF No. 33 at 2.  On May 12, 2015, the Honorable Gonzalo Curiel issued a briefing schedule permitting Plaintiffs to respond to Defendants objections and Plaintiffs responded on May 18, 2015.  ECF Nos. 35 and 36.  On June 18, 2015, Judge Curiel heard arguments on the pending motions.  ECF No. 51.  The motion for preliminary injunction was denied on July 15, 2015.  ECF No. 55.

On June 3, 2015, more than forty days after Plaintiffs filed their reply with the expert evidence, Defendants filed the instant motion for sanctions.  ECF No. 46.  Defendants argue that Plaintiffs violated both the specific agreement governing the review of the computer evidence and the Court's Protective Order and seek ten enumerated discovery sanctions for the alleged violation.  Id.  Specifically, Defendants ask the Court to issue an order: (1) imposing a contempt citation against Plaintiffs and their counsel, (2) declaring that the validity and authenticity of Defendants' exhibits to their opposition to Plaintiffs' motion for a preliminary injunction "be taken as established for the purposes of this suit," (3) prohibiting Plaintiffs from using Defendants' Confidential Information to support their position and from entering any evidence related to the

validity of Defendants' exhibits to its opposition to Plaintiffs' motion for preliminary injunction, (4) striking references to Defendants' Confidential Information and any argument based upon the Confidential Information from Plaintiffs' reply to their motion for preliminary injunction, (5) directing Plaintiffs and their counsel to inform Defendants of every individual who has viewed Defendants' Confidential Information outside of Document Technologies LLC ("DTI") and Plaintiffs' attorneys, who provided the information to the individuals, the date that the information was provided, what specifically was provided, and in what form, (6) directing Plaintiffs to destroy all information obtained during their forensic inspection of Defendants' data and any notes, copies or other documents created using Defendants' Confidential Information after providing Defendants with a copy of said documents and any communications related to Defendants' Confidential Information, (7) prohibiting DTI from consulting with or testifying for Plaintiffs and striking all testimony previously submitted, (8) enjoining Plaintiffs from using Defendants' Confidential Information in this lawsuit or in the future, (9) directing Plaintiffs and their counsel to pay Defendants' attorneys' fees and costs associated with this motion, and (10) granting monetary compensation for damages caused by Plaintiffs' violations.  Id. at 18-19.

## COMPUTER FORENSIC INSPECTION AND RESULTING DISPUTE

After reading Defendants' opposition to Plaintiffs' motion for preliminary injunction, which included digital evidence Defendants argued established their first use of the contested marks, Plaintiffs determined that they needed to have an expert conduct a forensic examination of the Defendants' digital evidence.  ECF No. 49-1, Declaration of Steven J. Cologne ("Cologne Decl.") at 2.  After several meet and confer efforts, Defendants agreed to allow Plaintiffs to perform a restricted forensic inspection of an external hard drive, a flash drive, and a business computer.  ECF No. 46-2, Declaration of James A. Lowe ("Lowe Decl.") at 2.  Defendants expressed concern about the privacy of the information stored on their computer drives and to resolve Defendants' concerns, the parties and Plaintiffs' forensic expert, DTI, entered into a Computer Inspection Agreement ("Inspection Agreement").  Lowe Decl. at 2; see also Cologne Decl. at 2-3.  No one signed the Inspection Agreement but Plaintiffs and Defendants agree that the Inspection Agreement governed the forensic examination.  Lowe Decl. at 2; see also Cologne Decl at 2.

1       The parties disagree as to the interpretation of the Inspection Agreement and as to the

2   scope and terms of the entire agreement between the parties.  Defendants allege that the parties

3   agreed that DTI would image the drives and perform the inspection and that DTI would prepare

4   a report that it would first share with Defendants and then with Plaintiffs' counsel.  Lowe Decl.

5   at 2.  Defendants further allege that the Inspection Agreement dictated that all of the raw data

6   provided to DTI by Defendants was Confidential Information that only could be shared with

7   Plaintiffs' counsel and that therefore its misuse was prohibited by the parties' Protective Order

8   [ECF No. 25].   Lowe Decl. at 3.   Plaintiffs argue that the Inspection Agreement was an

9   independent agreement that did not incorporate the parties' Protective Order, Defendants did not

10  designate the information from their computers as "Confidential - For Counsel Only" under the

11  Protective Order, and the Inspection Agreement did not state that Plaintiffs would provide

12  Defendants with an advanced copy of the forensic expert's report.   Cologne Decl. at 2-3. and ECF

13  No. 49-2, Declaration of Catherine Morrison in Support of Opposition to Motion for Sanctions

14  ("Morrison Decl.") at 2.  Plaintiffs claim that their counsel "loosely threw out" an offer to provide

15  Defendants with an advanced copy of the report, but that Defendants never accepted the offer

16  and did not incorporate it into the Inspection Agreement.  Oppo. at 7.; see also Morrison Decl.

17  at 2-3.

18      Defendants provided the relevant computer hardware to Plaintiffs and Mr. Peter Garza from

19  DTI conducted a forensic computer examination.  Lowe Decl. at 3; see also Cologne Decl. at 3.

20  Mr. Garza concluded that the exhibits to Defendants' opposition to the preliminary injunction

21  motion "were not created on the dates that Defendants asserted in their Opposition, or on the

22  dates shown on the face of some of the exhibits."  Oppo. at 6.  Plaintiffs included this information

23  in their reply brief to the motion for preliminary injunction.  Lowe Decl. at 3-4.  Defendants argue

24  that Mr. Garza's declaration contained copies of and references to its Confidential Information and

25  "made numerous inaccurate claims relating to the genuineness of [Defendants'] evidence."  Mot.

26  at 6; see also Lowe Decl. at 3-4.

27      On April 21, 2015, in response to Plaintiffs' reply, Defendants requested that Plaintiffs

28  withdraw DTI's findings and evidence from the record and provide Defendants with all reports and

other documentation that DTI provided to Plaintiffs, and questioned why Plaintiffs failed to provide an advanced report as agreed. Lowe Decl. at 4 and Exh. 25. Plaintiffs responded on April 22, 2015, confirming that DTI offered to provide Defendants with an advanced copy of the report, but noting that Defendants failed to assert that such a report was part of the Inspection Agreement and that there was insufficient time to provide Defendants with an advanced copy since Plaintiffs received Mr. Garza's declaration on the day that the reply was to be filed. Id. at 4 and Exh. 26. Defendants requested a meet and confer on April 30, 2015 regarding the instant motion. Id. at 5 and Exh. 27. Plaintiffs responded on May 4, 2015 and suggested continuing the meet and confer for one day so that Defendants could discuss Plaintiffs' offer to motion the Court to file Mr. Garza's declaration under seal. Id. at 5 and Exh. 28. Defendants responded and requested that the meet and confer take place as scheduled. Id. at 5 and Exh. 29.

The parties met and conferred on May 4, 2015 and Plaintiffs' counsel proposed that she begin drafting the necessary pleadings to have Mr. Garza's declaration filed under seal. Id. at 5. That same day, Plaintiffs' counsel emailed to defense counsel a draft joint motion to file the declaration under seal. Id. at 6 and Exh. 31. Defendants' counsel responded by stating that additional information in the reply needed to be sealed as well, but refused to specify which pages or sections of the reply needed to be sealed, claiming that the burden belonged to Plaintiffs. Id. On May 6, 2015, Plaintiffs suggested that Defendants provide an alternative motion if they disagreed with the language or scope of Plaintiffs' proposed sealing motion. Id. at 6 and Exh. 32. Defendants responded that all of its data was "Confidential - For Counsel Only" and that Plaintiffs needed to comply with their obligations or Defendants would file a motion for sanctions. Id. at 7 and Exh. 33. Plaintiffs' counsel did not respond and did not file a motion to seal. Id. at 7; see also Docket. Defendants did not file a motion to seal Mr. Garza's declaration or any portion of Plaintiffs' reply; instead, they filed an evidentiary objection to Plaintiffs' reply and motion to strike on May 8, 2015, and the instant motion for sanctions on June 3, 2015. See Docket.

## DISCUSSION

Defendants argue that Plaintiffs violated both the Inspection Agreement and the Protective Order by publicly filing DTI's expert report which contained confidential information. Mot. at 10-

13. Defendants explain that the Inspection Agreement defines all of the computer data provided to DTI as "Confidential Information" and that the Protective Order imposes certain responsibilities on Plaintiffs for handling Confidential Information so the terms of the Inspection Agreement must be viewed as part of the Protective Order.  Id. at 11-14.  Defendants seek sanctions pursuant to Federal Rule of Civil Procedure ("FRCP") 37 and the Court's inherent power.  Id. at 14-15.  Plaintiffs disagree with Defendants' liability claim and argue that only the Inspection Agreement, not the Protective Order, governed the inspection and use of the digital evidence.  Oppo. at 8-9.  Plaintiffs also argue that the information filed as part of its reply was not confidential information and had not been designated as "Confidential - For Counsel Only" by Defendants.  Id. at 9-13.  Finally, Plaintiffs dispute Defendants' damage claims, arguing that there was no bad faith and they tried to accommodate Defendants' confidentiality concerns but Defendants refused to cooperate.  Id. at 14-16.

1.     Plaintiffs did not violate the Protective Order

Initially, the Court notes that the parties could have used the Protective Order to govern the forensic examination performed by DTI, but apparently chose not to do so.  The Protective Order provides that both "Confidential" and "Confidential - For Counsel Only" information may be provided to independent experts.  See ECF No. 25-1 at 4-5 (paras. 8 & 9).  The Protective Order requires the party utilizing the expert to provide to opposing counsel the name, curriculum vitae, and an executed copy of the "Agreement to be Bound by Protective Order" (also described as "Exhibit A") in advance of the confidential information being provided to the expert.  Id.; ECF No. 25-2.  Exhibit A, the Agreement to be Bound by Protective Order, requires the expert to utilize the confidential information only in the manner authorized by the Protective Order and subjects the expert to the Court's jurisdiction.  ECF No. 25-2.  Although neither party explains why the Protective Order and Exhibit A were not used to govern DTI's forensic examination, the parties apparently decided not to utilize the Protective Order and instead chose to enter into a new and separate agreement governing the production of the computer data to DTI.  Because the computer data was not provided to DTI pursuant to the terms of the Protective Order, the Protective Order does not automatically apply and the Court must examine the terms of the

6

1   Inspection Agreement.

2   The Inspection Agreement states that it is entered into[1] by Plaintiffs, Defendants and DTI

3   "to govern an inspection of documents that were proffered by Defendants ...." ECF No. 46-5,

4   Lowe Decl. at Exh. 24 at 2.  The Inspection Agreement defines the phrase "Confidential

5   Information" as follows

6   > [f]or purposes of this Agreement, "Confidential Information" means any raw data
    > obtained from any computer system acquired through inspection by or otherwise
7   > provided to DTI by Defendants.

8   Id. The Inspection Agreement contemplates that DTI may be required to provide the Confidential

9   Information to another legal body and provides that in such a case, Defendants must be notified

10  so they can seek an appropriate protective order.  Id. at 3.  The Inspection Agreement does not

11  attempt to include DTI in the Protective Order already in place in this case, despite the fact that

12  Exhibit A to the Protective Order seems to be designed for such a purpose, and the Inspection

13  Agreement does not reference or incorporate the Protective Order in any way.  Id. at 2-5; see also

14  ECF Nos. 25-1 and 25-2.  Finally, the Inspection Agreement states that "[t]his Agreement

15  constitutes the entire understanding of the parties, and supersedes all prior or contemporaneous

16  written and oral agreements, representations or negotiations with respect to the subject matter

17  hereof." Lowe Decl. at Exh. 24 at 3.  Because the Inspection Agreement does not incorporate or

18  reference the Protective Order and because the Inspection Agreement affirmatively states that

19  it is an independent agreement, the Court finds the data covered by the Inspection Agreement

20  is not also covered by the Protective Order.

21  Defendants argue that the Protective Order necessarily covers the data examined pursuant

22  to the Inspection Agreement because the Protective Order dictates that for the "purpose[] of the

23  initial inspection, all materials produced will be considered as 'Confidential - For Counsel Only.'"

24  Reply at 6; see also ECF No. 25-1 at 3 (para. 5).  While this argument has some initial appeal, its

25  validity is undercut by several important facts.  First, the Protective Order provided a mechanism

26

27  ----

28  [1]The Court notes that the Inspection Agreement is not executed by any party, entity or individual.  However, since both Plaintiffs and Defendants agree that it is a valid contract, the Court will treat it as such.

7

by which experts and their work product could be incorporated into the terms of the Protective Order and Defendants chose not to utilize this procedure.  Second, the Inspection Agreement does not mention or incorporate the Protective Order in any way and, in fact, the Inspection Agreement repeatedly states that it is a separate and independent document.  Third, the Inspection Agreement and Protective Order define the relevant confidentiality terms differently and use them in slightly different manners.[2]  Finally, Defendants did not designate the material as either "Confidential" or "Confidential - For Counsel Only" as required by the Protective Order; they defined it only as "Confidential Information" under the Inspection Agreement.

Accordingly, the Court finds that the data provided by Defendants to DTI for forensic examination and the subsequent use of the data by Plaintiffs was not covered by the Protective Order and was only covered by the Inspection Agreement.  The Court did not approve the Inspection Agreement so the Inspection Agreement is a contract between Plaintiffs, Defendants, and DTI and not a court order.  The Court, therefore, will construe the Inspection Agreement as a contract.

2.    Plaintiffs did not breach the Inspection Agreement

In the Inspection Agreement, the parties state that "[t]his Agreement will be construed and enforced in accordance with the laws of the State of California."  Lowe Decl. at Exh. 24 at 3.  Despite this agreement, neither party cites California law to establish either a breach of the agreement, or the appropriate remedies.  See Mot.; Oppo.; Reply.

The Court has reviewed the Inspection Agreement and finds that Plaintiffs have not violated any term of the Inspection Agreement because the Inspection Agreement requires DTI to handle the Confidential Information in specified ways; it does not impose the same restrictions

---

[2] The Protective Order defines the phrase "Confidential Information" in a confusing manner: it "will mean and include information contained or disclosed in any materials, ... that is deemed to be Confidential Information by any party to which it belongs."  ECF No. 25-1 at 2 (para. 1). Throughout the Protective Order, the parties use the term Confidential Information to cover both "Confidential" and "Confidential - For Counsel Only" information but the Protective Order requires the party to designate information as either "Confidential" or "Confidential - For Counsel Only" and the Protective Order imposes different restrictions depending upon the designation.  ECF No. 25-1.  The Inspection Agreement, in contrast, uses only the phrase "Confidential Information" and it encompasses only the raw data obtained from Defendants' computer system.  ECF No. 46-5 at 2.

8

on Plaintiffs.  Lowe Decl. at Exh. 24 at 2-4.  The Inspection Agreement states that "Plaintiffs, Defendants and DTI agrees as follows" but the subsequent numbered paragraphs place restrictions on DTI, not Plaintiffs.  Id.  For example, paragraphs 1, 2, 5, and 13 require DTI to limit disclosure of the Confidential Information.  Id.  Similarly, paragraphs 3 and 4 dictate how DTI may use and maintain the Confidential Information.  Id. at 2.  None of the paragraphs impose a duty on Plaintiffs to not disclose the Confidential Information covered by this Inspection Agreement.  Id. at 2-4.  Even paragraph 9, which Defendants cite to establish the value of their Confidential Information, does not impose a duty on Plaintiffs; it imposes a duty on DTI:

> All Parties to this Agreement acknowledge that Defendant's Confidential Information is unique and valuable, and that breach of the obligations of this Agreement regarding Confidential Information and intellectual property rights may result in irreparable injury to the affected party for which monetary damages alone would not be an adequate remedy.  Therefore, **DTI agrees** that in the event of a breach or threatened breach of such provisions, Defendants will be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach or anticipated breach without the necessity of posting a bond.  Any such relief will be in addition to and not in lieu of any appropriate relief in the way of monetary damages

Id. at 3 (emphasis added).[3]  Notably, Defendants do not identify the provision of the Inspection Agreement that Plaintiffs violated.  Mot. at 10-11; Reply at 4.

Defendants argue that the provision of the Inspection Agreement providing that "'Confidential Information' was to be obtained and reviewed only by DTI and Plaintiffs' attorneys [wa]s the equivalent to" the CONFIDENTIAL - FOR COUNSEL ONLY designation under the Protective Order and that therefore Plaintiffs have violated both the Inspection Agreement and the Protective Order.  Mot. at 13.  This argument fails because, as discussed above, the parties chose not to utilize the Protective Order mechanism or language, the Inspection Agreement by its terms is a separate document, and the confidentiality terms are defined and used differently in the two documents.  Accordingly, and for the reasons discussed in more detail above, the Court

---

[3]Defendants do not allege and it does not appear that DTI is in breach of the Inspection Agreement.  The Inspection Agreement states that DTI will withhold the Confidential Information from disclosure to Plaintiffs or any third parties, but permits DTI to disclose the information to Plaintiffs' counsel and its employees.  Lowe Decl. at Exh. 24 at 2-4.  Defendants do not allege that DTI improperly released the information to Plaintiffs or any third parties. Mot.

1    finds that this argument is not persuasive.

2          Defendants also argue that the parties' agreement included a requirement that Plaintiffs

3    provide Mr. Garza's report to defense counsel before the report was provided to Plaintiffs' counsel.

4    Mot. at 6; see also Lowe Decl.  at 2.  Defendants rely upon email communications to establish the

5    additional provision and assert that the "intent" of the requirement for an early copy of DTI's

6    report was to protect Defendants' information under the Protective Order.  Mot. at 13.  Plaintiffs

7    counter that while they offered to provide Defendants with an advance copy of Mr. Garza's report,

8    Defendants never agreed to the offer and that, in any event, the Inspection Agreement did not

9    incorporate the alleged requirement and the requirement certainly was not designed to provide

10   Defendants with an opportunity to review DTI's findings and determine how to protect its

11   information.  Oppo. at 7-8.

12         The Court has reviewed the evidence submitted with the pleadings and finds that Plaintiffs'

13   counsel, Ms. Morrison, did agree that DTI would provide its report to Defendants prior to

14   providing it to her office.  Lowe Decl. at Exh. 22.  In her March 27, 2015 email to defense counsel,

15   Ms. Morrison wrote "I'm confirming that you have agreed to allow Plaintiffs' computer expert, DTI,

16   to image the entire external hard drive and the flash drive …   Thereafter, DTI will prepare a

17   report which it will share with you first and then will share with our office. … Let me know

18   immediately if this does not accurately reflect our agreement."  Id.  In support of Plaintiffs'

19   opposition, Ms. Morrison states that the phrase about sharing the report with Defendants first was

20   mistakenly included in the email and that it "did not accurately reflect our agreement."  Morrison

21   Decl. at 3.  The Court is not convinced by Plaintiffs' arguments that this offer was merely an

22   attempt to "sweeten the deal," that Ms. Morrison "loosely threw out this offer that was never

23   accepted," or that Ms. Morrison's email was an error and "did not accurately reflect [the]

24   agreement."  Oppo. at 7; see also Morrison Decl. at 3.  Rather, the Court finds that Ms. Morrison

25   did agree to provide an early copy of DTI's report to defense counsel and that she and Plaintiffs

26   failed to comply with her agreement.

27         While the Court finds that Plaintiffs violated Ms. Morrison's promise, the Court does not find

28   that the promise to provide an advanced copy of the report was properly incorporated into the

parties' Inspection Agreement.  As previously discussed, the Inspection Agreement unequivocally states that it "constitutes the entire understanding of the parties, and supersedes all prior or contemporaneous written and oral agreement, representations or negotiations with respect to the subject matter hereof."  Lowe Decl. at Exh. 24 at 3.  Defendants had the opportunity and ability to include in the Inspection Agreement the requirement that the report be produced first to Defendants, but they did not take the steps necessary to do so.  Moreover, Defendants did not provide in their sanction motion any legal authority establishing that Plaintiffs' failure to comply with an agreement between counsel constitutes a violation of the Inspection Agreement or authorizes the Court to impose the specific sanctions sought by Defendants.  See Mot.; Reply.

For the reasons set forth above, the Court finds that Defendants have not established that Plaintiffs violated the Inspection Agreement.

### 3.   Defendants are not entitled to the requested sanctions

Because the Court has determined that Plaintiffs' conduct did not violate either the Protective Order or the Inspection Agreement, Defendants are not entitled to the damages authorized by either of those documents.  The issue therefore is what is the appropriate sanction for Plaintiffs' failure to comply with counsel's promise to provide Defendants with an advanced copy of the expert report.  Defendants do not provide legal authority supporting the imposition of the requested sanctions for that violation.  See Mot.; Reply.  The Court, however, will consider each of Defendants' sanction requests.

Defendants' sanction requests 1-4 are premised on FRCP 37(b)(2) which authorizes a variety of sanctions when a party fails to comply with a court order to produce or permit discovery.  Mot. at 14-19.  This provision requires non-compliance with a court order.  See Contreraz v. Salazar, 2012 WL 528240, *3 (S.D. Cal. Feb. 17, 2012)(finding that "Defendants alleged failure was not in violation of a prior court order and Rule 37(b) does not apply")(citing Salahuddin v. Harris, 782 F.2d 1127, 1131 (2d Cir. 1986) ("The plain language of Rule 37(b) requires that a court order be in effect before sanctions are imposed"); see also Williams v. Williams, 2013 WL 3157910, *4 (N.D. Cal. June 20, 2013) (stating that Rule 37(b)(2)(A) sanctions "are not available unless a court's discovery order has not been obeyed" and noting that "the

Ninth Circuit also has explained that 'Rule 37(b)(2)'s requirement that there be some form of court order that has been disobeyed has not been read out of existence; Rule 37(b)(2) has never been held to authorize sanctions for more general discovery abuse'") (quoting <u>Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mgf. Corp.</u>, 982 F2d 363, 368 (9th Cir. 1992)).  For the reasons set forth above, the Court finds that Plaintiffs' conduct did not violate the terms of the Protective Order or any other court order and that therefore the sanctions sought in requests 1-4 pursuant to FRCP 37(b)(2) are not appropriate.

Defendants apparently rely on the Court's inherent authority to impose the sanctions sought in requests 5-10.  "Federal courts also have inherent power to impose sanctions against attorneys and parties for bad faith conduct in litigation."  <u>Oliver v. In-N-Out Burgers</u>, 945 F. Supp.2d. 1126, 1129 (S.D. Cal. 2013) (citing <u>Chambers v. NASCO</u>, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).  "Before a court may award sanctions under its inherent powers, the court must make an explicit finding that counsel's conduct constituted or was tantamount to bad faith."  <u>Id.</u> (citing <u>Mendez v. County of San Bernardino</u>, 540 F.3d 1109, 1131 (9th Cir.2008).  "[T]he bad-faith requirement sets a 'high threshold,' which may be met by willful misconduct, or recklessness that is coupled with an improper purpose."  <u>Lofton v. Verizon Wireless (VAW) LLC</u>, 2015 WL 3805194, *6 (N.D. Cal., June 18, 2015) (quoting <u>Primus Auto. Fin. Servs., Inc. v. Batarse</u>, 115 F.3d 644, 649 (9th Cir.1997)).  The burden is on the moving party to demonstrate that the opposing party acted with the necessary bad faith or improper purpose.  <u>Id.</u>

Defendants have not satisfied their burden.  As described in more detail above, the evidence establishes that Plaintiffs' counsel violated her agreement to provide an early copy of the DTI report to Defendants.  The Court notes however that the agreement was quite basic and did not include any specific terms, including how much time had to elapse between the two disclosures, the purpose of the early disclosure to DTI or the delay between disclosures, Defendants' ability to prevent or limit the use of the report, or any potential sanctions.  Lowe Decl. at Exh. 22.  The evidence presented to the Court does not establish either willful misconduct or recklessness coupled with an improper purpose.  Rather, the evidence shows that upon receiving notice of her alleged mistake and Defendants' concerns, Plaintiffs' counsel quickly

1  provided assurance that the confidential information had not been improperly disclosed and

2  offered to file a motion to seal the confidential information and prepared the required documents.

3  Id. at Exh. 31; Cologne Decl. at 4.  The fact that the parties were unable to agree on the specific

4  language for the motion, due at least in part to Defendants' conduct, and did not file a motion

5  to seal, does not establish willful misconduct by Plaintiffs.  Defendants also have not established

6  that Plaintiffs acted with an improper purpose.  Accordingly, the Court finds that Defendants are

7  not entitled to sanctions pursuant to the Court's inherent authority.

8          The Court also finds that Defendants have not established that they have been harmed by

9  Plaintiffs' failure to provide an advance copy of the DTI report and/or the filing of the allegedly

10  confidential information.  Defendants' damage argument primarily relies on paragraph 9 of the

11  Inspection Agreement, which states that the Confidential Information "is unique and valuable, and

12  that breach of the obligations of this Agreement … may result in irreparable injury … for which

13  monetary damages alone would not be an adequate remedy" to support its argument that it is

14  entitled to severe sanctions.  Mot. at 10-11.  Initially, the Court notes that the cited paragraph

15  contains agreements between DTI and Defendants, not between Plaintiffs and Defendants,

16  regarding a potential breach.  Lowe Decl. at Exh. 24 at 3.  More importantly, Defendants'

17  evidence does not support such a conclusion.  First, Defendants identified as Confidential

18  Information all of the data and computer code provided to DTI, without any true analysis or

19  consideration of the value of various types of code, files, or programs.[4]  Lowe Decl. at Exh. 24 at

20  2. Second, Defendants merely speculate that the disclosure of the information may have harmed

21

22

_____

23          [4]The Court recognizes that the parties disagree as to whether or not the Confidential Information at issue is
actually confidential.  While Defendants claim that all information obtained pursuant to the Inspection Agreement was

24  confidential, Plaintiffs respond that the Inspection Agreement states that "restrictions on use and disclosure of
Confidential Information will not apply to information that (a) was publically known at the time to the Defendants'

25  communication thereof to DTI or becomes publicly known thereafter through no fault of DTI" and that (1) the designs
that were attached to the reply were publicly known and posted on Defendants' website in March 2015 and were so

26  common that they can not be deemed confidential, (2) when discussing the design and advertising methods, Mr.
Garza mentions Photoshop which is a "common graphic design tool" used in the public domain, and not confidential,

27  and (3) "copies of advertisements displayed in photo editing software are not 'confidential information.'" Oppo. at 9-
11.  Because the Court finds that Plaintiffs' conduct did not violate either the Protective Order or the Inspection

28  Agreement, the Court need not resolve this dispute.

13

them and provide no facts to support their speculation.[5]  Finally, Defendants' conduct in the aftermath of this alleged violation dramatically undermines their damage claims: upon learning that their allegedly confidential information had been filed as part of Plaintiffs' reply, Defendants did not immediately file a motion to seal the confidential information; rather Defendants engaged in lengthy arguments with Plaintiffs about who should file the motion to seal and how much of the report and reply should be sealed.  Mot. at 7-10; see also Lowe Decl. at Exhs. 25-33.  Eighteen days after the Confidential Information was published, Defendants filed objections and a request to strike portions of the reply, but did not move to have the information sealed pending a ruling.  ECF No. 33.  Forty-four days after the Confidential Information was published, Defendants filed the instant motion seeking ten enumerated sanctions.  Mot.  What Defendants did not do is file a motion to seal the allegedly confidential information.[6]  See Docket.  It is hard to imagine that Defendants would allow truly confidential information capable of causing "severe damage" and "irreparable injury" to remain on the docket without making a real and immediate effort to have it removed or sealed.  Even if Defendants truly felt it was Plaintiffs' burden to file a motion to seal, when it became clear that Plaintiffs were not going to file the motion and Defendants "unique and valuable" information was exposed, one would expect Defendants to file their own motion to seal the information and deal with Plaintiffs' alleged failure to act later.  Instead, Defendants ask the Court to believe that the information is valuable and highly confidential, but that they would not act to remedy the situation because "that was Plaintiffs' responsibility and [they] had agreed to incur those costs to remedy the problem."  Reply at 12.  The Court therefore finds that Defendants have not established either a legal or factual basis for

---

[5]  Defendants state that the confidential graphics that were published (1) removed "[a]ny advantage [Defendants] had by keeping its designs confidential," (2) discussed Defendants' use of computer programs and a "competitor could review Garza's explanation of [Defendants'] methods and glean some information that could be helpful to it in competing against [Defendants]," and (3) "reveal[ed] [its] methods for designing webpages which could give an advantage to a competitor."  Reply at 8-9; see also Mot. at 11.

[6]The Court does recognize that although not listed in the title of the motion or as one of the enumerated requested sanctions, in a single sentence at the end of the motion, Defendants state "Lovesurf also requests an order that Plaintiffs' Reply and the Garza Declaration be sealed to prevent further disclosure of Lovesurf's confidential information."  Mot. at 19.  However, this is not a proper motion to seal or sealing request.

the requested sanctions and denies Defendants' motion.

Given the facts of this case, the Court finds it necessary to address a few of Defendants' specific requests.  In requests 7-8, Defendants seek sanctions prohibiting DTI from consulting with or testifying for Plaintiffs and prohibiting Plaintiffs from using Defendants' Confidential Information in this litigation.  Mot. at 18-19.  With regard to these requests, the Court's ruling is without prejudice so Defendants may move to exclude evidence or testimony provided by DTI at trial, if there is a factual and legal basis to do so.

In request 5, Defendants seek a sanction requiring Plaintiffs to identify "all individuals who have viewed Lovesurf's "Confidential Information."  Mot. at 18.  After this dispute arose, Plaintiffs advised Defendants that they did not provide Mr. Garza's declaration or the Reply brief to their clients, offered to provide a declaration confirming this fact, offered to make Plaintiff Gina Champion-Cain immediately available for deposition so that she could testify that she had not seen the declaration or reply brief, and offered to move to seal the confidential information.  Oppo. at 14; see also Cologne Decl. at 4.  While Defendants did not respond to the declaration offer or file a motion to seal, defense counsel did depose Plaintiff Gina Champion-Cain, however, he did not ask her any questions about the reply brief or Mr. Garza's declaration.  See Cologne Decl. at 4; see also Docket.  The reply and declaration have now been on the publicly-available docket for almost four months and it would be impossible for Plaintiffs to identify every individual who has viewed the pleadings and allegedly confidential information.

In requests 9 and 10, Defendants seek monetary sanctions and their costs for preparing and filing the instant motion.  Defendants have not established that any damages incurred as a result of Plaintiffs' conduct and Defendants did not move to seal the confidential information so there are no fees associated with such a motion.  With regard to the instant motion, the Court is denying the motion so an award of fees is inappropriate.

## CONCLUSION

In summary, the Court finds that Defendants have not established that Plaintiffs violated the Protective Order because they did not utilize it and Exhibit A to protect the information provided to DTI and because the Inspection Agreement is an independent agreement that did not

incorporate the Protective Order.  The Court also finds that Defendants have not established that Plaintiffs violated the Inspection Agreement or that the email agreement to provide Defendants with an early copy of DTI's report was part of the Inspection Agreement.  Finally, the Court also finds that Defendants have not established a legal or factual basis for the requested sanctions. Accordingly, the Court **DENIES** Defendants' Motion for Sanctions.

As mentioned previously, at the end of the motion Defendants state "Lovesurf also requests an order that Plaintiffs' Reply and the Garza Declaration be sealed to prevent further disclosure of Lovesurf's confidential information." Mot. at 19.  The Court is willing to order that any confidential information be sealed.  However, Defendants must file an appropriate motion that complies with the Court's Local Rules, the Court's Electronic Case Filing Administrative Manual procedures, and Judge Major's Chambers Rules, including identifying which portions of the Reply and declaration present confidential information.[7]

**IT IS SO ORDERED**.


DATED:  August 27, 2015

BARBARA L. MAJOR
United States Magistrate Judge

---

[7] See   https://www.casd.uscourts.gov/Rules/SitePages/Home.aspx;   see   also https://www.casd.uscourts.gov/Rules/SitePages/LocalRules.aspx

16