UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA CHAMPION-CAIN, an individual; LUV SURF, LP, a California limited partnership; ANI COMMERCIAL CA I, LLC, a California limited liability company; and ANI COMMERCIAL CA II, LP, a California limited partnership,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN MACDONALD, an individual; LOVESURF, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 3:14-cv-02540-GPC-BLM<br><br>**ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION**<br><br>[ECF Nos. 124–25.] |

Before the Court is Plaintiffs and Counter-Defendants Gina Champion-Cain, Luv Surf, L.P., ANI Commercial CA I, LLC, and ANI Commercial CA II, L.P.'s (collectively, "Plaintiffs'" or "Luv Surf's") renewed motion for a preliminary injunction against Defendants and Counter-Claimants Brian MacDonald and Lovesurf, Inc. (collectively, "Defendants" or "Lovesurf"). (Dkt. Nos. 124–25.) Defendants did not file a response prior to the deadline the Court imposed.

A hearing was conducted on December 9, 2016.  (Dkt. No. 128.)  Geoffrey Thorne, Esq. appeared for Plaintiffs.  (*Id.*)  Brian MacDonald appeared *pro se*.[1]  (*Id.*)  At the hearing, Mr. MacDonald notified the Court of his opposition to Plaintiffs' renewed motion for a preliminary injunction and provided the Court and Plaintiffs' counsel with copies of his opposition brief.  (Dkt. No. 130.)  The opposition brief was subsequently filed *nunc pro tunc*.  (Dkt. No. 129.)

Based on the applicable law and the parties' moving papers and oral arguments, the Court **DENIES** Plaintiffs' renewed motion for a preliminary injunction.

## PROCEDURAL BACKGROUND

On January 23, 2015, Plaintiffs filed a motion for a preliminary injunction.  (Dkt. No. 18.)  Plaintiffs requested an order enjoining Defendants from (1) making defamatory and disparaging statements about Plaintiffs and/or the Luv Surf brand and (2) using the allegedly infringing trademarks.  (*Id.* at 2.)  The Court denied Plaintiffs' motion for a preliminary injunction on July 15, 2015.  (Dkt. No. 55.)  Fact discovery concluded shortly thereafter.  (Dkt. Nos. 22, 58.)

On October 14, 2016, the Court granted Plaintiffs leave to file a renewed motion for a preliminary injunction.  (Dkt. No. 123.)  Plaintiffs accordingly filed a renewed motion for a preliminary injunction on November 18, 2016.  (Dkt. No. 125.)

In their instant motion, Plaintiffs seek relief substantially similar to that sought in their original motion for a preliminary injunction.  (*Compare* Dkt. No. 18 *with* Dkt. No. 125.)  Here, Plaintiffs seek a preliminary injunction enjoining Defendants from: (1) doing business under the name "Lovesurf"; (2) using the allegedly infringing trademarks or any

---

[1] Civil Local Rule 83.3(j) provides that corporations "may appear in court only through an attorney permitted to practice pursuant to Civil Local Rule 83.3."  Defendant Lovesurf, Inc. presently does not have counsel and may not appear in court absent representation.  Because the Court denies Plaintiffs' renewed motion for a preliminary injunction on the merits, the Court does not address at this time Defendant Lovesurf, Inc.'s failure to procure counsel.  The Court reiterates its admonition to Defendant Lovesurf, Inc. that it may become subject to default should it fail to retain counsel.

logos confusingly similar; and (3) communicating to any third party that Plaintiffs are infringing on the subject trademarks. (Dkt. No. 125 at 2.[2])

## FACTUAL BACKGROUND

This is a trademark infringement case between two businesses that compete in the same industry and have phonetically identical tradenames: "Luv Surf" (Plaintiffs) and "Lovesurf" (Defendants). Both parties assert that their ownership rights in the respective trademarks are superior to the others' claimed rights. The parties principally dispute which company first used the trademarks at issue. Without making any findings as to the truth of the allegations, the Court details the parties' claimed first uses below.

### A. Plaintiffs' Claimed First Use

#### 1. The Luv Surf Cloud Logo

In August 2011, Plaintiffs formed Luv San Diego Surf, a vacation rental business. (Dkt. No. 124-6 at 4–5.) Plaintiffs had a logo designed to market their business. (Dkt. No. 124-6 at 5; Dkt. No. 124-7 at 4–5.) The resulting logo—the Luv Surf Cloud Logo— was displayed on Plaintiffs' business cards, letterhead, and on exterior signs posted on vacation rental units. (Dkt. No. 124-8; Dkt. No. 124-6 at 5–7; Dkt. No. 124-7 at 5–7; Dkt. No. 124-10; Dkt. No. 124-11.) The Luv Surf Cloud Logo was also incorporated into a website designed for Plaintiffs' business in September 2011. (*Id.*) On October 31, 2011, Plaintiffs received a Transient Occupancy Registration Certificate from the City of San Diego to operate Luv San Diego Surf. (Dkt. No. 124-12.) In December 2011, Plaintiffs ordered tote bags, shirts, jackets, hats, beach towels, and bathrobes bearing the Luv Surf Cloud Logo to distribute to customers. (Dkt. No. 124-6 at 8–9; Dkt. No. 124-13; Dkt. No. 124-14; Dkt. No. 124-15.) Plaintiffs also registered the domain names www.luvsandiegosurf.com and www.luvsdsurf.com in December 2011. (Dkt. No. 124-6 at 29–30.)

---

[2] Unless otherwise indicated, the Court cites to the page numbers imprinted on the top of each page by the Court's CM/ECF system and not the parties' page numbering at the bottom of the page.

On May 31, 2012, Plaintiffs filed an application for registration of the Luv Surf Cloud Logo with the United States Patent and Trademark Office ("USPTO"). (Dkt. No. 124-16.) The Luv Surf Cloud Logo has been registered since August 27, 2013. (Dkt. No. 124-17.)

**2. The "Luv Surf" Wordmark and the Luv Surf Heart Logo**

In early 2012, Plaintiffs developed a retail business known as "Luv Surf." (Dkt. No. 124-6 at 10, 14; Dkt. No. 124-18.) In February 2012, they registered the domain names www.luv-surf.com and www.luvsurfclothing.com. (Dkt. No. 124-6 at 28–29.) In March 2012, Plaintiffs had a logo designed for their retail business. (Dkt. No. 124-6 at 11–12; Dkt. No. 124-20 at 7, 14.) The result was the Luv Surf Heart Logo. (Dkt. No. 124-6 at 12 – 13; Dkt. No. 124-20 at 8, 10, 12; Dkt. No. 124-21.) Around April 2012, Plaintiffs made public their online retail store at www.luvsurfretail.com. (Dkt. No. 18-2, ¶ 6.) They opened a brick-and-mortar retail store on July 4, 2012. (Dkt. No. 124-6 at 17, 24; Dkt. No. 124-22; Dkt. No. 124-23.) In August 2012, Plaintiffs released a clothing line bearing the Luv Surf Heart Logo. (Dkt. No. 124-6 at 11, 20.) The online and brick-and-mortar stores have since continuously sold apparel and accessories bearing the "Luv Surf" wordmark, the Luv Surf Heart Logo, and/or the Luv Surf Cloud Logo. (Dkt. No. 124-6 at 17, 18, 21–23, 24.) Retailers such as Nordstrom have purchased Plaintiffs' inventory for placement in their retail stores. (Dkt. No. 124-6 at 36; Dkt. No. 124-25.)

On May 29, 2013, Plaintiffs filed an application for registration of the Luv Surf Heart Logo with the USPTO. (Dkt. No. 124-26.) The Luv Surf Heart Logo has been registered since August 5, 2014. (Dkt. No. 124-27.)

**B. Defendants' Claimed First Use**

Defendants allege that they first began using the "Lovesurf" wordmark and variations thereof in 2010. (Dkt. No. 64 at 11–12.) In 2010, Defendants sponsored beach clean-up events, where they distributed hats and shirts labeled with tags displaying "Lovesurf." (Dkt. No. 124-28 at 17; Dkt. No. 124-29.) All transactions at the events were conducted in cash. (Dkt. No. 124-28 at 17.)

Defendants further allege that they began selling Lovesurf shirts and hats online as early as 2011, and that they sold one shirt—a "Dream Session Tee by Lovesurf"—online on August 23, 2011. (Dkt. No. 124-28 at 18–20; Dkt. No. 124-30; Dkt. No. 124-31.)

In December 2011, Defendants allegedly collaborated with Brett Hillyard, a graphic designer, to design logos for the Lovesurf brand. (Dkt. No. 124-28 at 13–14.) As early as December 28, 2011, Defendants began using the resulting logo—the Lovesurf Heart Wave Logo—on tags for retail clothing bearing the Lovesurf marks. (Dkt. No. 23-1 ¶¶ 6–7.)

### 1. Alleged Defects Regarding Defendants' Claimed First Use

Plaintiffs challenge Defendants' version of events regarding first use. Plaintiffs assert that contrary to Defendants' allegations, Defendants began using the Lovesurf marks no earlier than 2013. (Dkt. No. 124-1 at 11.)

To shore up their challenge, Plaintiffs point to testimony from Mr. Hillyard, the graphic designer with whom Defendants collaborated to create the Lovesurf and Luv Surf marks.[3] (*Id.*) Mr. Hillyard testified that he worked only on Defendants' "Luv Your Beach" project and did not perform any work for the Lovesurf brand. (Dkt. No. 124-32 at 6, 10–11.) Mr. Hillyard testified that prior to the commencement of this litigation, he knew of Plaintiffs', not Defendants', Luv Surf marks only. (*Id.*) Plaintiffs contend that the email communications between Mr. MacDonald and Mr. Hillyard in 2011 and 2012 are consistent with Mr. Hillyard's testimony. (Dkt. No. 124-33.)

Plaintiffs also point to testimony from the consumer who allegedly purchased the Dream Session Tee by Lovesurf in August 2011. (Dkt. No. 124-2.) While the buyer confirmed that she did purchase two pairs of headphones as stated in the invoice, she disavowed having purchased the Dream Session Tee and states that she has never heard of Lovesurf or Mr. MacDonald. (*Id.* ¶¶ 4–5.) Plaintiffs believe that Defendants

---

[3] Defendants allege that they previously conducted business under both "Luv Surf" (from 2011 until 2012) and "Lovesurf." They have since dropped the "Luv Surf" brand. (Dkt. No. 124-28 at 10.)

manufactured the invoice to reflect that the buyer had purchased a Lovesurf shirt. (Dkt. No. 124-1 at 12 n.2.)

As previously done in their original motion for a preliminary injunction, Plaintiffs submit a report from Peter Garza, a computer forensic expert, to buttress their contention that Defendants' digital photographs purportedly depicting screenshots of Lovesurf products in 2010 and 2011 were fabricated after the commencement of this litigation. Plaintiffs assert that none of the documents that corroborate Defendants' allegations of first use are authentic. (Dkt. No. 124-1 at 12; Dkt. No. 124-4 at 4.)

Finally, Plaintiffs raise Defendants' trademark applications with the USPTO. (Dkt. No. 124-1 at 12–13.) In their November 2012 applications, Defendants stated that they had an "intent to use" the wordmark "Luvsurf" and the heart design logo as trademarks. (Dkt. No. 124-34.) Defendants also stated that their first use of the heart design logo was in December 2012, and that its first use in commerce was in June 2013. (Dkt. No. 124-35.) Defendants presently do not have registrations for the Lovesurf marks. (Dkt. No. 124-1 at 13.)

### C. Defendants' Alleged Defamation of Plaintiffs

Plaintiffs assert that Defendants have undertaken a campaign to defame Plaintiffs. (Dkt. No. 124-1 at 13.) Plaintiffs principally complain that as recently as September 2016, Mr. MacDonald has sent cease-and-desist letters to several vendors, resulting in the retailers' discontinuance of Plaintiffs' product lines. (*See, e.g.*, Dkt. No. 124-6 at 36; Dkt. No. 124-36 at 2–7.) Plaintiffs estimate that they have suffered at least $330,000 in compensatory damages as a result. (Dkt. No. 124-38 at 6.)

Plaintiffs also complain that Mr. MacDonald disparaged Plaintiffs and the Luv Surf marks in emails and social media messages to Plaintiffs' employees and consultants. (*See, e.g.*, Dkt. No. 18-3 ¶¶ 7–8; Dkt. No. 18-4 ¶¶ 2–3.)

### D. Defense Counsel's Withdrawal from Representation

On July 29, 2016, David A. Guantlett, James A. Lowe, and Gauntlett & Associates filed a motion to withdraw from representation of Defendants in this case on account of

Defendants' inability and refusal to render payment of outstanding legal fees. (Dkt. No. 86.) On October 14, 2016, the Court granted defense counsel's motion to withdraw from representation of Defendants. (Dkt. No. 123.)

## LEGAL STANDARD

To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Under the Ninth Circuit's "sliding scale" approach, the first and third elements are to be balanced such that "serious questions" going to the merits and a balance of hardships that "tips sharply" in favor of the movant are sufficient for relief so long as the other two elements are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The moving party bears the burden of meeting all four *Winter* prongs. *See Cottrell*, 632 F.3d at 1135; *DISH Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011).

## DISCUSSION

**I. The Court's Prior Order Denying Plaintiffs' Motion for a Preliminary Injunction**

**A. Trademark Infringement**

In evaluating Plaintiffs' likelihood of success on the merits, the Court found that while Plaintiffs provided evidence tracing their first use of the Luv Surf marks back to August 2011, Defendants provided evidence that they began using the wordmark "Lovesurf" on tags for hats and shirts in 2010, began selling clothing under the "Lovesurf" brand online by August 15, 2011, and began using the Lovesurf Heart Wave logo on tags of clothing for sale online by December 28, 2011. (*Id.* at 13–14.) While the

Court expressed that it "takes allegations of perjury very seriously," in light of the Court's conclusion that Plaintiffs failed to satisfy the other three prongs of the *Winter* test, the Court declined to address the credibility issues regarding Defendants' evidence of first use. (*Id.* at 14.)

In evaluating Plaintiffs' likelihood of facing irreparable harm absent an injunction, the Court found that Plaintiffs failed to carry their burden to show that they would suffer irreparable harm. (*Id.* at 14–20.) Specifically, the Court found that Plaintiffs' delay in seeking injunctive relief undermined its claim of irreparable harm, and that loss of goodwill and loss of income from lost retail accounts did not constitute harm that was irreparable. (*Id.*) To illustrate the high bar of irreparable harm, the Court cited cases and noted that "[i]f Plaintiffs' evidence suggested that, absent an injunction, Defendants' actions were likely to put Plaintiffs out of business, the Court's decision might be different." (*Id.* at 18.) Regarding Plaintiffs' lost accounts, the Court noted that

> Nordstrom's decision to stop carrying the Luv Surf line may be less evidence of lost goodwill as it is evidence that Nordstrom does not wish to be caught in the middle of a trademark dispute. Having made the decision following receipt of Defendants' cease and desist letter, Nordstrom may well agree to resume carrying Plaintiffs' products if Plaintiffs are successful in this case and present Nordstrom with a court order confirming their right to the mark.

(*Id.* at 18 n.15.)

The Court further addressed the remaining two *Winter* prongs in light of the uncertainty surrounding the first prong of the test. In doing so, the Court concluded that the balance of the equities weighed in favor of Defendants, because the relief Plaintiffs sought would force Defendants to "rebrand all of their merchandise, change the name of their company, and stop selling all of the items emblazoned with the term 'LoveSurf.'" (*Id.* at 21.) The Court found that this outweighed Plaintiffs' loss of one customer (Nordstrom) and some goodwill due to Defendants' actions. (*Id.*) Finally, the Court concluded that denying, rather than granting, the injunction would more likely maintain the status quo and align with the purpose underlying preliminary injunctions. (*Id.*)

Finally, the Court concluded that the public interest prong resulted in a draw. (*Id.*) Acknowledging that "issuance of an injunction would put an end to the confusing marketing and sale of two nearly identical brands, the uncertainty over who is the senior user of the mark makes it impossible for the Court to make a determination as to how best to prevent deception or confusion of the public." (*Id.*)

### B. Defamation

The Court concluded that because the Court could not discern which party owned the trademark at issue, the Court also could not determine whether Defendants' statements were true or false. (*Id.* at 22.) Accordingly, with the Court unable to determine falsity—an element of defamation—the Court declined to issue a preliminary injunction enjoining Defendants from making defamatory statements about the Luv Surf brand. (*Id.*)

With respect to irreparable harm, the Court concluded that despite "Defendants' aggressive behavior towards Plaintiffs as well as their vendors, customers, and employees," and despite the resulting economic and reputational harm to Plaintiffs from Defendants' behavior, Plaintiffs did not demonstrate that irreparable harm was likely. (*Id.* at 23.) The Court found that Plaintiffs' damages could be addressed "through monetary and/or other corrective relief on a later date." (*Id.*)

Given that Plaintiffs addressed the third and fourth *Winter* prongs jointly as to the trademark infringement and defamation claims, the Court arrived at the same conclusions as the ones reached with respect to the trademark infringement claim. (*Id.*)

## II. Renewed Motion for a Preliminary Injunction

### A. Trademark Infringement Claim

#### 1. Likelihood of Success on the Merits

The Lanham Act provides "national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985). To prevail on a claim of trademark infringement, a

plaintiff must show: "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (citation and internal quotation marks omitted).

### a.  Protectable Ownership Interest in the Mark

Federal registration of a trademark is prima facie evidence that the registrant is the owner of the mark.  15 U.S.C. § 1115(a).  "[T]he registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration, and the challenger must overcome this presumption by a preponderance of the evidence." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.), *as modified*, 97 F.3d 1460 (9th Cir. 1996).  However, this presumption is rebuttable.  "[T]he non-registrant can rebut this presumption by showing that the registrant had not established valid ownership rights in the mark at the time of registration—in other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated." *Id.* at 1120.

Here, Plaintiffs registered the Luv Surf Cloud Logo (Dkt. No. 124-17) and the Luv Surf Heart Logo (Dkt. No. 124-27) with the USPTO.  Accordingly, Plaintiffs are granted a presumption of ownership, *see* 15 U.S.C. § 1115(a), dating to May 31, 2012 for the Luv Surf Cloud Logo, (Dkt. No. 124-17 at 2), and to May 29, 2013 for the Luv Surf Heart Logo, (Dkt. No. 124-27 at 2).  Defendants presently have not secured federal registration of their trademarks with the USPTO.  Defendants did not oppose Plaintiffs' instant motion, and as such do not rebut Plaintiffs' presumption of ownership of these two marks.  However, the issue of first use lingers, as Defendants claim to have begun using "Lovesurf" in 2010.

"'It is axiomatic in trademark law that the standard test of ownership is priority of use.  To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.'" *Rearden LLC*, 683 F.3d at

1203 (quoting *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996)). Therefore, a party must show that it was the first to use the mark in commerce. *Id.*

Under the Lanham Act, the term "'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. "For both goods and services, the 'use in commerce' requirement includes (1) an element of actual use, and (2) an element of display." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001); *see* 15 U.S.C. § 1127 (defining "use in commerce" with respect to both goods and services). The Ninth Circuit has adopted a "totality of the circumstances" approach in evaluating whether the "use in commerce" test has been satisfied. *Rearden LLC*, 683 F.3d at 1205. "This approach turns on evidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind." *Id.* (internal citation and quotation marks omitted). The Ninth Circuit has also "acknowledged the potential relevance of non-sales activity in demonstrating not only whether a mark has been adequately displayed in public, but also whether a service identified by the mark has been 'rendered in commerce'" pursuant to 15 U.S.C. § 1127. *Id.*

Here, Plaintiffs have proffered evidence that they first used the Luv Surf Cloud Logo in connection with Luv San Diego Surf, their vacation rental business, in August 2011, and that they used the Luv Surf Cloud Logo on tote bags distributed to renters in December 2011 and on apparel and accessories in early 2012. (Dkt. No. 124-1 at 15–16.) Plaintiffs have also provided evidence that they used the Luv Surf Heart Logo in connection with their development of the "Luv Surf" retail division in early 2012. (*Id.*) Specifically, Plaintiffs launched an online retail store in April 2012 and a brick-and-mortar retail store in July 2012 and released a clothing line with the Luv Surf Heart Logo in August 2012. (*Id.*) Plaintiffs allege that the online and brick-and-mortar stores have continuously sold products bearing the Luv Surf marks since they opened. (*Id.*)

Plaintiffs have also produced evidence rebutting Defendants' claims regarding an online sale of a Lovesurf shirt on August 23, 2011 and regarding Mr. MacDonald's collaboration with Mr. Hillyard in December 2011 to create logos for Lovesurf. With respect to Defendants' claim to first use dating back to 2010, Plaintiffs submit three rebuttal arguments. (Dkt. No. 124-1 at 16.) Plaintiffs (1) raise again the computer forensic report by Peter Garza to argue that Defendants manufactured the purported 2010 flyer on February 20, 2015 (citing Dkt. No. 124-4 at 4); (2) show that "[n]o receipts or documentation corroborate any sales of 'Lovesurf' products at the [beach clean-up] event" (citing Dkt. No. 124-28 at 17); and (3) show that Lovesurf did not sponsor any other events (citing Dkt. No. 124-28 at 18). (*Id.*)

Plaintiffs offer no law to shore up their argument that the fact that Defendants conducted transactions in cash and cannot proffer receipts or documentation corroborating sales of Lovesurf products at the July 2010 beach clean-up event diminishes their claim to first use. In fact, the law points to the opposite. *See Rearden LLC*, 683 F.3d at 1205 ("[E]vidence of actual sales, or lack thereof, is not dispositive in determining whether a party has established 'use in commerce' within the meaning of the Lanham Act."). Their argument that Lovesurf did not sponsor any other events misstates Mr. MacDonald's deposition testimony: Mr. MacDonald testified that he did not use the words "sponsored by Lovesurf" in any other flyers that were created in 2011. (Dkt. No. 124-28 at 18.) As to Plaintiffs' citation to Mr. Garza's forensic report, the Court reiterates its serious concern regarding the possibility that Defendants have committed perjury. This concern is amplified in light of Plaintiffs' evidence rebutting Defendants' claims to use in August and December of 2011. However, because Plaintiffs do not carry their burden with respect to the three remaining *Winter* prongs, the Court does not deem it necessary at this time to determine the credibility of Defendants' evidence of first use.

### b. Likelihood of Confusion

Because the parties have stipulated to facts establishing the likelihood of consumer confusion resulting from the parties' use of the trademarks, (Dkt. No. 124 at 2–3), the

Court will not engage in a full analysis regarding the likelihood of consumer confusion at this time.

## 2. Likelihood of Irreparable Harm to the Moving Party

Plaintiffs argue that irreparable harm will befall them absent the issuance of a preliminary injunction. (Dkt. No. 124-1 at 22–23.) Plaintiffs assert that despite "early financial success, they have been unable to further grow the company or develop new product lines due to the constant cease-and-desist communications sent by Defendants to third parties." (*Id.*) Plaintiffs further assert that Defendants have damaged Plaintiffs' goodwill, and that they have been unable to reap the profits that they otherwise would have realized but for Defendants' conduct. (*Id.*) Moreover, Plaintiffs emphasize the fact that they now "do not have the assurance that they will be able to collect on a monetary judgment," citing defense counsel's withdrawal from representation of Defendants on account of Defendants' nonpayment of legal fees. (*Id.*)

A moving party must demonstrate irreparable injury is likely in the absence of an injunction. *See Winter*, 555 U.S. at 20. A party seeking injunctive relief for trademark infringement must provide "evidence sufficient to establish likelihood of irreparable harm." *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013); *Active Sports Lifestyle USA, LLC v. Old Navy, LLC*, No. SACV 12-572-JVS(Ex), 2014 WL 1246497, at *2 (C.D. Cal. Mar. 21, 2014) (noting that trademark infringement, by itself, does not constitute irreparable harm and the existence of intangible harms such as loss of goodwill must be shown by evidence). The moving party must show that the harm is not only irreparable, but must also demonstrate immediate threatened injury. *See Carribean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); Fed. R. Civ. P. 65(b)(1)(A) (plaintiff must show it faces both "immediate and irreparable injury"). A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Garcia v. Google, Inc.*, 743 F.3d 1258, (9th Cir. 2014) (quoting *Oakland Tribune, Inc. v. Chronicle Publ'g*, 762 F.2d 1374, 1377 (9th Cir. 1985)).

As a starting matter, Plaintiffs do not demonstrate—or argue—that harm is imminent. The parties' dispute, ongoing since July 2013, will be resolved in about two and a half months at trial. (Dkt. No. 123.) Plaintiffs' delay in seeking injunctive relief in the first instance undermines their claim that they will presently be irreparably harmed absent injunctive relief during the remaining two and a half months before trial. Plaintiffs stated that they knew that Defendants were marketing Lovesurf products around July 2013, and that Plaintiffs sent Defendants a cease and desist letter on July 1, 2014. (Dkt. No. 18-3 ¶¶ 4, 6; Dkt. No. 18-12 at 29–30.) However, Plaintiffs did not file this case until October 23, 2014 (fifteen months after learning that Defendants were marketing LoveSurf products), and did not file their first motion for a preliminary injunction until January 23, 2015 (eighteen months after learning of the "Lovesurf" marketing). (Dkt. No. 18.) These actions did not imply a sense of urgency then or now. While Plaintiffs' delay is not alone decisive in determining whether they will be irreparably harmed, it still "weighs against the immediacy of the harm." *AK Metals, LLC v. Norman Indus. Materials, Inc.*, No. 12cv2595-IEG(WGV), 2013 WL 417323, at *10 (S.D. Cal. Jan. 31, 2013) (finding that a two-month delay undercut imminence of harm).

The Court acknowledges that Plaintiffs' evidence demonstrates that Plaintiffs have incurred an amount of economic harm and damage to their goodwill as a result of Defendants' conduct. (Dkt. No. 124-6 at 36 (loss of Nordstrom account); Dkt. No. 124-36 (cease-and-desist letters from Mr. MacDonald); Dkt. No. 124-38 (expert report estimating Plaintiffs' compensatory damages)). However, while Defendants contend that Defendants' financial condition lessens Plaintiffs' ability to recover monetary damages, Plaintiffs have not addressed "[t]he possibility that adequate compensatory *or other corrective relief* will be available at a later date, in the ordinary course of litigation." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (internal citation and quotation marks omitted) (emphasis added). Moreover, that Defendants purportedly have been unable and unwilling to pay outstanding legal fees does not automatically translate into a finding that Defendants are judgment-proof. *See Aznaran v. Church of Scientology of California,*

*Inc.*, 937 F.2d 611 (9th Cir. 1991) (upholding district court's factual finding that plaintiffs were not judgment-proof, despite defendant's argument that plaintiffs "could not afford to hire an attorney," as inability to afford an attorney "is not necessarily inconsistent with their ability to pay whatever judgment might ultimately be rendered against them").

With respect to Plaintiffs' arguments concerning loss of goodwill, Plaintiffs' evidence does not show that any loss of goodwill is irreparable or imminent. *See, e.g.*, *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) (stating that although "[t]he threat of being driven out of business is sufficient to establish irreparable harm," statements that the plaintiff had "sustained large losses" in a two-year period and would again sustain large losses in a future two-year timeframe were "insufficient evidence that [plaintiff] is threatened with extinction").

Plaintiffs cite a single pre-*Winter* case, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007), for the proposition that the "probability that Plaintiffs will not recover on a monetary judgment is a sufficient basis to find that irreparable harm exists" absent an injunction. (Dkt. No. 124-1 at 23.) This case does not avail Plaintiffs' renewed motion for a preliminary injunction. In *Metro-Goldwyn-Mayer Studios, Inc.*, the court first noted that "Plaintiffs have not provided this Court with specific evidence as part of this motion demonstrating that [Defendant] would be unable to pay damages for the infringements it has induced in the past, and could continue to induce in the future." 518 F. Supp. 2d at 1217. However, the plaintiffs' failure to provide the court with specific evidence regarding the defendant's inability to pay damages was found to be of no consequence due to extraordinary circumstances:

> Based on the *undisputed evidence* at summary judgment of *massive end-user infringement*, it is highly likely that the award of statutory damages that ultimately befalls [Defendant] in this case will be enormous (especially considering the potential relationship between inducement and a finding of willfulness), and would far outstrip the amount of revenue the company has garnered in recent years.

*Id.* (emphases added). Here, a number of key differences distinguish Plaintiffs' instant motion from that in *Metro-Goldwyn-Mayer Studios, Inc.*[4] No undisputed evidence of copyright infringement exists in this case—to the contrary, the parties dispute which party has a significantly protectable interest in the trademarks at issue. No infringement on a similar scale exists in this case.

In sum, the Court finds that Plaintiffs have failed to show that irreparable, immediate harm would result in the absence of injunctive relief.

### 3. Balance of Equities

Plaintiffs contend that the balance of equities favors them. (Dkt. No. 124-1 at 23–24.) Plaintiffs argue that the fact that an injunction would compel Defendants to cease doing business as "Lovesurf" and cease marketing products bearing the Lovesurf marks "should be afforded little (if any) weight—especially given the egregiousness of [Defendants'] conduct." (*Id.*) Plaintiffs cite Defendants' "manufacture[d] evidence" as inequitable conduct, and they reassert their argument from their first motion for a preliminary injunction that "[a]ny potential harm to Defendants is discounted by the fact that they brought the injury upon themselves by intentionally adopting Plaintiffs' trademarks in an improper attempt to confuse the public." (*Compare id. with* Dkt. No. 18-1 at 21–22.)

While "the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself," *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002), Plaintiffs have not established that Defendants "intentionally adopt[ed] Plaintiffs' trademarks in an improper attempt to confuse the public." (Dkt. No. 124-1 at 23.) The Court maintains its prior reasoning that denying, rather than granting,

---

[4] Nor is *Lava Records LLC v. Ates*, No. CIV.A. 05-1314, 2006 WL 1914166 (W.D. La. July 11, 2006), the pre-*Winter* case cited in *Metro-Goldwyn-Mayer Studios, Inc.*, 518 F. Supp. 2d at 1217, on point. In *Lava Records LLC*, the defendant was found to have infringed upon the plaintiffs' copyrights, and all factors for the issuance of a preliminary injunction were met. 2006 WL 1914166, at *3.

the injunction would more likely maintain the status quo at this point in time, less than three months until trial.  *See Los Angeles Mem'l Coliseum Comm'n*, 634 F.2d at 1200.

The Court thus concludes that Plaintiffs have not carried their burden to demonstrate that the balance of the equities weighs in favor of Plaintiffs.

### 4. Public Interest

Plaintiffs summarily argue that because "[c]onsumers have a right to not be confused or deceived in the marketplace," the Court must enjoin Defendants from selling products bearing the Lovesurf marks in order to prevent injury to the public.  (Dkt. No. 124-1 at 24.)  The uncertainty over which party is the senior user of the mark prevents the Court from determining the best method of preventing deception or confusion to the public.  The Court again concludes that the public interest prong results in a draw.

Accordingly, the Court **DENIES** Plaintiffs' renewed motion for a preliminary injunction with respect to their trademark infringement claim.

### B. Defamation Claim

Plaintiffs fail to carry their burden of demonstrating likelihood of success on the merits for their defamation claim.  Again, the issue hinges on the element of falsity.  "Defamation is an invasion of the interest in reputation . . . involv[ing] the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage."  *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (Cal. Ct. App. 1999), *as modified* (June 23, 1999).  "In all cases of alleged defamation, whether libel or slander, the truth of the offensive statements or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose."  *Id.* at 646.  Because the Court cannot conclude that Defendants' statements were true or false at this juncture, Plaintiffs do not show likelihood of success on the merits.

Moreover, given that Plaintiffs repeat their argument for irreparable harm, and that Plaintiffs address the balance of equities and public interest factors for the trademark infringement and defamation claims jointly, the Court's previous analysis of these issues applies with equal force here to Plaintiffs' defamation claim.

The Court thus **DENIES** Plaintiffs' renewed motion for a preliminary injunction with respect to their defamation claim.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiffs' renewed motion for a preliminary injunction. (Dkt. Nos. 124–25.)

**IT IS SO ORDERED.**

Dated: December 12, 2016

Hon. Gonzalo P. Curiel
United States District Judge